# ATTACHMENT D

## Examples Of State Law Affecting Asbestos Personal Injury Claims And Values

| State | Summary of Provisions Affecting Claim Numbers or Values | Potential Effect on Claims |
|---|---|---|
| Texas | Tort reform legislation enacted in June 2003 may reduce the number and value of claims. <u>Provisions that may reduce the *number* of claims</u>: a) For claims filed on or after 9/1/2003, requires that each plaintiff establish proper venue when plaintiffs are added by joinder or intervention; b) For claims filed on or after 9/1/2003, requires courts to decline jurisdiction on the grounds of *forum non conveniens* if the interests of justice and convenience to the parties mandate that a claim is more properly heard outside the state; c) For claims filed on or after 9/1/2003, discourages class action cases by allowing interlocutory appeal of class certification and restricting attorneys' fees; d) Creates a 15-year statute of repose, although there is an exception if the plaintiff was exposed within 15 years of sale; e) Makes it more difficult to impose liability on non-manufacturing sellers; f) Establishes a rebuttable presumption that a product was safe if it met government standards; g) For claims filed on or after 6/11/2003, or those pending then that have not yet been tried or retried by 9/1/2003, limits successor liability.<br><br><u>Provisions that may affect value of claims</u>: a) For cases filed on or after 1/1/2004, requires a party to pay costs and attorneys' fees if they reject a settlement and obtain a "significantly less favorable" judgment (however, this could work the other way if it is the defendant that rejects a settlement offer); b) For cases filed on or after 7/1/2003, eliminates the toxic tort exception for the requirement that joint and several liability not be imposed unless a defendant is more than 50% liable; c) For cases filed on or after 7/1/2003, allows responsibility to be apportioned to third parties such as employers, bankrupt entities and the government, reducing defendants' share of damages; d) For cases filed on or after 7/1/2003, allows punitive damages only if the jury unanimously agrees both on awarding punitives and on the amount. | The new law may reduce the number of claims brought in Texas making it harder to "forum shop" by bringing out-of-state claims to Texas, by limiting mass claims with large numbers of out-of-state plaintiffs, and by making it harder to sue companies with little or no involvement in manufacturing asbestos products. While exception to statute of repose will allow many asbestos claims to continue, those associated with long-lived products such as boilers may be affected.<br><br><br>The new law may reduce the amounts paid by individual defendants by limiting joint and several liability, and by allowing liability to be apportioned to third parties such as the government even if they cannot be sued. It may also bring down the size of verdicts by making it harder to obtain punitive damages. |

| State | Summary of Provisions Affecting Claim Numbers or Values | Potential Effect on Claims |
|---|---|---|
| Mississippi | Tort reform legislation enacted in June 2004 may reduce number and value of claims. The provisions apply to all claims filed on or after September 1, 2004.<br><br>Provisions that may reduce the number of claims: a) Reforms venue by allowing suits to be filed only in the county which is the defendant's principal place of business, where the event causing the injury occurred, or, if venue cannot be asserted against a nonresident defendant, where the plaintiff lives; b) Each plaintiff must establish proper venue when plaintiffs are added by joinder; c) Requires courts to decline jurisdiction on the grounds of *forum non conveniens* if the interests of justice and convenience to the parties and witnesses mandate that a claim is more properly heard outside the state, or in proper venue within the state; d) Eliminates liability for premises owners for injury or death to contractors' employees if the contractors knew of the danger, and for non-manufacturing sellers who did not exercise substantial control over design, manufacture, testing, or packaging of the product, alter the product in a way that caused the harm, or have actual knowledge of the defective condition ("innocent sellers who are only conduits of a product").<br><br>Provisions that may affect value of claims: a) Eliminates joint and several liability except for those who deliberately and consciously pursue a common plan to commit a tortuous act; b) Caps non-economic damages at $1 million; c) Requires clear and convincing evidence that defendant acted with actual malice or willful negligence or committed actual fraud for an award of punitive damages, and that the court determine before entering an award that it is reasonable in amount and rationally related to the purpose of punishment and deterrence; d) No punitive damages against non-manufacturing sellers who did not exercise substantial control over design, manufacture, testing, or packaging of the product, alter the product in a way that caused the harm, or have actual knowledge of the defective condition; e) Caps on punitive damages imposed on a sliding scale based on defendant's net worth, maximum is $20 million for defendants with a net worth of over $1 billion. | The new law may reduce the number of claims brought in Mississippi in the future making it harder to "forum shop" by bringing out-of-state claims to this state, by limiting mass claims with large numbers of out-of-state plaintiffs, and by making it harder to sue companies with little or no involvement in manufacturing asbestos products.<br><br>The new law may reduce the amounts paid by individual defendants by limiting joint and several liability to those who deliberately act in concert, capping non-economic damages, and capping and setting a higher standard for awarding punitive damages. |

