### *C. Corrections to the Supplemental Report*

Attachment R-C contains two exhibits that I found had errors as reported in the Cantor Supplemental Report. The corrections to these exhibits are minor and do not change my findings or opinions in any material way.

Signature ___s/s Robin A. Cantor____
Robin A. Cantor

DATE _____May 13, 2005_____

**ATTACHMENT R-A**
**MATERIALS CONSIDERED**

Andrew Churg and Francis H. Y. Green, Neoplastic Asbestos-Induced Disease, in Pathology of Occupational Lung Disease (2 ed. 1998).

Armstrong, J. Scott, *Long-Range Forecasting*, 2nd ed., John Wiley & Sons, New York, 1985.

The claims data file "Federal-Mogul Consolidated Claims 02-06-03.mdb" delivered to NCI by messenger from Adam Strochak of Weil, Gotshal & Manges LLP on October 26, 2004; and an additional database of 4,498 records transmitted to NCI staff on November 24, 2004 by Kristen Schweninger of Federal-Mogul.

CMIC Position Paper on Need for Tort Reform in Medical Malpractice Cases, February 2003, http:/www.cmic.biz/legislative/legislative.stm

Edward A. Gaensler *et al.*, Idiopathic Pulmonary Fibrosis in Asbestos Exposed Workers, 144 Am. Rev. Resp. Dis. 689, (1991).

Expert Report of Michael E. Angelina, "Analysis of T&N Ltd's Asbestos Liabilities," September, 2004.

Federal-Mogul Corporation, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 10-K) for the fiscal year ended December 31, 2000.

Frederick C. Dunbar *et al.*, Estimating Future Claims: Case Studies from Mass Tort and Product Liability, Andrews Professional Books, 1996.

Geoffrey Tweedale, *Magic Mineral to Killer Dust, Turner & Newall and the Asbestos Hazard,* Oxford University Press, 2000.

Glater, Jonathan D. "Asbestos Claims Decline, but Questions Rise," *The New York Times*, April 6, 2005.

In re: Federal-Mogul Global Inc., T&N Limited, *et al.*, Disclosure Statement Describing Third Amended Joint Plan of Reorganization (Nos. 01-10578) (Bankr. Del.) (2004).

Kim, Queena Sook, "As Asbestos Claims Continue to Grow, Broker of Settlements Reduces its Role," *The Wall Street Journal*, February 7, 2001.

KPMG Peat Marwick Policy Economics Groups, Estimation of Company Liability Personal Injury, Vol. 1.

Manville Trust e-Extract Version 1.0 database as of December 31, 2003.

Mark A. Peterson, Armstrong World Industries, Inc. Projected Liabilities for Asbestos Personal Injury Claims As of December 2000, In re Armstrong World Industries, Inc., *et al.* (No. 00-4471) (Bankr. Del.) (2003).

Mark A. Peterson, Owens Corning and Fibreboard Projected Liabilities for Asbestos Personal Injury Claims As of October 2000, In re: Owens Corning, *et al* (No. 00-03837) (Bankr. Del.) (2004).

Mark A. Peterson, Report for the National Gypsum Trust on Number of Projected Future Asbestos Personal Injury Claims, September 5, 1997.

Mark Peterson, Syman Sarma, and Michael Shanley, *Punitive Damages, Empirical Findings*, RAND Institute for Civil Justice, R-331-ICJ 1987.

Memorandum to file from Elihu Inselbuch, Nathan D. Finch and Rita C. Tobin regarding Federal Mogul Asbestos Liabilities (October 25, 2002).

Memorandum from Mark Peterson to Elihu Inselbuch and Julie Davis (February 19, 2004).

Memorandum from Mark Peterson to Elihu Inselbuch and Julie Davis regarding Turner & Newall Liabilities for U.K. and U.S. Claims (March 2, 2004).

Memorandum and Order in Re: Owens Corning, et al., v Credit Suisse First Boston, et al, March 31, 2005.

Period Life Tables in 2004 OASDI Trustees Report (March 23, 2004).

List of Limpet product use sites found online at http://www.fmoclaims.com/LLA.html.

RAND Institute for Civil Justice, "Asbestos Litigation," 2005.

Regulation Magazine, "Private Antitrust Enforcement: Compensation, Deterrence, or Extortion." Volume 13, Number 3, Fall 1990.

Report of Robert Kost for the Mealey's Conference, Wall Street Forum: Asbestos, "Solvent Companies with Asbestos Liabilities", April 20, 2004.

Report of William Kerr for the Financial Institutions for Asbestos Reform, "Reducing the Asbestos Litigation Penalty: An Economic Benefit of Asbestos Reform Legislation", October 16, 2003.

Stephen Carroll *et al.*, Asbestos Litigation Costs and Compensation: An Interim Report (2002).

U.S. Department of Commerce, Bureau of the Census, 1967 Census of Construction Industries, Special Reports 1B and 26.

U.S. Department of Commerce, Bureau of Economic Analysis historical Gross Domestic Product by Industry tables, found online at (www.bea.gov).

U.S. Department of Labor, Bureau of Labor Statistics historical Current Employment Surveys, found online at www.bls.gov.

