IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL T. THORNTON | ) | Case No. CV-99-395724 |
| JAMES MARSTELLER | ) | Case No. CV-99-386916 |
| DAVID J. ZEPP | ) | Case No. CV-01-450637 |
| ALVIN LONGBRAKE | ) | Case No. CV-95-293526 |
| HOWARD G. BEARD | ) | Case No. CV-95-293588-072 |
| MICHAEL J. DUPAY, JR. | ) | Case No. CV-95-296215 |
| RONALD H. DAVIDSON, SR. | ) | Case No. CV-95-296215 |
| PAUL S. REMENARIC | ) | Case No. CV-95-293468 |
| JOHN C. CULLEN | ) | Case No. CV-95-293312-002 |
| DARVIN RUSSELL | ) | Case No. CV-00-420647 |
| JAMES F. WOODRUM, | ) | Case No. CV-02-482141 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ENTRY AND OPINION** |
| -vs- | ) | |
| | ) | |
| A-BEST PRODUCTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

The instant actions were filed in Cuyahoga County, Ohio between 1995 and 2003.

Plaintiffs alleged in their Complaints that they developed lung or other cancers as a result

of their occupational exposure to asbestos-containing products manufactured and/or

supplied by Defendants. Plaintiffs' cases advanced through the discovery process:

interrogatories were answered, depositions conducted, and expert medical reports were

exchanged. Plaintiffs responded to Defendants' Motions for Summary Judgment and this

Court heard argument and ruled on said Motions. These cases were scheduled for trial

and pre-trial motions were argued and resolved. The trial dates were continued to

October 2004 following the settlement of Plaintiffs' claims by several Defendants.

On September 2, 2004, Am. Sub. H.B. 292 took effect, and is now the law of Ohio. Following the effective date of Am. Sub. H.B. 292, the remaining Defendants filed motions with this Court to remove the above-captioned cases from the trial list. These motions were made on the grounds that challenges to and hearings on Plaintiffs' prima facie showing under the statute could not be completed before the trials were set to commence. Pursuant to the Case Management Order, paragraph B1.(11), "[e]ach defendant shall be deemed to have joined in any other defendant's motion where the granting of the motion would benefit it or all defendants generally." Therefore, the briefs submitted by Vorys, Sater, Seymour and Pease LLP on behalf of its clients[1] are deemed submitted by all remaining Defendants in the aforementioned eleven cases.

This Court entertained oral arguments on this issue on October 6, 2004. At that time, we scheduled further briefing and argument. On November 12, 2004, Plaintiffs filed their brief[2]. On November 19, 2004, Defendants filed their brief[3]. At a hearing on November 23, 2004, Plaintiff's counsel requested the opportunity to file a post-hearing brief, which was granted by this Court. Plaintiffs filed their post-hearing brief[4] on December 7, 2004, and Defendants responded[5] on December 20, 2004.

II.    **AMENDED SUBSTITUTE HOUSE BILL 292**

    A.    **Introduction**

---

[1]    Defendants, American Standard Inc., individually and as alleged successor to Westinghouse Air Brake Company, Certainteed Corporation, Dana Corporation, the Goodyear Tire & Rubber Company, Treco Construction Services, Inc., FKA the Rust Engineering Company, and Union Carbide Corporation.

[2]    File & Serve I.D. #4598759
[3]    File & Serve I.D. #4647419
[4]    File & Serve I.D. #4740923
[5]    File & Serve I.D. #4812863

In enacting Am. Sub. H.B. 292 ("the Act"), it was the intent of the General Assembly to: "(1) give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future." See Am. Sub. H.B. 292 § 3(B).

The Act categorizes claimants into three distinct categories: (1) claimants advancing a claim based on a "non-malignant condition"; (2) claimants who are smokers and advancing a lung cancer claim; and (3) claimants who are advancing a wrongful death claim. Each category of claimants must provide a prima facie showing of evidence of exposure to asbestos. The instant action concerns a group of claimants who are smokers alleging an asbestos claim based upon lung cancer; therefore, R.C. § 2307.92(C)(1) is applicable. R.C. § 2307.92(C)(1) provides in pertinent part:

> (C)(1) No person shall bring or maintain a tort action alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker, in the absence of a prima-facie showing, in the manner described in division (A) of section 2307.93 of the Revised Code, that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition. That prima-facie showing shall include all of the following minimum requirements:
>
> (a)    A diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to that cancer;

3

> (b)     Evidence that is sufficient to demonstrate that at least ten years
> have elapsed from the date of the exposed person's first exposure to
> asbestos until the date of diagnosis of the exposed person's primary lung
> cancer. The ten-year latency period described in this division is a
> rebuttable presumption, and the plaintiff has the burden of proof to rebut
> the presumption[6].
>
> (c) Either of the following:
>> (i)     Evidence of the exposed person's substantial occupational
>> exposure to asbestos;
>> (ii)    Evidence of the exposed person's exposure to asbestos at
>> least equal to 25 fiber per cc years as determined to a reasonable
>> degree of scientific probability by a scientifically valid
>> retrospective exposure reconstruction conducted by a certified
>> industrial hygienist or certified safety professional based upon all
>> reasonably available quantitative air monitoring data and all other
>> reasonably available information about the exposed person's
>> occupational history and history of exposure to asbestos.

R.C. § 2307.92(C)(1).