| State | Summary of Provisions Affecting Claim Numbers or Values | Potential Effect on Claims |
|---|---|---|
| New York | Affecting number of claims. The New York County Supreme Court established an inactive docket on December 19, 2002 and the Supreme Court for the 5th Judicial District (Syracuse) did so in January 21, 2003. Nonmalignant claims that do not meet impairment criteria are placed on the inactive docket until the plaintiff's condition progresses to the level of an actionable injury, at which point they are released for trial proceedings.<br><br>Affecting value of claims. Joint liability abolished for noneconomic damages for defendants less than 50% at fault, except when defendant is found liable for: (1) intentional actions; (2) use, operation, or ownership of a motor vehicle; (3) having acted with reckless disregard for the safety of others; (4) certain provisions of labor law; (5) unlawfully releasing hazardous substances; (6) product liability actions where the manufacturer of the product is not a party to the action, jurisdiction over the manufacturer could not be obtained, and liability would have been imposed on the manufacturer through strict liability; (7) actions in which the defendants acted knowingly or intentionally in concert. | The inactive docket may reduce the number of nonmalignant claims filed in these jurisdictions by reducing the incentive to file claims for plaintiffs who are unimpaired.<br><br>Limiting joint liability for non-economic damages may tend to reduce amounts paid by individual plaintiffs |
| Ohio | Reform legislation signed into law June 2004, went into effect September 2. All provisions except medical criteria apply to claims filed on or after effective date.<br><br>Affecting claim numbers: a) Establishes medical criteria which make impairment an essential element of an asbestos claim, and states that claimants must demonstrate that they meet the criteria to have an actionable case. Claimants with nonmalignant disease must show impairment according to standard definitions, and claimants who are current or former smokers and are claiming lung cancer must meet exposure criteria. The evidence must be supplied by a competent medical authority; mass screenings and doctors who are frequent witnesses will not qualify. Applies not only to future claims but also to all claims pending at effective date, which will have 120 days to file the necessary information (however, an Ohio court ruled that the law does not affect railroad-related suits, which are covered by the FELA). b) Premises owners not liable unless asbestos exposure occurred on owner's property—i.e., no "take home" claims. c) | The new law may reduce the number of nonmalignant claims filed in the future, as those who cannot meet the medical criteria will have no incentive to sue. Because the new rules will apply to pending claims, which will be sent to an inactive docket if they don't meet the criteria, pending caseloads may drop as well. Lung cancer claims may also drop due to stricter criteria for smokers. Claims may also be reduced by the elimination of damages for fear and increased risk of cancer, and by the more strict rules for proving liability. |

| State | Summary of Provisions Affecting Claim Numbers or Values | Potential Effect on Claims |
|---|---|---|
| | Rebuttable presumption for alleged exposure before 1972 that owner knew that Ohio had adopted limits for safe levels of exposure and that asbestos-containing products on the premises were used only below the safe levels, rebuttable by showing that owner knew or should have known that limits were regularly exceeded in immediate breathing zone of plaintiff; no liability to any invitee who came onto property to work with, install, or remove asbestos products if invitee's employer held itself out as qualified to perform the work; owner hiring qualified contractor before 1972 not liable for any asbestos-related injury caused by contractor's employees/agents unless the owner directed, or gave or denied permission for, the activity that caused the injury; for 1972 forward no liability unless plaintiff establishes owner's violation of an established safety standard that was in the plaintiff's breathing zone and a proximate cause of his condition. For 1946-1972 the threshold limit for asbestos was 5 million particles/cf. d) Requires that plaintiff show exposure to defendant's products was a substantial contributing factor to his injury by proving manner, frequency, and proximity of exposure to defendant's particular products. e) No damages may be awarded for fear of cancer or increased risk of cancer.<br><br>Limiting claim values: a) For punitive damages against manufacturer or supplier in product liability, plaintiff must show by clear and convincing evidence that harm was the result of misconduct that manifested a flagrant disregard for the safety of persons who might be harmed by the product. Specific factors to be considered in determining amount. b) Non-economic damages limited to the greater of $250,000 or 3 x the plaintiff's economic loss, maximum $350K per plaintiff or $500K per occurrence. May go to $500K for permanent physical deformity or disability. c) Joint and several liability only for defendants with more than 50% responsibility, unless intentional tort has been proved; others liable only for their proportionate share. | Amounts paid by individual defendants may be reduced by restriction on joint and several liability, and verdicts may be reduced by tougher standard for punitive damages and limit on non-economic damages. |
| | On January 6, 2005, the Governor signed a comprehensive tort reform bill into law. S.B. 80 modifies conditions under which punitive damages may be awarded (may not be awarded against a manufacturer or supplier unless the harm was the result of misconduct that manifested a flagrant regard for the safety of persons who might be harmed by the product) and caps them at two times compensatory for | May reduce damage awards. |