White, Michelle, "Asbestos Litigation: Procedural Innovations and Forum-Shopping," February 2005, NBER working paper.

William J. Nicholson, George Perkel and Irving Selikoff, "Occupational Exposure to Asbestos: Population at Risk and Projected Mortality -- 1980-2030," American Journal of Industrial Medicine 259, 1982.

Woody, Todd "Asbestos Bar May Have a new Deep Pocket" *The Recorder*, July 13, 1993.

Woody, Todd "Chase Man's unlikely heroics" *MotherJones*, November/December 1993 Issue.

"UK Asbestos – The Definitive Guide" found at www.actuaries.org.uk/filed/pdf/proceedings/giro2004/Lowe.pdf

36 Fed. Reg. 10466 (1971)

36 Fed. Reg. 23207 (1971)

48 Fed. Reg. 51086 (1983)

48 Fed. Reg. 51089 (1994)

59 Fed. Reg. 40964 (1994)

1983 OSHA Regulations

1986 OSHA Regulations

Ameren Corporation 10K 2003, 2004

American Biltrite, Inc. 10K 2001, 2002

American International Group 10K 2001, 2002, 2003, 2004

American Standard Company 10K 2002, 2003, 2004

Ashland, Inc. 10K 2001, 2002, 2003, 2004

Borg Warner, Inc. 10K 2003, 2004

BNSF Railway Company 10K 2003, 2004

Congoleum 10K 2001, 2002, 2003, 2004

Crane 10K 2001, 2002, 2003, 2004

Crown Cork and Seal 10K 2001, 2002, 2003, 2004

Cytec Industries Inc. 10K 2002, 2003, 2004

Entrx Corporation 10K 2001, 2002, 2003, 2004

General Cable Corp. 10K 2001, 2002, 2003, 2004

Georgia Pacific Corp. 10K 2001, 2002, 2003, 2004

Goodyear Tire & Rubber Co. 10K 2001, 2002, 2003, 2004

Hercules 10K 2002, 2003, 2004

Honeywell International 10K 2002, 2003, 2004

Jacuzzi Brands, Inc. 10K 2002, 2003, 2004

Lincoln Electric 10K 2001, 2002, 2003, 2004

Owens-Illinois Group, Inc. 10K 2001, 2002, 2003, 2004

RPM International 10K 2001, 2002, 2003, 2004

Union Carbide Corp 10K 2001, 2002, 2003, 2004

Union Pacific 10K 2002, 2003, 2004

United States Steel Crop. 10K 2002, 2003, 2004

Viacom 10K 2001, 2002, 2003, 2004

York International Corporation 10K 2003, 2004

# ATTACHMENT R-B

## Examples of State Laws and Proposed Legislation Since 2001 Affecting Asbestos Personal Injury Claims and Values

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| **Texas** | *Tort reform legislation enacted in June 2003 may reduce the number and value of claims.*<br><br>Provisions that may reduce the *number* of claims: a) For claims filed on or after 9/1/2003, requires that each plaintiff establish proper venue when plaintiffs are added by joinder or intervention; b) For claims filed on or after 9/1/2003, requires courts to decline jurisdiction on the grounds of *forum non conveniens* if the interests of justice and convenience to the parties mandate that a claim is more properly heard outside the state; c) For claims filed on or after 9/1/2003, discourages class action cases by allowing interlocutory appeal of class certification and restricting attorneys' fees; d) Creates a 15-year statute of repose, although there is an exception if the plaintiff was exposed within 15 years of sale; e) Makes it more difficult to impose liability on non-manufacturing sellers; f) Establishes a rebuttable presumption that a product was safe if it met government standards; g) Limits successor liability for claims filed on or after 6/11/2003, or those pending then that have not yet been tried or retried by 9/1/2003. | The new law may reduce the number of claims brought in Texas making it harder to "forum shop" by bringing out-of-state claims to Texas, by limiting mass claims with large numbers of out-of-state plaintiffs, and by making it harder to sue companies with little or no involvement in manufacturing asbestos products. While exception to statute of repose will allow many asbestos claims to continue, those associated with long-lived products such as boilers may be affected. |
| | Provisions that may affect value of claims: a) For cases filed on or after 1/1/2004, requires a party to pay costs and attorneys' fees if they reject a settlement and obtain a "significantly less favorable" judgment (however, this could work the other way if it is the defendant that rejects a settlement offer); b) For cases filed on or after 7/1/2003, eliminates the toxic tort exception for the requirement that joint and several liability not be imposed unless a defendant is more than 50% liable; c) For cases filed on or after 7/1/2003, allows responsibility to be apportioned to third parties such as employers, bankrupt entities and the government, reducing defendants' share of damages; d) For cases filed on or after 7/1/2003, allows punitive damages only if the jury unanimously agrees both on awarding punitives and on the amount. | The new law may reduce the amounts paid by individual defendants by limiting joint and several liability, and by allowing liability to be apportioned to third parties such as the government even if they cannot be sued. It may also bring down the size of verdicts by making it harder to obtain punitive damages. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| **Mississippi** | *Tort reform legislation enacted in June 2004 may reduce number and value of claims. The provisions apply to all claims filed on or after September 1, 2004.* | |
| | Provisions that may reduce the number of claims: a) Reforms venue by allowing suits to be filed only in the county which is the defendant's principal place of business, where the event causing the injury occurred, or, if venue cannot be asserted against a nonresident defendant, where the plaintiff lives; b) Each plaintiff must establish proper venue when plaintiffs are added by joinder; c) Requires courts to decline jurisdiction on the grounds of *forum non conveniens* if the interests of justice and convenience to the parties and witnesses mandate that a claim is more properly heard outside the state, or in proper venue within the state; d) Eliminates liability for premises owners for injury or death to contractors' employees if the contractors knew of the danger, and for non-manufacturing sellers who did not exercise substantial control over design, manufacture, testing, or packaging of the product, alter the product in a way that caused the harm, or have actual knowledge of the defective condition ("innocent sellers who are only conduits of a product"). | The new law may reduce the number of claims brought in Mississippi in the future making it harder to "forum shop" by bringing out-of-state claims to this state, by limiting mass claims with large numbers of out-of-state plaintiffs, and by making it harder to sue companies with little or no involvement in manufacturing asbestos products. |