The Act further provides that the plaintiff in any tort action who alleges an

asbestos claim shall file, within thirty days after filing the complaint or other initial

pleading, a written report and supporting test results constituting prima-facie evidence of

the exposed person's physical impairment that meets the minimum requirements specified

in division (B), (C), or (D) of section 2307.92 of the Revised Code, whichever is

applicable. The defendant in the case shall be afforded a reasonable opportunity, upon the

defendant's motion, to challenge the adequacy of the proffered prima-facie evidence of

the physical impairment for failure to comply with the minimum requirements specified

in division (B), (C), or (D) of section 2307.92 of the Revised Code. The defendant has

one hundred twenty days from the date the specified type of prima-facie evidence is

proffered to challenge the adequacy of that prima-facie evidence. If the defendant makes

---

[6]     The ten-year latency period requirement is not in dispute with regard to the instant Plaintiffs;
therefore, this Court will not discuss R.C. § 2307.92(C)(1)(b).

4

that challenge and uses a physician to do so, the physician must meet the requirements specified in divisions (Z)(1), (3), and (4) of section 2307.91 of the Revised Code. R.C. §2307.93(A)(1).

The Act also controls pending litigation. With respect to any asbestos claim that is pending on the effective date of this section, the plaintiff shall file the written report and supporting test results described in division (A)(1) of this section within one hundred twenty days following the effective date of this section. Upon motion and for good cause shown, the court may extend the one hundred twenty-day period described in this division. R.C. § 2307.93(A)(2).

### B.    The Savings Clause – R.C. 2307.93(A)(3)

The instant actions were filed in Cuyahoga County, Ohio between 1995 and 2003. Since they were pending on the effective date of the Act (September 2, 2004), the Savings Clause must be addressed. The Savings Clause provides in pertinent part:

> (3)(a) For any cause of action that arises before the effective date of this section, the provisions set forth in divisions (B), (C), and (D) of section 2307.92 of the Revised Code are to be applied unless the court that has jurisdiction over the case finds both of the following:
>
>> (i) A substantive right of a party to the case has been impaired.
>> (ii) That impairment is otherwise in violation of Section 28 of Article II, Ohio Constitution.
>
> (b) If a finding under division (A)(3)(a) of this section is made by the court that has jurisdiction over the case, then the court shall determine whether the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that is in effect prior to the effective date of this section.

R.C. §2307.93(A)(3).    Plaintiffs argue R.C. 2307.93(A)(3) operates as a "conditional retroactivity provision" under which the court having jurisdiction must determine first if a plaintiff asserting an asbestos claim that was filed or accrued before September 2, 2004

5

has sufficient evidence to support the cause of action or the right under the law codified in Am. Sub. H.B. 292. See Plaintiffs' Memorandum on Applicability of Am. Sub. H.B. 292 to Trial-Listed Cases[7] at p. 3 ("Plaintiffs' Hearing Brief") (referencing State of Ohio ex rel. International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 3 et al. v. Court of Common Pleas of Cuyahoga County (8th Dist., Respondent's Brief p. 16)). The County Prosecutor interpreted the Savings Clause of the Act as follows:

> In the event that the plaintiff does *not* have sufficient evidence to support the cause of action or the right to relief under Am. Sub. H.B. 292 but *does* have sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that was in effect prior to the effective date of Am. Sub. H.B. 292, then the plaintiff's case will *not* proceed under Am. Sub. H.B. 292 but *will* proceed under the law that was in effect prior to the effective date of Am. Sub. H.B. 292. In that event, Am. Sub. H.B. 292 again would not appear to impair a substantive right of the plaintiff.

See State of Ohio ex rel. International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 3 et al. v. Court of Common Pleas of Cuyahoga County (8th Dist., Respondent's Brief p. 16).

Defendants contend Plaintiffs fundamentally misread the Savings Clause: "Contrary to Plaintiff's position, the 'safety valve' simply requires that, for cases that were pending on September 2, 2004, the Court should apply an individualized retroactivity analysis. That is, the Court is to determine whether a substantive right has been impaired and if so whether that impairment violates Article II, Section 28 of the Constitution. See R.C. 2307.92(A)(3)(a). Section 2307.93(A)(3)(b) provides that, if the Court determines that the statute does unconstitutionally impair a 'substantive right', then the Court is to apply the law as it existed prior to September 2, 2004. Simply put, under

---

[7]    File & Serve I.D. #4598759

the 'safety valve' if the Court determines that the retroactive nature of the Act is constitutionally permissible, it must apply the Act as written. If, in a pending case, the Court finds that retroactive application of the Act would violate the Constitution, then it is directed to apply prior Ohio law. Nothing in this section supports the contention that if a plaintiff cannot make the necessary prima facie showing, he or she is relieved of the requirement." See Response of Defendants, American Standard Inc., individually and as alleged successor to Westinghouse Air Brake Company, Certainteed Corporation, Dana Corporation, the Goodyear Tire & Rubber Company, Treco Construction Services, Inc., FKA the Rust Engineering Company, and Union Carbide Corporation[8] at p. 5-6 ("Defendants' Hearing Brief").

The threshold issue before this Court is whether R.C. 2307.93(A)(3) constitutes a retroactive law in violation of Section 28, Article II of the Ohio Constitution when applied to eleven smoker lung cancer cases filed prior to the effective date of Amended Substitute House Bill 292.

### 1.    The Test for Unconstitutional Retroactivity

Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91. The retroactivity clause nullifies those new laws that "reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]." *Miller v. Hixson* (1901), 64 Ohio St. 39.

The Ohio Supreme Court has articulated the procedure that a court should follow to determine when a law is unconstitutionally retroactive. Bielat v. Bielat (2000), 87 Ohio

---

[8]      File & Serve I.D. #4647419

7

St.3d 350, citing <u>Van Fossen v. Babcock & Wilcox Co.</u> (1988), 36 Ohio St.3d 100, paragraph one of the syllabus. It should be noted that retroactivity itself is not always forbidden by Ohio law. Though the language of Section 28, Article II of the Ohio Constitution provides that the General Assembly "shall have no power to pass retroactive laws," Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively and those that do so in a manner that offends our Constitution. <u>See</u>, e.g., <u>Rairden v. Holden</u> (1864), 15 Ohio St. 207; <u>State v. Cook</u>, 83 Ohio St.3d at 410. The term "retroactive" describe a law that is "made to affect acts or facts occurring, or rights accruing, before it came into force." Black's Law Dictionary (7 Ed.1999) 1318.