D-4

| State | Summary of Provisions Affecting Claim Numbers or Values | Potential Effect on Claims |
|---|---|---|
| | large employers. For small employers ($\leq 100$ employees, or $\leq 500$ employees for manufacturers), cap is lesser of two times compensatory or 10% of employer's net worth, with a maximum of $350,000. Caps non-economic damages, such as those for pain and suffering, at the greater of $250,000 or three times economic damages, up to a maximum of $350,000. Permits the defendant in a tort action to introduce evidence of any amounts or benefits payable to the plaintiff as a result of the injury, death or loss that is the subject of the claim, abolishing the "collateral source" rule except when there is a right of subrogation or when the amount or benefit payable to the plaintiff is from life or disability insurance. Also limits successor liability in asbestos cases. | |
| Maryland | Limiting claim numbers: a) The Baltimore City, Maryland court established an inactive docket for unimpaired claims on December 9, 1992. b) Allows but does not require court to stay or dismiss claims under *forum non conveniens* if it court finds that in the interest of substantial justice an action should be heard in another forum. c) Civil actions must be brought in a county where the defendant resides, carries on a regular business, is employed, or for corporation, where it maintains its principal office in the state. d) Negligence actions may be brought where cause of action arose.<br><br>Limiting claim values: Requires clear and convincing evidence for punitive damages. | The inactive docket may reduce the number of nonmalignant claims by reducing the incentive to file claims with no impairment. Since venue laws are not overly liberal, Maryland may not appeal to forum shoppers. |

**Souces:**

**Texas:** H.B. 4, (Chapter 204, 78th R.S. (2003)); James A. Lowery et al., *Highlights of Texas Tort Reform 2003*, 18-16 Mealey's Litig. Rep. Asb. 4 (2003). Venue, forum non conveniens, and class action provisions are effective for cases filed on or after September 1, 2003; other provisions have varying effective dates.

**Mississippi:** H.B. No. 13 as sent to Governor, First Extraordinary Session (2004). Provisions apply to causes of action filed on or after September 1, 2004.

**New York:** Inactive dockets: *In re New York City Asbestos Litig.*, 1 (Sup. Ct. N.Y. Dec. 19, 2002) (Order Amending Prior Case Mgmt. Orders); *In re Fifth Jud. Dist. Asbestos Litig.*, 1, (Sup. Ct. N.Y. Jan 21, 2003) (Amendment to Am. Case Mgmt. Order No. 1). Joint and several liability: N.Y. CIV. PRAC. L. & R. §§ 1601-1602 (2001).

**Ohio:** Am. Sub. H.B. No. 292, 125th Gen. Assembly 2003-2004; Richard G. Schuster and Nina I. Webb-Lawton, *Ohio's Groundbreaking Asbestos Legislation*, 19-14 Mealey's Litig. Rep. Asb. 22 (2004). Punitive damages: OHIO REV. CODE §§2307.80 (2001), 2315.21 (2002). Non-economic damages: OHIO REV. CODE §2323.43 (2003). Joint liability: OHIO REV. CODE. § 2307.22 (2003). Tort reform bill: 20-2 Mealey's Litig. Rep. Asb. 32 (2005); text of S.B. 80, 125th Gen. Assemb.

**Maryland:** Inactive docket: *In re Asbestos Personal Injury and Wrongful Death Asbestos Cases*, Order Establishing An Inactive Docket For Asbestos Personal Injury Cases, No 92344501 (Cir. Ct. Baltimore City, Md. Dec. 9, 1992). Forum non conveniens: MD. CTS. & JUD. PRO. §-104 (a) (2001). Venue: MD. CTS. & JUD. PRO. 6-201, 6-202 (2001). Punitive damages: *Owens-Illinois v. Zenobia*, 601 A.2d 633 (Md. 1992).