| | Provisions that may affect value of claims: a) Eliminates joint and several liability except for those who deliberately and consciously pursue a common plan to commit a tortuous act; b) Caps non-economic damages at $1 million; c) Requires clear and convincing evidence that defendant acted with actual malice or willful negligence or committed actual fraud for an award of punitive damages, and that the court determine before entering an award that it is reasonable in amount and rationally related to the purpose of punishment and deterrence; d) No punitive damages against non-manufacturing sellers who did not exercise substantial control over design, manufacture, testing, or packaging of the product; alter the product in a way that caused the harm; or have actual knowledge of the defective condition; e) Caps on punitive damages imposed on a sliding scale based on defendant's net worth, maximum is $20 million for defendants with a net worth of over $1 billion. | The new law may reduce the amounts paid by individual defendants by limiting joint and several liability to those who deliberately act in concert, capping non-economic damages, and capping and setting a higher standard for awarding punitive damages. |
| **New York** | Affecting number of claims. The New York County Supreme Court established an inactive docket on December 19, 2002 and the Supreme Court for the 5th Judicial District (Syracuse) did so in January 21, 2003. Nonmalignant claims that do not meet impairment criteria are placed on the inactive docket until the plaintiff's condition progresses to the level of an actionable injury, at which point they are released for trial proceedings. | The inactive docket may reduce the number of nonmalignant claims filed in these jurisdictions by reducing the incentive to file claims for plaintiffs who are unimpaired. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | Affecting value of claims. Joint liability abolished for noneconomic damages for defendants less than 50% at fault, except when defendant is found liable for: (1) intentional actions; (2) use, operation, or ownership of a motor vehicle; (3) having acted with reckless disregard for the safety of others; (4) certain provisions of labor law; (5) unlawfully releasing hazardous substances; (6) product liability actions where the manufacturer of the product is not a party to the action, jurisdiction over the manufacturer could not be obtained, and liability would have been imposed on the manufacturer through strict liability; (7) actions in which the defendants acted knowingly or intentionally in concert. | Limiting joint liability for non-economic damages may tend to reduce amounts paid to individual plaintiffs |
| Ohio | *Reform legislation signed into law June 2004, went into effect September 2. All provisions except medical criteria apply to claims filed on or after effective date.* | |
| | Affecting claim numbers: a) Establishes medical criteria which make impairment an essential element of an asbestos claim, and states that claimants must demonstrate that they meet the criteria to have an actionable case. Claimants with nonmalignant disease must show impairment according to standard definitions, and claimants who are current or former smokers and are claiming lung cancer must meet exposure criteria. The evidence must be supplied by a competent medical authority; mass screenings and doctors who are frequent witnesses will not qualify. Applies not only to future claims but also to all claims pending at effective date--claimant will have 120 days to file the necessary information (however, an Ohio court ruled that the law does not affect railroad-related suits, which are covered by the FELA).<br><br>b) Premises owners not liable unless asbestos exposure occurred on owner's property—i.e., no "take home" claims.<br><br>c) Rebuttable presumption for alleged exposure before 1972 that owner knew that Ohio had adopted limits for safe levels of exposure and that asbestos-containing products on the premises were used only below the safe levels. May be rebutted by showing that owner knew or should have known that limits were regularly exceeded in immediate breathing zone of plaintiff. No liability to any invitee who came onto property to work with, install, or remove asbestos products if invitee's employer held itself out as qualified to perform the work. Owner hiring qualified contractor before 1972 not liable for any asbestos-related injury caused by contractor's employees/agents unless the owner directed, or gave or denied permission for, the activity that caused the injury; for 1972 forward no liability unless plaintiff establishes owner's violation of an established safety standard that was in the plaintiff's breathing zone and a proximate cause of his condition. For 1946-1972 the threshold limit for asbestos was 5 million particles/cf. | The new law may reduce the number of nonmalignant claims filed in the future, as those who cannot meet the medical criteria will have no incentive to sue. Because the new rules will apply to pending claims, which will be sent to an inactive docket if they don't meet the criteria, pending caseloads may drop as well. Lung cancer claims may also drop due to stricter criteria for smokers. Claims may also be reduced by the elimination of damages for fear and increased risk of cancer, and by the more strict rules for proving liability. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | d) Requires that plaintiff show exposure to defendant's products was a substantial contributing factor to his injury by proving manner, frequency, and proximity of exposure to defendant's particular products. | |
| | e) No damages may be awarded for fear of cancer or increased risk of cancer.<br>Limiting claim values: a) For punitive damages against manufacturer or supplier in product liability, plaintiff must show by clear and convincing evidence that harm was the result of misconduct that manifested a flagrant disregard for the safety of persons who might be harmed by the product. Specific factors to be considered in determining amount.<br>b) Non-economic damages limited to the greater of $250,000 or 3 x the plaintiff's economic loss, maximum $350K per plaintiff or $500K per occurrence. May go to $500K for permanent physical deformity or disability.<br>c) Joint and several liability only for defendants with more than 50% responsibility, unless intentional tort has been proved; others liable only for their proportionate share. | Amounts paid by individual defendants may be reduced by restriction on joint and several liability, and verdicts may be reduced by tougher standard for punitive damages and limit on non-economic damages. |
| | *2005 General Tort Reform*<br>On January 6, 2005, the Governor signed a comprehensive tort reform bill into law. S.B. 80 modifies conditions under which punitive damages may be awarded (may not be awarded against a manufacturer or supplier unless the harm was the result of misconduct that manifested a flagrant regard for the safety of persons who might be harmed by the product) and caps them at two times compensatory for large employers. For small employers (≤ 100 employees, or ≤ 500 employees for manufacturers), cap is lesser of two times compensatory or 10% of employer's net worth, with a maximum of $350,000. Caps non-economic damages, such as those for pain and suffering, at the greater of $250,000 or three times economic damages, up to a maximum of $350,000. Permits the defendant in a tort action to introduce evidence of any amounts or benefits payable to the plaintiff as a result of the injury, death or loss that is the subject of the claim, abolishing the "collateral source" rule except when there is a right of subrogation or when the amount or benefit payable to the plaintiff is from life or disability insurance. Also limits successor liability in asbestos cases. | May reduce damage awards. |