The test for unconstitutional retroactivity requires the court first to determine whether the General Assembly expressly intended the statute to apply retroactively. R.C. 1.48; <u>Bielat v. Bielat</u> (2000), 87 Ohio St.3d 350; <u>State v. Cook</u>, 83 Ohio St.3d at 410, citing <u>Van Fossen</u>, 36 Ohio St.3d 100, at paragraph one of the syllabus. If so, the court moves on to the question of whether the statute is substantive, rendering it unconstitutionally retroactive, as opposed to merely remedial. <u>Cook</u> at 410-411.

### a.    Intent of the Legislature

Plaintiffs submit that the Act is expressly retroactive. They assert that, "Ohio R.C. § 2307.93 (A)(2) and (A)(3)(a) provide that the new 'minimum requirements' for asbestos-related personal injury actions and the proffer of 'prima facie evidence' required by § 2307.93 (A)(1) apply 'to any asbestos claim that is pending on the effective date of this section' and to 'any cause of action that arises before the effective date of this section[.]'" <u>See</u> Plaintiffs' Hearing Brief at p. 6. Plaintiffs further assert that R.C. §

8

2307.93(A)(3)(a) is an express provision for the retroactive application of the Act, and therefore the General Assembly's specific intent that the Act be applied retroactively is clear on the it's face.

Defendants maintain that "[n]ot all laws that have retroactive effect violate or offend the Constitution. Instead, the 'ban against retroactive legislation is applicable solely to substantive, as opposed to remedial, laws.'" See Defendants' Hearing Brief at p. 7, citing Gregory v. Flowers (1972), 32 Ohio St.2d 48; Van Fossen v. Babcock & Wilcox Company (1988), 36 Ohio St.3d 100. Defendants impliedly assert that the Act is a remedial law and therefore constitutional.

With regard to the intent of the legislature, the General Assembly did provide that the Act would apply retroactively, but it did so only to the extent that such retroactive application would not violate Section 28, Article II of the Ohio Constitution. In other words, the Act applies to cases pending on, or filed after, September 2, 2004, the Act's effective date, but the Act specifically precludes such application in cases where that application would violate the Ohio Constitution. See R.C. § 2307.93(A)(3)(a). For example, if this Court found that the Act impaired a substantive right of a claimant who filed a claim on September 1, 2004, the Act would be inapplicable, and the law that was in effect prior to the effective date of the Act would apply. Therefore, the Act cannot violate the Ohio Constitution on retroactivity grounds[9].

However, our inquiry is not at an end. It must be still be determined whether the Act impaired a substantive right of any of the eleven claimants in the instant case, in

---

[9]    Van Fossen is clearly distinguished from the instant case. There, the General Assembly did not qualify the retroactive application of the statutes at issue, but instead merely provided that the statutes would apply retroactively to all pending cases. Here, by contrast, the scope of retroactive application is

which case R.C. § 2305.10 would apply, or whether the Act impaired a remedial right of a claimant, in which case R.C. § 2307.92(C)(1) would apply.

### b.    Substantive or Remedial Retroactivity

The second critical inquiry of the constitutional analysis is to determine whether the retroactive statute is remedial or substantive.  Bielat, 87 Ohio St.3d at 354, quoting State v. Cook, 83 Ohio St.3d at 410-411.  A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively.  Id. at 354.   On the other hand, a retroactive statute is substantive—and therefore unconstitutionally retroactive—if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.  Id.

Plaintiffs advance three principle arguments in support of their contention that the Act impairs substantive rights of the claimants and is therefore unconstitutionally retroactive.  First, Plaintiffs suggest that the Act's "imposition of new, higher medical standard[s] for asbestos-related claims is a substantive alteration of existing Ohio law which will have the effect of retroactively eliminating the claims of plaintiffs whose rights to bring suit previously vested."  See Plaintiffs' Hearing Brief at p.7.  Second, Plaintiffs argue the Act also retroactively impairs the substantive rights of Plaintiffs by changing the common law definition of "substantial contributing factor."  See Plaintiffs' Hearing Brief at p.8.  Third, Plaintiffs argue the Act retroactively impairs the substantive rights of Plaintiffs by its imposition of a requirement of "substantial occupational

---

strictly limited to those cases where such retroactive application is permissible.   See R.C. § 2307.93(A)(3)(a)(ii).

exposure" which contravenes Ohio Supreme Court authority.  <u>See</u> Plaintiffs' Hearing Brief at p.9.

### (1)    Competent Medical Authority

Plaintiffs first argument suggests that the Act's imposition of new, higher medical standards for asbestos-related claims is a substantive alteration of existing Ohio law which will have the effect of retroactively eliminating the claims of plaintiffs whose rights to bring suit previously vested.

Defendants respond that the Act does not create new standards for asbestos-related claims.  Under R.C. 2305.10, Defendants argue it was the law of Ohio that an asbestos personal injury claim does not accrue until the plaintiff has developed an asbestos-related bodily injury and has been told by "competent medical authority" that his injury was caused by his exposure to asbestos.  However, in 1982 the legislature did not define the terms "competent medical authority" and "injury" in R.C. § 2305.10. Defendants argue that the Act does not change the requirements for the accrual of an asbestos-related injury.  Rather, the Act establishes minimum medical requirements and prima facie provisions to provide definitions and substantive standards for the provisions included by the legislature in R.C. § 2305.10.  <u>See</u> Defendants' Hearing Brief at p.8-9.