| **Maryland** | Affecting claim numbers: a) The Baltimore City, Maryland court established an inactive docket for unimpaired claims on December 9, 1992.<br>b) Allows but does not require court to stay or dismiss claims under *forum non conveniens* if it court finds that in the interest of substantial justice an action should be heard in another forum. | The inactive docket may reduce the number of nonmalignant claims by reducing the incentive to file claims with no impairment. Since venue laws are not overly liberal, |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | c) Civil actions must be brought in a county where the defendant resides, carries on a regular business, is employed, or for corporation, where it maintains its principal office in the state.<br>d) Negligence actions may be brought where cause of action arose.<br>Affecting claim values: Requires clear and convincing evidence for punitive damages. | Maryland may not appeal to forum shoppers. |
| Georgia | *Medical criteria legislation enacted in 2005 applies to all pending and future claims.* | |
| | Affecting claim numbers:<br>a) Medical Criteria: Establishes medical criteria which make impairment an essential element of an asbestos or silica claim. Claimants must present prima-facie evidence that they meet the criteria to have an actionable case. Claims pending at date of enactment will be dismissed after 180 days unless prima-facie evidence provided. All asbestos and silica claims filed after the effective date must include a sworn information form providing specified information. Claim for asbestos-related malignant disease requires report from Board-certified pathologist certifying to a reasonable degree of medical certainty that asbestos was a substantial contributing factor in the cancer and that the cancer was not more probably the result of other factors. Claimants with asbestos-related nonmalignant disease must show impairment according to standard definitions. Similar requirements are provided for silica claims. | By requiring evidence of impairment, has potential to significantly reduce non-malignant claims and some malignant claims. |
| | b) Venue: An asbestos or silica claim may be brought in Georgia only if the claimant resides or was exposed there; pending claims by nonresidents may continue as long as impairment standard is met. A claim meeting the requirements of the statute must be filed in the county where the plaintiff resides or was exposed.<br>c) Consolidation: Requires consent of all parties for consolidation of claims other than those relating to the same exposed person and members of his/her household. Asbestos claims must be individually filed in separate civil actions. | Venue and consolidation restrictions may reduce claims by limiting out of state claims and mass filings. |
| Missouri | *H.B. 393, a general tort reform bill, was signed by the Governor on March 29, 2005. The provisions apply to all causes of action filed after August 28, 2005.* | |
| | Affecting claim numbers: Venue Restrictions: For corporate defendants in tort actions where the original injury occurred outside Missouri, venue is in any county where the registered agent is located | May lower claim numbers by reducing out of state claims. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | or, if the plaintiff's principal place of residence was in Missouri when plaintiff was first injured, in the county of plaintiff's principal place of residence on the date plaintiff was first injured. Where original injury occurred in Missouri, venue is in county where plaintiff first injured. The court must transfer venue to the county unanimously chosen by the parties if all parties agree in writing to a change of venue. If parties are added after the date of the transfer and they do not consent to the transfer, the cause of action will be transferred to a county in which venue is otherwise appropriate. The judge will transfer the case to a proper forum if a plaintiff or defendant which would alter the determination of venue if originally added or removed is added or removed prior to trial. | |
| | Affecting claim values:<br><br>(a) Interest: Pre-judgment interest must be calculated 90 days after the demand or offer is received by certified mail, return receipt requested. The demand or offer must be in writing and be accompanied by an affidavit from the claimant describing the nature of the claim and the damages claimed. For wrongful death, personal injury, and bodily injury claims, the demand letter must also list the medical providers of the claimant and include copies of all reasonably available medical bills, other medical information, and authorization to allow the other party to obtain employment and medical records. Claims for pre-judgment and post-judgment interest in tort actions are calculated at an interest rate that is equal to the intended Federal Funds Rate plus 3% for pre-judgment interest and 5% for post-judgment interest.<br><br>(b) Medical expenses: Parties may introduce evidence of the value of medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party. There is a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the treatment rendered.<br><br>(c) Non-economic damages are capped at $350,000, regardless of the number of defendants.<br><br>(d) Punitive damages: Punitive damages limited to greater of $500,000 or 5x the net amount of the judgment. "Punitive damage award" defined to include award for aggravating circumstances as well as punitive or exemplary damages. Allows discovery of a defendant's assets only after the trial court finds that the plaintiff will have a valid case for punitive damages.<br><br>(e) Joint & Several. Allows joint and several liability only if a defendant is found to be 51% or more at fault. If a defendant is found to be less than 51% at fault, the defendant is only responsible for the percentage of the judgment for which it is determined to be responsible by the trier of fact. A party is responsible for the fault of another defendant or for payment of the proportionate share of another | May reduce claim values by limiting punitive and non-economic damages and joint and several liability and by introducing standards for medical expenses. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | defendant if the other defendant was an employee of the party or if the party's liability for the fault of another arises out of the duty created by FELA. Defendants are only severally liable for the percentage of punitive damages that are attributed to the defendant by the trier of fact. | |
| **Florida** | *Proposed: As of May 13, 2005, H.B. 1019, medical criteria legislation had been approved by the Florida legislature and was awaiting Governor Bush's signature. The Governor is expected to sign the bill.* | |
| | Affecting claim numbers: | |