This Court finds Defendants' argument unpersuasive.  The first element to establish the prima facie elements of a lung cancer claim by a smoker under the Act is (1) diagnosis by a competent medical authority[10].  Clearly, the Act imposes new or additional

---

[10] "Competent medical authority" means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements:
(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.

11

burdens, duties, obligations, or liabilities on the eleven claimants in the instant case. The Act requires Plaintiffs to proffer, inter alia, an opinion from a "competent medical authority," which means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements: (1) a medical doctor who is a board certified internist, pulmonary specialist, oncologist, pathologist, or occupational medical specialist; (2) a medical doctor who is or was a treating physician; (3) as the basis for diagnosis, the medical doctor cannot rely on the reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition; (4) the medical doctor spends no more than twenty-five percent of his/her professional practice time in providing consulting or expert services. See R.C. § 2307.91(Z), footnote 10, supra.

---

(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.

(3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:

(a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;

(b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;

(c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.

(4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenues from providing those services. R.C. § 2307.91(Z).

In contrast, R.C. 2305.10[11] does not define "competent medical authority." In the absence of a statutory definition, that meaning is supplied by common usage and common law. See Kimble v. Kimble (2002), 97 Ohio St.3d 424. However, neither the legislature nor the Ohio Supreme Court has ever established what the term "competent medical authority" means. Plaintiffs have submitted expert medical testimony in these cases which they deem are "competent" and sufficient to make a prima facie showing that their injuries were caused by asbestos exposure under the law as it existed prior to the effective date of the Act (the sufficiency of Plaintiffs prima facie evidence under R.C. 2305.10 will be evaluated in Section C., infra.). Consequently, Plaintiffs admit that their "existing medical records do not contain the type of causation reports required by the new law." See Plaintiffs' Hearing Brief at p.5). In other words, Plaintiffs concede that their medical experts are not treating physicians who formed independent medical opinions regarding causation. Such an admission is irrelevant to the issue of medical causation if the imposition of new, higher medical standards for asbestos-related claims is a substantive alteration of existing Ohio law which will have the effect of retroactively eliminating the claims of plaintiffs whose rights to bring suit previously vested. The Act requires Plaintiffs' medical experts to "jump additional hurdles" before they are permitted to walk into court and testify. They must be a board-certified specialist, they must treat the patient, they must form an independent opinion, and they must not spend more than twenty-five percent of their professional time providing expert services.

---

[11]    The minimum requirements to establish an asbestos personal injury claim under R.C. § 2305.10 were as follows: "a cause of action for bodily injury caused by exposure to asbestos...arises upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, the plaintiff should have become aware that the plaintiff had been injured by the exposure, whichever date occurs first."

The definition of competent medical authority imposes new burdens on these eleven claimants and is therefore unconstitutionally retroactive under <u>Bielat</u> and ultimately Section 28, Article II of the Ohio Constitution. However, the Saving Clause prevents the Act from being held unconstitutional because the Act does not apply to the cases where that application would violate the Ohio Constitution. <u>See</u> R.C. § 2307.93(A)(3)(a). Plaintiffs are thus entitled to offer expert medical testimony under the law in effect prior to the effective date of the Act. <u>See</u> R.C. § 2307.93(A)(3)(b).

### (2)    Substantial Contributing Factor

The second element to establish the prima facie elements of a lung cancer claim by a smoker under the Act is (2) that exposure to asbestos is a substantial contributing factor[12] to that cancer. <u>See</u> R.C. § 2307.92(C)(1), supra. Plaintiffs argue the Act also retroactively impairs the substantive rights of Plaintiffs by changing the common law definition of "substantial contributing factor." <u>See</u> Plaintiffs' Hearing Brief at p.8. They assert that the Act redefines the term "substantial contributing factor" to mean both that "exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim" and "a competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposure the physical impairment of the exposed person would not have occurred," is a departure from the definition of "substantial factor" in <u>Horton v. Harwick</u> (1995), 73 Ohio St.3d 679[13]. <u>See</u> Plaintiffs' Hearing Brief at p.8-9.

---

[12]    "Substantial contributing factor" means both of the following: (1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim. (2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred. R.C. § 2307.91(FF).

[13]    [W]e adopt the definition of "substantial factor" contained in Restatement of the Law 2d, Torts (1965), Section 431, Comment a: "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using

14

Defendants claim the Act's definition of "substantial contributing factor" does not conflict with the definition of "substantial factor" set forth in Horton.    They assert the definition of "substantial contributing factor" serves to clarify and elaborate on the ambiguous definition of "substantial" or "substantial factor" provided by the Ohio Supreme Court in Horton. See Defendants' Hearing Brief at p.11.

We agree with Plaintiffs--the Act changes Plaintiffs' burden under Horton. Under Horton, in a multiple defendant case, the burden is upon the plaintiff to prove that the exposure to the defendant's product was a substantial factor in causing the injury to the plaintiff. Horton, at syllabus ¶ 1. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called "philosophical sense," which includes every one of the great number of events without which any happening would not have occurred. Horton, 73 Ohio St.3d at 686.

Under the Act, "substantial contributing factor" means both of the following: (1) exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim, and (2) competent medical authority to determine with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred (emphasis added). R.C. § 2307.91(FF). As discussed previously, the definition of competent medical authority[14] imposes new

---

that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called 'philosophical sense,' which includes every one of the great number of events without which any happening would not have occurred." Horton v. Harwick, 73 Ohio St.3d at 686.

[14]    R.C. § 2307.91(Z)

15

burdens on these eleven claimants. Therefore, R.C. § 2307.91(FF) is substantively different than the definition of "substantial factor" in Horton v. Harwick (1995), 73 Ohio St.3d 679. The definition of substantial contributing factor imposes new burdens on these eleven claimants and is therefore unconstitutionally retroactive under Bielat and ultimately Section 28, Article II of the Ohio Constitution as it applies to these eleven Plaintiffs. Plaintiffs are thus entitled to offer expert medical testimony under Horton and its progeny. See R.C. § 2307.93(A)(3)(b).