| | (a) Establishes medical criteria which make impairment an essential element of an asbestos or silica claim. Claimants must present a written report and supporting test results constituting prima-facie evidence that they meet the criteria to have an actionable case. For claims pending at date of enactment, report and test results must be filed at least 30 days before setting trial date. All asbestos and silica claims filed after the effective date must include a sworn information form providing specified information. | By requiring evidence of impairment, has potential to significantly reduce non-malignant claims and some malignant claims. |
| | Claims for cancer of lung, larynx, pharynx, or esophagus require x-ray or CT scan showing asbestosis, 10 year latency, evidence of substantial occupational exposure or extended contact with person who had substantial occupational exposure, conclusion by qualified physician that other factors were not more probably the cause of the medical findings. For stomach, colon, or rectal cancer, claimants must show either asbestosis or pleural thickening, *or* substantial occupational exposure, plus physician's conclusion that asbestos a substantial contributing factor and that other factors were not more probably the cause. Smokers with these cancers must also show impairment due to asbestosis. Claimants with asbestos-related nonmalignant disease must show prima facie evidence of impairment including evidence that qualified physician has taken a detailed occupational and exposure history and a detailed medical and smoking history; 10-year latency; AMA Class 2 impairment; diagnosis of asbestosis or pleural thickening according to specified standards; and showing that impairment is not COPD, according to specified standards. Similar requirements are provided for silica claims. | |
| | (b) No damages may be awarded for fear of cancer or increased risk of cancer. | May reduce nonmalignant claims. |
| | (c) Venue: An asbestos or silica claim may be brought in Florida only if the claimant is domiciled or was exposed there; pending claims by nonresidents may continue as long as impairment standard is met. | May reduce claims by limiting out of state claims. |
| | (d) Specifies that statute of limitations will follow the "two-disease" rule – i.e., a nonmalignant claim | May reduce number of non-malignant claims filed for fear that |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | is a cause of action distinct from a malignant one. | statute will expire. |
| | (e) Limits claims against product sellers, lessors, and renters. | May reduce claims against peripheral defendants. |
| | Affecting claim values: a) Prohibits punitive damages for asbestos and silica claims; b) requires plaintiff to file written report of collateral source payments when complaint is filed and update regularly. Judge may allow offsets. | May lower amounts paid to claimants. |
| | The provisions are effective for all civil actions asserting an asbestos claim for which trial has not begun by July 1, 2005. | |
| Texas | *Proposed: S.B. 15, a medical criteria bill, is advancing towards passage. Was passed by the Senate on April 17, 2005, and by the House on May 11, 2005. The Governor is expected to sign the bill.* | |
| | Affecting claim numbers. | |
| | (a) Medical criteria. A claimant asserting an asbestos-related injury must serve upon the defendant a report by a physician board-certified in pulmonary, internal, or occupational medicine, or, for a malignant condition, oncology or pathology. For a malignant claim the report must state that the injured person has been diagnosed with an asbestos related cancer and, to a reasonable degree of medical certainty, that asbestos exposure was the cause. For a nonmalignant claim, the report must state that the physician has taken a detailed occupational and exposure, medical and smoking history; set out the details of the histories and verify 10-year latency; verify that the exposed person has an x-ray or CT scan showing specified indicators of asbestosis or bilateral diffuse pleural thickening; verify that the exposed person has demonstrated asbestos-related impairment according to specific criteria; and verify that the physician has concluded that the medical findings and impairment were not more probably the result of other causes. The report should be accompanied by copies of all test results, ILO classifications, etc., that support the findings. Similar requirements apply to silica claims. The physician may not rely on reports or opinions of any doctor, clinics, laboratory or testing company that has performed an exam, test or screening that was conducted in violation of any law, regulation, code of practice, etc. The report must be served on the defendant no more than 30 days after the defendant answers or otherwise enters an appearance in the action. For claims pending on date of enactment, the report must be served on defendants on or before the earlier of 60 days before trial or 180 days after date of enactment, unless trial commences within 90 days after date of enactment. If the report is not filed timely or if an individual with a non-malignant claim does not show functional impairment, defendant may file a motion to dismiss and all proceedings will be stayed until the motion is acted on. | By requiring evidence of impairment, has potential to significantly reduce non-malignant claims and some malignant claims. |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
| --- | --- | --- |
| | (b) Consolidation. Claims related to more than one exposed person may not be joined in a single trial unless all parties agree. | May reduce claims by eliminating mass consolidations. |
| | (c) The state MDL rules will apply to any asbestos or silica action pending on date of enactment unless trial has commenced or is set to within 90 days, the action was filed before September 1, 2003 and the claimant files a report within 90 days, or the action was filed before September 1, 2003 and the claimant has been diagnosed with an asbestos-related cancer. If the claimant files to file a report within the prescribed time, the defendant may file a notice of transfer to the MDL pretrial court. If the MDL pretrial court determines that a complying report was filed, it will remand the claim back to the trial court. If a claimant in the MDL pretrial court wants remand to the trial court, a qualifying report must be filed. | |
| | (d) Requires trial courts to provide mesothelioma claimants with expedited trial dates | |
| | (e) This legislation is not intended to affect any bankruptcy proceedings or the ability of any claimant to meet the claims criteria of a bankruptcy trust. | |
| **Arkansas** | *Proposed: S.B. 1133 is a medical criteria bill. No action currently scheduled.* | |