### (3)    Substantial Occupational Exposure

The third element to establish the prima facie elements of a lung cancer claim by a smoker under the Act is (3) evidence of the exposed person's substantial occupational exposure to asbestos OR evidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years[15]. See R.C. § 2307.92(C)(1), supra. Plaintiffs argue the Act retroactively impairs the substantive rights of Plaintiffs by its imposition of a requirement of "substantial occupational exposure[16]" which contravenes Ohio Supreme Court authority. See Plaintiffs' Hearing Brief at p.9. Specifically, Plaintiffs assert that the definition of "substantial occupational exposure" is a reimposition of the Lohrmann[17]

---

[15]    The 25 fiber per cc years requirement was not at issue in the instant case; therefore, this Court will not discuss R.C. § 2307.92(C)(1)(c)(ii).

[16]    "Substantial occupational exposure to asbestos" means employment for a cumulative period of at least five years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person did any of the following: (1) Handled raw asbestos fibers; (2) Fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process; (3) Altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers; (4) Worked in close proximity to other workers engaged in any of the activities described in division (GG)(1), (2), or (3) of this section in a manner that exposed the person on a regular basis to asbestos fibers. R.C. §2307.91(GG).

[17]    Lohrmann v. Pittsburgh Corning Corp. (C.A. 4, 1986), 782 F.2d 1156. In Lohrmann, the United States Court of Appeals, Fourth Circuit held: To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis

16

standard that was rejected in <u>Horton</u>. Defendants contend the concept of "substantial occupational exposure" as set forth in the Act has nothing to do with summary judgment. Instead, Defendants claim it assists in defining and determining when a cause of action for an asbestos-related lung cancer accrues in the first place. <u>See</u> Defendants' Hearing Brief at p.12.

The requirement that a plaintiff must, inter alia, include evidence of the exposed person's "substantial occupational exposure" to asbestos is a prima facie showing under R.C. § 2307.92(C)(1). "Substantial occupational exposure" means the plaintiff must have: (1) handled raw asbestos fibers; (2) fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process; (3) altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers; (4) worked in close proximity to other workers engaged in any of the activities described in division (GG)(1), (2), or (3) of this section in a manner that exposed the person on a regular basis to asbestos fibers. R.C. §2307.91(GG).

These prima facie requirements are indeed in conflict with <u>Horton</u>, which states: "A plaintiff need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that the product was a substantial factor in causing his injury. (<u>Lohrmann v. Pittsburgh Corning Corp.</u> [C.A.4, 1986], 782 F.2d 1156, disapproved.)." <u>Horton</u>, syllabus at ¶ 2. The Act imposes an additional burden on these eleven Plaintiffs to demonstrate that they were exposed to asbestos-containing products on a regular basis

over some extended period of time in proximity to where the plaintiff actually worked. <u>Lohrmann</u>. 782 F.2d at 1162-1163.

and in close proximity to where the Plaintiffs actually worked. Therefore, R.C. §2307.91(GG) is substantively different than the definition of "substantial factor" in Horton v. Harwick (1995), 73 Ohio St.3d 679. It is unconstitutionally retroactive under Bielat and ultimately Section 28, Article II of the Ohio Constitution as it applies to these eleven Plaintiffs. Plaintiffs are thus entitled to offer expert medical testimony under Horton and its progeny. See R.C. § 2307.93(A)(3)(b).

**B.     The Prior Statute -- R.C. § 2305.10**

This Court finds that substantive rights of the eleven parties to the case have been impaired, and that impairment is otherwise in violation of Section 28 of Article II of the Ohio Constitution.

Pursuant to R.C. § 2307.93(A)(3)(b), this Court must next determine whether the Plaintiffs have failed to provide sufficient evidence to support the Plaintiffs' cause of action or the right to relief under the law that was in effect prior to the effective date of the Act. The law that was in effect prior to Am. Sub. H.B. 292 was R.C. § 2305.10. It states: "a cause of action for bodily injury caused by exposure to asbestos...arises upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, the plaintiff should have become aware that the plaintiff had been injured by the exposure, whichever date occurs first." R.C. § 2305.10.

**1.     Michael T. Thornton**

Michael T. Thornton worked at Republic Steel in Youngstown, Ohio between 1971 and 1982. During his career at Republic Steel, he was allegedly exposed to various asbestos-containing products as a maintenance welder working in various areas of the

mill. He had a chest x-ray on February 1, 1999 and on February 3, 1999 he underwent a biopsy at St. Elizabeth Health Center in Youngstown, Ohio which revealed adencarcinoma of the right lung. He had a right upper lobectomy but subsequently died of lung cancer on January 26, 2000.

The February 1, 1999 x-ray was interpreted by K.N. Mathur, M.D. on February 24, 2000. Dr. Mathur found that both lungs showed interstitial fibrosis. Using the ILO classification system, he identified small opacities involving the lower 2/3 of the lungs with a profusion of 1/1. Dr. Mathur also found a neoplasm of the right lung. Dr. Mark Colella also wrote an ILO report based on the same x-ray film on November 10, 2002, reading the film as a 1/0 with small opacities involving the lower four lung zones.

Pathologist Jaywant Parmar, M.D. prepared a report on June 1, 2002. Dr. Parmar attributed Mr. Thornton's cause of death to adenocarcinoma of the right lung superimposed on pulmonary asbestosis. He found pathological evidence of pulmonary interstitial fibrosis. He also opined that the two significant contributing causes of Mr. Thornton's lung cancer were asbestos exposure and smoking. See Plaintiff's Hearing Brief, Exhibit A.