| | Affecting claim numbers: Defines physical impairment as an essential element of an asbestos or silica claim requiring claimants filing asbestos or silica cases to provide prima- facie evidence of physical impairment in order to be able to file such a claim. For malignant asbestos claims this means that a Board certified pathologist has made a diagnosis of mesothelioma or primary cancer and has certified to a reasonable degree of medical certainty that asbestos was a substantial contributing factor in the cancer and that the cancer was not more probably the result of other causes. For non-malignant claims this means a physician has taken a detailed occupational and exposure, medical and smoking history; 15 year latency; asbestosis diagnosed through pathology or through 1/1 x-ray or diffuse bilateral pleural thickening; and impairment meeting the standards of the AMA Guides. Similar requirements for silica claims. | By requiring evidence of impairment, has potential to significantly reduce non-malignant claims and some malignant claims. |
| **Missouri** | *Proposed: H.B. 741 is a medical criteria bill. It has been referred to the Judiciary Committee; no further action.* | |
| | Affecting claim numbers: | |
| | (a) Defines physical impairment as an essential element of an asbestos requiring claimants filing asbestos cases to provide prima facie evidence of physical impairment in order to be able to file such a | By requiring evidence of impairment, has potential to |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | claim. For non-malignant claims this means that a qualified physician has taken a detailed occupational and exposure history and a detailed medical and smoking history; 10-year latency; AMA Class 2 impairment; a diagnosis of asbestosis or pleural thickening according to specified standards; and a showing that impairment is not COPD but that asbestos exposure was a substantial contributing factor, according to specified standards. Smokers with lung cancer must have a diagnosis and a finding that asbestos a substantial contributing factor; 10-year latency (as a rebuttable presumption); and meet exposure standards. For wrongful death action must show death was due to physical impairment, that the death and physical impairment were the result of a medical condition; and that exposure to asbestos was a substantial contributing factor to the medical condition. Claimants must present a written report and supporting test results constituting prima-facie evidence that they meet the criteria within 30 days of filing to have an actionable case. For claims pending on August 28, 2005, report and test results must be filed within 120 days after that date. | significantly reduce non-malignant claims and some malignant claims. |
| | (b) No damages may be awarded for fear of cancer or increased risk of cancer. | May reduce non-malignant claims. |
| | (c) Specifies that statute of limitations will follow the "two-disease" rule – i.e., a nonmalignant claim is a cause of action distinct from a malignant one. | May reduce number of non-malignant claims filed from fear that statute will expire. |
| | (d) Specifies that nothing in the legislation is intended to affect bankruptcy proceedings or the ability of a claimant to show that he meets the claims criteria of a bankruptcy trust. | |
| | (e) Claimant has the burden of proof to show for each named defendant that the defendant's was a substantial contributing to his injury or loss, if he is claiming injury was the result of a tortuous action; or that he was exposed to asbestos manufactured, supplied, or used by that defendant and that the exposure was a substantial contributing to his injury or loss, if he is claiming injury or loss was the result of exposure. The trier of factor may consider manner of exposure, proximity of the claimant, frequency and length of exposure, and any factors mitigating the exposure. | Stricter burden of proof may reduce number of claims. |
| | (f) Limits liability under veil piercing doctrine. | May reduce claims by making it more difficult to assert a claim against affiliated, successor, etc. entities. |
| **West Virginia** | *Proposed: H.B. 3036 is a medical criteria bill. Applies to any action asserting an asbestos or silica claim that has not been commenced as of date of enactment. The bill is in the House Judiciary Committee; no action to date.*<br><br><u>Affecting claim numbers:</u> | |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
|---|---|---|
| | (a) Defines physical impairment as an essential element of an asbestos or silica claim, requiring claimants filing asbestos cases to provide prima facie evidence of physical impairment in order to be able to file such a claim. For non-malignant claims this means that a qualified physician has taken a detailed occupational and exposure history and a detailed medical and smoking history; 10-year latency; AMA Class 2 impairment; a diagnosis of asbestosis or pleural thickening according to specified standards; showing that impairment is not COPD but that asbestos exposure was a substantial contributing factor, according to specified standards; and a finding by physician that condition was not more probably the result of other factors. Smokers with lung cancer must have a diagnosis and finding that asbestos was a substantial contributing factor; 10-year latency; radiological or pathological evidence of asbestosis *and* meet exposure standards; and a finding by physician that condition was not more probably the result of other causes. For nonsmokers with lung cancer and for Other Cancer claimants the same criteria except the claimant may have asbestosis *or* exposure. Claimants must present a written report and supporting test results constituting prima-facie evidence that they meet the criteria in order to have an actionable case. For claims pending on effective date, the report and test results must be filed within 60 days after that date or no later than 30 days before commencement of trial. If a prima-facie showing of impairment is not made, the claim will be placed on an inactive docket. | By requiring evidence of impairment, has potential to significantly reduce non-malignant claims and some malignant claims. |
| | (b) Specifies that statute of limitations will follow the "two-disease" rule – i.e., a nonmalignant claim is a cause of action distinct from a malignant one. | May reduce number of non-malignant claims filed from fear that statute will expire. |
| | (c) Requests the Supreme Court of West Virginia to adopt rules for consolidation of asbestos and silica claims, and specifically, to adopt a rule permitting consolidation only with the permission of all parties, or permitting a court to consolidate only those asbestos or silica claims relating to the same exposed person and members of that exposed person's household. | |
| **Louisiana** | ***Proposed: H.B. 1401 / S.B. 853 was medical criteria legislation proposed in the 2003 legislative session. No action was taken on H.B. 1401; S.B. 853 was placed on the Senate calendar, but then "withdrawn from the files of the Senate."*** | |
| | Affecting claim numbers: | |
| | a) Inactive docket: Establishes an inactive docket registry in the state supreme court to which claims will be assigned unless the complaint and information form are accompanied by 1) a written statement by a physician board-certified in pathology indicating a diagnosis of mesothelioma; or 2) a written | By requiring evidence of impairment, and placing unimpaired claims on an inactive docket, might |