### 2. James Marsteller

James Marsteller worked at Republic Steel in Youngstown and Warren, Ohio between 1947 and 1982. Mr. Marsteller was allegedly exposed to various asbestos-containing products, first as a track supervisor, and then as a steelworker working all over the plant. He had a chest x-ray on January 12, 1997 which was reviewed by John Politis, M.D., who noted an abnormality and requested a CT scan. Mr. Marsteller had a biopsy on April 30, 1997. He underwent a bronchoscopy on May 2, 1997. He was diagnosed

with differentiated small cell carcinoma of the right upper lobe. Mr. Marsteller died on March 16, 1998.

Mr. Marsteller underwent another chest x-ray on November 10, 1997 which was read by K.N. Mathur, M.D. on January 25, 2000. Dr. Mathur found that both lungs showed interstitial fibrosis consistent with asbestosis with small opacities involving the lower 2/3 of the lungs with a profusion of 1/1. Dr. L.C. Rao read the same film as a 1/0 and concluded that his findings were consistent with asbestosis.

Pathologist Jeffrey Kahn, M.D. prepared a report on October 5, 2003. He opined that Mr. Marsteller's occupational exposure to asbestos was a significant contributing factor in the development of his lung cancer and subsequent death. See Plaintiff's Hearing Brief, Exhibit B.

### 3.    David J. Zepp

David J. Zepp was allegedly exposed to various asbestos-containing products during the course of his employment as a pipefitter at various jobsites in Ohio between 1957 and 1991. He underwent a biopsy in February 2001 that revealed a moderately differentiated adencarcinoma.

Mr. Zepp had a chest x-ray taken on February 7, 2001 which was reviewed and interpreted by Mark S. Colella, M.D., radiologist. Dr. Colella noted opacities in the left lower lung zone with a profusion of 1/0, consistent with asbestosis.

Pathologist Jeffrey Kahn, M.D. prepared a report on October 1, 2003. Dr. Kahn concluded that Mr. Zepp suffered from a moderately differentiated adencarcinoma of the lung, and further that he suffered from asbestosis, a diagnosis based upon his finding of asbestos bodies in the lung tissue and the presence of patchy interstitial fibrosis in the

lung tissue, as well as the radiologic findings from Dr. Colella. Dr. Kahn further opined that Mr. Zepp" occupational exposure to asbestos was a significant contributing factor in the development of lung cancer. See Plaintiff's Hearing Brief, Exhibit C.

### 4.    Alvin L. Longbrake

Alvin L. Longbrake worked at Republic Steel in Massilon, Ohio between 1956 and 1998. During his career he was allegedly exposed to various asbestos-containing products while serving in a number of capacities: as a laborer he worked in the mills with slitters and furnaces in various areas of the plant, and during his last nine years he analyzed pickling acid in the acid testing station at #1, #2, and #3 Enduro Plants while also working in the metallurgy lab periodically. He was diagnosed with colon carcinoma on December 20, 1991 and endured surgery.

Mr. Longbrake had a chest x-ray on November 22, 1993 that was interpreted by Ray A. Harron, M.D. on June 3, 1998. Dr. Harron found that the x-ray revealed bilateral interstitial fibrosis consistent with asbestosis.

Gordon Gress, M.D. prepared two narrative reports, one on June 26, 1998 and the other on November 26, 2000. Dr. Gress concluded that Mr. Longbrake suffers from asbestosis based upon his long history of exposure to asbestos and findings revealed on the chest x-ray. Dr. Gress further opined that Mr. Longbrake's occupational exposure to asbestos was a substantial cause of the development of colon cancer. See Plaintiff's Hearing Brief, Exhibit D.

### 5.    Howard G. Beard

Howard G. Beard worked at Republic Steel in Canton, Ohio between 1979 and 2002. Mr. Beard was allegedly exposed to various asbestos-containing products as a

21

laborer working in various areas of the mill, including the heat treat department. He had a chest x-ray taken on August 30, 1993 which was reviewed and interpreted by Mark S. Colella, M.D., radiologist on March 19, 2003. Dr. Colella noted opacities bilaterally in the mid and lower lung zones with a profusion of 1/1, consistent with asbestosis. Ray A. Harron, M.D. reviewed and interpreted the pulmonary function test dated February 24, 1995, which demonstrated a mild restrictive obstructive disease. Dr. Harron also reviewed and interpreted the August 30, 1993 chest x-ray and found opacities noted bilaterally in the mid and lower lung zones with a profusion of 1/1. Mr. Beard was admitted to Aultman hospital in 1997 for lung cancer. Mr. Beard died of lung cancer on June 6, 1998.

Jeffrey Kahn, M.D., a pathologist, prepared a report with regard to Mr. Beard on May 4, 2003. Dr. Kahn concluded that Mr. Beard's occupational exposure to asbestos was responsible for the development of a primary adencarcinoma of the lung which resulted in his death. See Plaintiff's Hearing Brief, Exhibit E.

### 6. Michael J. Dupay, Jr.

Michael Dupay, Jr. worked as a bricklayer at various jobsites in Ohio between 1955 and 1993, during which time he was allegedly exposed to various asbestos-containing products. He has a chest x-ray taken on January 7, 1995 which was reviewed and interpreted by Ray A. Harron, M.D., radiologist, on June 1, 1995. Dr. Harron noted opacities in all six lung zones with a profusion of 1/1. Laximinarayana C. Rao reviewed and interpreted the pulmonary function test dated November 19, 1999 which demonstrated a moderately restrictive defect. He also examined chest x-rays taken on December 16, 2000 and noted opacities in all six lung zones with a profusion of 1/1. Mr.

22

Dupay endured biopsies on May 15, 2001 and again on November 9, 2001 which revealed a non-small cell carcinoma of the right lung.  Mr. Dupay died on December 7, 2001 from metastic lung cancer.