| State | Summary of Laws and Proposed Laws Affecting Claim Numbers or Values | Potential Effect on Claims or Values |
| --- | --- | --- |
| | diagnosis of lung, esophageal, laryngeal, or colon cancer accompanied by a medical report by a board-qualified physician showing the cancer to be a primary cancer, a statement that the claimant has demonstrated a reliable history of exposure to asbestos and a latency period of at least 15 years from first exposure; a clinical or pathological diagnosis of asbestosis; and a statement that to a reasonable degree of medical certainty the cancer was substantially caused by exposure to asbestos fibers. To be removed from the inactive docket the claimant must file with the trial court a petition for removal accompanied by the impairment evidence below; defendants have 14 days to object. If a defendant objects the claimant's documentation must be submitted to an independent medical expert selected randomly from a list, who must submit a report and recommendation to the court within ten days after receipt. If the expert determines the medical criteria for removal have been met, the defendant must pay the costs of the expert; if not met, the claimant must pay the costs. If the trial court orders the claim removed from the inactive docket, the claim and supporting documentation are transferred to the trial court.<br><br>(b) Impairment. Declares impairment to be an essential element of a claim; no person may bring a non-malignant asbestos claim without prima facie evidence of physical impairment. This includes a diagnosis of asbestosis or diffuse pleural thickening according to specific criteria; a detailed medical history including non-occupational causes of pleural and lung changes and a smoking history; a reliable history of exposure; a statement by the diagnosing physician that the medical findings were not more probably the result of other causes; a determination that the claimant has permanent respiratory impairment of at least AMA Class 2; and a determination based on specified criteria that asbestosis or pleural thickening is a substantial contributing factor to the claimant's impairment | have significantly reduced non-malignant claims and some malignant claims. |
| | (c) Venue: Claims may be brought only by a plaintiff who is domiciled or was exposed to asbestos in Louisiana. If more than one plaintiff is joined in a civil action, each must show proper venue.<br><br>(d) Consolidation. Claims may not be brought on behalf of a group or class of plaintiffs and claims may not be joined unless each claimant files a claim and information form and pays the applicable court costs. | Might have reduced claims by limiting filings from out of stat and limiting class actions and mass filings.. |