Gordon Gress, M.D. prepared a narrative report on May 25, 2000 and concluded from radiologic evidence and pulmonary function tests that Mr. Dupay suffered from asbestosis and restrictive lung disease as a result of his history of exposure to asbestos.

Jeffrey Kahn, M.D. prepared a report on May 5, 2003.  Dr. Kahn concluded that Mr. Dupay suffered from a moderately differentiated squamous cell carcinoma of the lung, which led to his death.  He further opined that his occupational exposure to asbestos was responsible for the development of Mr. Dupay's lung cancer.  See Plaintiff's Hearing Brief, Exhibit F.

7.    **Ronald H. Davidson, Sr.**

Ronald H. Davidson, Sr. worked at Republic Steel in Canton, South Canton, and Massilon, Ohio between 1950 and 1982.  He was allegedly exposed to various asbestos-containing products through his work in the open hearths, electric furnaces and various other facilities.  He had a chest x-ray taken on January 10, 1995 which was reviewed and interpreted by Ray A. Harron, M.D., radiologist on February 22, 1995.  Dr. Harron noted opacities in all six lung zones with a profusion of 1/1.  Dr. Harron reviewed and interpreted the pulmonary function test dated March 24, 1995 that demonstrated a moderately restrictive pulmonary disease.  Mr. Davison underwent a biopsy which revealed in the February 26, 2003 pathology report that he had poorly differentiated squamous cell carcinoma.  Mr. Davison died on December 8, 2003 when his left lung collapsed.

23

Gordon Gress, M.D., an internist, prepared a report on December 1, 2003. He concluded, based upon his review of the chest x-rays, pulmonary function tests, and Mr. Davison's work history that Mr. Davison suffered from asbestosis and that his asbestos exposure and smoking history were a direct cause in the development of lung cancer.

Alan Cropp, M.D., a pulmonologist, prepared a report after examining Mr. Davison on December 16, 2000. He concluded based upon his examination, the chest x-rays, and Mr. Davison's asbestos exposure history, that he suffered from asbestosis.

Jeffrey Kahn, M.D. prepared a report on October 8, 2004 wherein he concluded that Mr. Davison suffered from a poorly differentiated non-small cell carcinoma of the lung with squamous features present. Furthermore, he identified lesions representing mild mixed dust pneumoconiosis in the lung tissue as well as areas of collagen formation representative of pleural plaque. Dr. Kahn opined that Mr. Davison's long history of exposure to asbestos was a significant contributing factor in the development of his lung cancer and his subsequent death. See Plaintiff's Hearing Brief, Exhibit G.

### 8.    Paul S. Remenaric

Paul S. Remenaric worked at Republic Steel in Canton and Massilon, Ohio between 1946 until 1983 where he worked as a bricklayer during his entire career. Mr. Remenaric was allegedly exposed to various asbestos-containing products during his work in various areas of both the Canton and Massilon plants including the Enduro plant, pickle tubs area, open hearth, 18 inch mill, rolling mill, and melt shop. He had a chest x-ray taken on January 10, 1995 which was reviewed and interpreted by Mark S. Colella, M.D., radiologist, on September 3, 2002. Dr. Colella noted opacities in all six lung zones with a profusion of 1/0. Mr. Remenaric underwent a biopsy which revealed in the April

17, 2001 pathology report that he suffered from non-small cell undifferentiated carcinoma. Mr. Remenaric died on March 27, 2002 from lung cancer and chronic lung disease.

Robert DeMarco, M.D., a pulmonologist, prepared a report after examining Mr. Remenaric on November 18, 2000. His report concluded that based upon the exposure history, the x-ray evidence and the physical examination, that Mr. Remenaric suffered from asbestosis.

Robert Swedarsky, M.D., a pathologist, prepared a report on September 22, 2004. Among his findings were that sections of lung tissue revealed fibrosis and linear nodular bodies which were suspicious for asbestos bodies. He concluded from his pathological review, as well as the radiologic evidence, that Mr. Remenaric suffered from asbestosis. He also concluded that the development of Mr. Remenaric's lung cancer could be attributed to asbestos, as a substantial contributing cause, as well as his history of cigarette smoking. See Plaintiff's Hearing Brief, Exhibit H.

### 9.    John C. Cullen

John C. Cullen worked at Empire Detroit Steel in New Boston/Portsmouth, Ohio between 1969 and 1999. He worked as a bricklayer during his entire career. Mr. Cullen was allegedly exposed to various asbestos-containing products during the course of his employment in various areas of the mill working on furnace rebuilds including the coke plant, open hearth, soaking pits and blooming mill. He had a chest x-ray taken on April 17, 1999 which was interpreted by Mark S. Colella, M.D., radiologist, on February 24, 2004. Dr. Colella noted opacities with middle and lower lung zones bilaterally with a profusion of 1/1. Joseph A. Horton, M.D. also reviewed and interpreted the April 17,

1989 chest x-ray and noted opacities in all six zones with a profusion of 1/1. Mr. Cullen underwent a biopsy which revealed in the June 15, 1990 pathology report that he suffered from a poorly differentiated carcinoma of the lung. Mr. Cullen died on May 3, 1992.

Gordon Gress, M.D., an internist, prepared a report on March 22, 2004. He concluded, based on the data available for his review and Mr. Cullen's occupational history of asbestos exposure that Mr. Cullen had asbestosis. Dr. Gress further opined that the development of Mr. Cullen's lung cancer and his subsequent death was a direct result of his asbestos exposure and smoking history.

Malpareh Mostoufizadeh, M.D., a pathologist, prepared a report on March 31, 1999. Her report concluded that Mr. Cullen suffered from adenocarcinoma of the lung, which she attributed in part to his long history of asbestos exposure and in part to his history of cigarette smoking. She concluded that his lung cancer and subsequent metastases to the brain, were the cause of his death. See Plaintiff's Hearing Brief, Exhibit I.