**Sources:**

**Texas: Enacted:** H.B. 4, (Chapter 204, 78th R.S. (2003)); James A. Lowery et al., *Highlights of Texas Tort Reform 2003*, 18-16 Mealey's Litig. Rep. Asb. (2003). Venue, forum non conveniens, and class action provisions are effective for cases filed on or after September 1, 2003; other provisions have varying effective dates. **Proposed:** H.B. 8, S.B. 15, 2005 Leg., Reg. Sess. (Tex. 2005) and Bill Status page of Texas State Legislature website, http://www.capitol.state.tx.us/tlo/legislation/bill_status.htm.

**Mississippi:** H.B.No. 13 as sent to Governor, First Extraordinary Session (2004). Provisions apply to causes of action filed on or after September 1, 2004.

**New York:** Inactive dockets: *In re New York City Asbestos Litig.*,1 (Sup. Ct. N.Y. Dec. 19, 2002) (Order Amending Prior Case Mgmt. Orders); *In re Fifth Jud. Dist. Asbestos Litig.*, 1, (Sup. Ct. N.Y. Jan 21, 2003) (Amendment to Am. Case Mgmt. Order No. 1). Joint and several liability: N.Y. CIV. PRAC. L. & R. §§ 1601-1602 (2001).

**Ohio:** Am. Sub. H.B. No. 292, 125th Gen. Assembly 2003-2004; Richard G. Schuster and Nina I. Webb-Lawton, *Ohio's Groundbreaking Asbestos Legislation*, 19-14 Mealey's Litig. Rep. Asb. 22 (2004). Punitive damages: OHIO REV. CODE §§2307.80 (2001), 2315.21 (2002). Non-economic damages: OHIO REV. CODE §2323.43 (2003). Joint liability: OHIO REV. CODE. § 2307.22 (2003). Tort reform bill: 20-2 Mealey's Litig. Rep. Asb. 32 (2005); text of S.B. 80, 125th Gen. Assemb.

**Maryland:** Inactive docket: *In re Asbestos Personal Injury and Wrongful Death Asbestos Cases*, Order Establishing An Inactive Docket For Asbestos Personal Injury Cases, No 92344501 (Cir. Ct. Baltimore City, Md. Dec. 9, 1992). Forum non conveniens: MD. CTS. & JUD. PRO. §-104 (a) (2001). Venue: MD. CTS. & JUD. PRO. 6-201, 6-202 (2001). Punitive damages: *Owens-Illinois v. Zenobia*, 601 A.2d 633 (Md. 1992).

**Georgia**: Ga. H.B. 416, 2005-2006 Legis. Sess. (2005).

**Florida:** Fla. H.B. 1019 (2nd engrossed version), 2005 Legis. Sess. and the Bills page of the Florida House website, http://www.myfloridahouse.gov/bills.aspx

**Arkansas:** Ark. S.B. 1133, 85th Gen. Assemb. (2005) and the Bills and Resolutions page of the Arkansas Senate website, http://www.arkleg.state.ar.us/2005/data/ACSB&R.asp.

**Missouri:** Mo. H.B. 393 and H.B. 741, 2005 Legis. Sess., and joint bill tracking section of Missouri House website, http://www.house.state.mo.us/jointsearch

**West Virginia:** W.V. H.B. 3036, 2005 Reg. Sess. and bill status page of West Virginia Legislature website, http://www.legis.state.wv.us/bill_status/bstatmenux/bstatfrm.cfm

**Louisiana:** La. H.B. 1401, S.B. 853 and bill histories on Louisiana legislature website, http://www.legis.state.la.us/.

**ATTACHMENT R-C**
**CORRECTIONS TO THE SUPPLEMENTAL REPORT**

Revised Exhibit 16: Manville Nonmalignant Claims Filings Experience
(1998Q1 - 2004Q3)
25,000
20,000
15,000
10,000
5,000
0
Claims
1998Q1
1998Q2
1998Q3
1998Q4
1999Q1
1999Q2
1999Q3
1999Q4
2000Q1
2000Q2
2000Q3
2000Q4
2001Q1
2001Q2
2001Q3
2001Q4
2002Q1
2002Q2
2002Q3
2002Q4
2003Q1
2003Q2
2003Q3
2003Q4
2004Q1
2004Q2
2004Q3
File Year and Quarter
Source: Manville Trust asbestos claims database, Setember 2004.

**Revised Exhibit 30: Liability Calculations by Compensated Class With File Year Proxy for Death Year**

| Compensated Group | Discounted NPV |
|---|---|
| SBND and SBNP | $139.9 |
| Pending | 420.5 |
| Future Claims | 2,286.6 |
| **Total** | **$2,846.9** |

**Source:** NCI T&N Claims Database.
**Notes:** (1) Values are in millions of dollars.
(2) Values in the Discounted NPV framework are discounted to 2001.

R-C-1