### 10.    Darvin Russell

Darvin Russell worked at Empire Detroit Steel in New Boston/Portmouth, Ohio between 1953 and 1976. As a laborer, he assisted various tradesmen during his career. Mr. Russell was allegedly exposed to various asbestos-containing products through his work in various areas of the plant including the railroad yard, brick mason department, blast furnace, slab mill, coke plant, temper mill, inspection department, pickle line, and cold mill. He had a chest x-ray taken on February 17, 2000 which was interpreted by Mark S. Colella, M.D., radiologist, on March 15, 2004. Dr. Colella noted opacities in all six lung zones with a profusion of 1/2. Mr. Russell underwent a lung biopsy which

revealed in the October 27, 2000 pathology report that he suffered from squamous cell carcinoma of the right upper lobe.

Jeffrey Kahn, M.D., a pathologist, prepared a report on March 2, 2004. He concluded that Mr. Russell's occupational history of asbestos exposure was a significant contributing factor in the development of his squamous cell carcinoma of the lung. See Plaintiff's Hearing Brief, Exhibit J.

### 11.    James F. Woodrum

James F. Woodrum worked at Empire Detroit Steel in New Boston/Portsmouth, Ohio between 1955 and 1980 where he worked various jobs during his career. During the course of his employment, Mr. Woodrum was allegedly exposed to various asbestos-containing products in the brick mason department, rod and wire department, blast furnace area, hot strip mill, blooming mill, open hearth, and coke plant. He had a chest x-ray taken on September 12, 2000 which was reviewed and interpreted by Mark S. Colella, M.D., radiologist, on September 10, 2003. Dr. Colella noted opacities in the mid and lower zones and in the upper left lung zone, all with a profusion of 2/1. Mr. Woodrum endured a lung biopsy which revealed in the May 21, 2002 pathology report that he suffered from moderately differentiated squamous cell carcinoma involving two lobes.

Gordon Gress, M.D., an internist, authored a report on November 23, 2003, wherein he concluded that Mr. Woodrum had pulmonary asbestosis and lung cancer which was directly caused by his asbestos exposure and cigarette smoking.

Jeffrey Kahn, M.D., a pathologist, prepared a report on February 10, 2004. He concluded that Mr. Woodrum's occupational exposure to asbestos was a significant

contributing factor in the development of his squamous cell carcinoma of the lung. See Plaintiff's Hearing Brief, Exhibit K.

### D.    Plaintiffs' Burden Under R.C. § 2305.10

Plaintiffs have provided sufficient evidence to support the Plaintiffs' cause of action or the right to relief under R.C. § 2305.10[18]. R.C. § 2305.10 does not define the terms "injury" or "competent medical authority." Defendants claim the Act does not create a new standard for asbestos personal injury claims because it merely "clarifies" the standard for accrual set forth in a 1980 revision to the statute of limitations, R.C. § 2305.10. Defendants state their position as follows:

> Since 1980, it has been the law of Ohio that an asbestos personal injury claim does not accrue until the plaintiff has developed an asbestos-related bodily injury and has been told by "competent medical authority" that his injury was caused by his exposure to asbestos. See R.C. 2305.10. Am. Sub. H.B. 292 does not change these requirements for the accrual of an asbestos personal injury cause of action. When these plaintiffs filed their complaints, the law already required that they be informed by competent medical authority that they had been injured as a result of their exposure to asbestos. While the legislature used the terms "competent medical authority" and "injury" in § 2305.10, it did not define those terms or otherwise explain their parameters...The minimum medical requirements and prima facie provisions of Am. Sub. H.B. 292 serve to provide definitions and substantive standards for the provisions included by the legislature in R.C. 2305.10.

See Defendants' Hearing Brief at p. 9-9 (footnotes omitted).

However, we believe the Act substantively changes the prima facie evidence necessary to file a lung cancer claim by a smoker in the State of Ohio as previously discussed. Furthermore, all eleven Plaintiffs have met their prima facie showing under

---

[18] "A cause of action for bodily injury caused by exposure to asbestos...arises upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, the plaintiff should have become aware that the plaintiff had been injured by the exposure, whichever date occurs first." R.C. § 2305.10.

R.C. § 2305.10 by proffering competent medical authority that their injuries were caused by exposure to asbestos. Each case has been fully worked up for trial. Discovery is complete, all motions for summary judgment have been ruled on, and all expert reports have been produced. The only remaining issue to be determined at trial is whether each Plaintiff is able to prove the elements of a cause of action under the law prior to September 2, 2004.

## III.    CONCLUSION

This Court finds that substantive rights of the eleven parties to the case have been impaired, and that impairment is otherwise in violation of Section 28 of Article II of the Ohio Constitution. First, the Act's imposition of new, higher medical standards for asbestos-related claims is a substantive alteration of existing Ohio law which will have the effect of retroactively eliminating the claims of plaintiffs whose rights to bring suit previously vested. Second, the Act also retroactively impairs the substantive rights of Plaintiffs by changing the common law definition of "substantial contributing factor." Third, the Act retroactively impairs the substantive rights of Plaintiffs by its imposition of a requirement of "substantial occupational exposure" which contravenes Ohio Supreme Court authority.

Pursuant to R.C. § 2307.93(A)(3)(b), this Court also finds that the Plaintiffs have provided sufficient evidence to support the Plaintiffs' cause of action under R.C. § 2305.10. Therefore, Plaintiffs are entitled to proceed to trial under R.C. § 2305.10.


IT IS SO ORDERED.
Judge Leo M. Spellacy                                January 10, 2005
Judge Harry A. Hanna


29