never required product identification. This criticism, however, ignores a couple of important facts. First, although the Asbestos PI Trust Distribution Procedures do contemplate requiring some evidence of exposure to an AWI product, the threshold of proof required appears to be exceedingly low. The production of a hearsay affidavit from a relative of a deceased, for example, may suffice. Further, it is silly to suggest as Dr. Chambers's view apparently requires, that the Asbestos PI Trustees conduct mini-trials on product identification for the hundreds of thousands of claims that undoubtedly will be submitted. Second, the Court agrees with Dr. Peterson that it is impossible to know which exposure to which product containing which kind of asbestos caused the injuries in question. That probably explains why the evidentiary requirements for Asbestos Personal Injury Claims have been so low, and thus why there are so many and thus why so many companies have had to seek chapter 11 relief to deal with them.

132.    In the final analysis, the emperor has no clothes. Dr. Chambers has no written report to evaluate nor provides any range of numbers and offers nothing but a facile and superficial critique of the Peterson report.    Accordingly, the burden of production has not been met by the Unsecured Creditors' Committee, and AWI has persuaded the Court that the range of claims numbers offered by Dr. Peterson is supported by the preponderance of the evidence. Since Dr. Peterson's estimate is far above the $3.1 billion threshold that might put more money in the unsecured creditors pockets, no unfair discrimination exists here since the unsecured creditors will receive a guarantee of 59 cents on the dollar, as opposed to an estimate of some 19 cents on the dollar to Asbestos Personal Injury Claims.

**The Provisions Governing**
**Distributions Under the Plan**
**Are Fair and Reasonable**

133.    Sections 7.7, 7.8, and 7.11 of the Plan contain provisions governing

distributions under the Plan, and such provisions are fair and reasonable.

**Miscellaneous**

134.    To the extent any of the foregoing findings of fact constitute

conclusions of law, they are adopted as such.

## CONCLUSIONS OF LAW

**Jurisdiction and Venue**

1.    The Bankruptcy Court has jurisdiction over the Chapter 11 Case and

to confirm the Plan pursuant to 28 U.S C [§]§ 1334 and 157.

2.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b). Because, however, the Plan incorporates the Asbestos PI Permanent Channeling

Injunction and requests that certain findings be made relating to Asbestos Personal Injury

Claims and as required by section 524(g) of the Bankruptcy Code, the Bankruptcy Court is

hereby proposing findings of fact and conclusions of law and making a recommendation

regarding confirmation of the Plan and issuance of the Asbestos PI Permanent Channeling

Injunction for consideration by the District Court.

3.    Venue of the Chapter 11 Case in this district was proper as of the

Commencement Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    AWI is an entity qualified to be a debtor under section 109 of the

Bankruptcy Code, and AWI is a proper proponent of the Plan under section 1121(a) of the

Bankruptcy Code.

**Burden of Proof**

5.     AWI has satisfied its burden of producing evidence that the Plan complies with sections 1129(a), 1129(b), 1129(d), and 524(g) of the Bankruptcy Code.

**Solicitation**

6.     All persons required to receive notice of the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order and have had an opportunity to appear and be heard with respect thereto.

7.     AWI has solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

8.     Following the dissemination of the Solicitation Packages as provided for in the Disclosure Statement Order, the Voting Agents properly assisted AWI in soliciting votes for the Plan from the impaired classes of Claims and Equity Interests and appropriately solicited the votes of the impaired classes of Claims and Equity Interests in good faith and in a manner consistent with the Bankruptcy Code.

9.     The Plan was voted on by all Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order (except Class 8, which contains no Claims).

**The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

10.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code. The Plan satisfies all the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies AWI as the proponent of the Plan. Moreover, the

Plan and Disclosure Statement describe the Asbestos PI Permanent Channeling Injunction, including the identities of the PI Protected Parties, and the Claims Trading Injunction specifically and in conspicuous bold language, in compliance with the requirements of Bankruptcy Rule 3016(c).

### A.    Due and Proper Notice of the Disclosure Statement Hearing and the Confirmation Hearing Was Given to All Parties in Interest

11.    The Bankruptcy Court has taken judicial notice of the Affidavits of Mailing, the Certifications of Voting and the Certificate of Publications, and finds and concludes that (a) AWI complied in all material respects with Bankruptcy Rules 2002 and 3017(a) in providing notice of the Disclosure Statement Hearing in the method and manner as prescribed therein, and (b) AWI complied in all material respects with the Disclosure Statement Order in providing notice of the Confirmation Hearing in the method and manner as prescribed in the Disclosure Statement Order. All Entities entitled and required to receive notice of the Disclosure Statement Hearing and the Confirmation Hearing pursuant to the Bankruptcy Code, applicable non-bankruptcy law, and the orders of the Bankruptcy Court have received due, proper, timely and adequate notice of such hearings and have had an opportunity to appear at and be heard at such hearings. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1957).

### B.    The Plan Satisfies the Requirements of Section 1123(a)(1) of the Bankruptcy Code

12.    Section 1123(a)(1) of the Bankruptcy Code provides that a plan must designate classes of claims and interests. Section 3.1 of the Plan adequately and properly classifies all Claims and Equity Interests required to be so classified and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code. Classes of

Administrative Expenses and Priority Tax Claims are not required to be designated pursuant to section 1123(a)(1) of the Bankruptcy Code.

### C.    The Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code

13    Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests of such class. A classification structure satisfies section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987); *In re U.S. Truck Co.*, 800 F.2d 581, 586 (6th Cir. 1986); *In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1986).

14.    The Bankruptcy Code does not require that all claims with equal priority be classified in the same class. Consequently, it is appropriate to classify Asbestos Personal Injury Claims (including Indirect PI Trust Claims) in a separate class from Unsecured Claims   Because all Asbestos Personal Injury Claims in Class 7 (including Indirect PI Trust Claims) relate, directly or indirectly, to AWI's liability for asbestos-related personal injury and wrongful death claims, whether arising under tort law (as is the case with direct Asbestos Personal Injury Claims and may be the case with Indirect PI Trust Claims) or under contract (as may be the case with certain direct Asbestos Personal Injury Claims and certain Indirect PI Trust Claims), a reasonable basis exists for the classification of the Asbestos Personal Injury Claims together in a single class. Moreover, section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code requires that the Plan establish a separate class or classes of the Claimants whose Claims are to be addressed by the Asbestos PI Trust.

15. In accordance with section 1122(a) of the Bankruptcy Code, Section 3.1 of the Plan separately classifies Claims against and Equity Interests in AWI together with Claims against or Equity Interests that are substantially similar to the other Claims or Equity Interests of such class. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code

16. Section 1122(b) of the Bankruptcy Code provides that a plan may designate a separate class of claims consisting of unsecured claims that are less than or reduced to an amount the court approves as reasonable and necessary for administrative convenience. Section 3.2(c) of the Plan provides treatment for holders of Convenience Claims. The convenience class established in Section 3.2(c) of the Plan is reasonable and necessary for administrative convenience and, therefore, the classification of Convenience Claims in Section 3.2(c) satisfies section 1122(b) of the Bankruptcy Code.

### D. The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code

17. Section 1123(a)(2) of the Bankruptcy Code provides that a plan must specify any class of claims or interests that is not impaired under the Plan. Pursuant to Section 3.1 of the Plan, each of Classes 3, 6, 7, 8, and 12 is identified as impaired, and each of Classes 1, 2, 4, 5, 9, 10, and 11 is identified as unimpaired. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### E. The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code

18. Section 1123(a)(3) of the Bankruptcy Code provides that a plan must specify the treatment of each impaired class of claims and equity interests. Article III of the Plan specifies the treatment of each impaired class of Claims and Equity Interests. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

F.    The Plan Satisfies the Requirements
of Section 1123(a)(4) of the Bankruptcy Code

19.    Section 1123(a)(4) of the Bankruptcy Code requires a plan to provide the same treatment for each claim or interest of a particular class, unless the holder of the claim or interest agrees to less favorable treatment of such particular claim or interest. The Plan provides the same treatment for each Claim or Equity Interest in each class. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

G.    The Plan Satisfies the Requirements of
Section 1123(a)(5) of the Bankruptcy Code

20.    Section 1123(a)(5) of the Bankruptcy Code provides that a plan must provide adequate means of implementation of the plan. The various provisions of the Plan provide adequate means for implementation of the Plan.    Without limiting the foregoing, Article VII of the Plan provides for, among other things, (i) the creation of the Asbestos PI Trust, (ii) the adoption of the Amended and Restated Articles of Incorporation and Amended and Restated By-Laws by Reorganized AWI, (iiii) the effectuation of the corporate reorganization transactions set forth in Section 7.23 of the Plan and the entry into the exit financing facility, (iv) the listing of the New Common Stock, (v) the adoption of the Stockholder and Registration Rights Agreement and the New Long-Term Incentive Plan, (vi) the distribution of property of AWI's estate to the creditors entitled to receive Distributions under the Plan and the Distribution to the Asbestos PI Trust, and (vii) the funding of the payments due on the Effective Date.  In addition, Article VIII of the Plan provides for, *inter alia*, the assumption and rejection of various contracts and unexpired leases of AWI, and Article X of the Plan provides for the creation and funding of the Asbestos PI Trust.  Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

H.    The Plan Satisfies the Requirements of
      Section 1123(a)(6) of the Bankruptcy Code

21.    Section 1123(a)(6) of the Bankruptcy Code requires a plan to
provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of
any corporation to which the debtor transfers all or any part of the debtor's estate or with
which the debtor has merged or consolidated, of a provision prohibiting the issuance of
non-voting equity securities. In furtherance of Section 7.4 of the Plan, the Amended and
Restated Articles of Incorporation of Reorganized AWI contain provisions prohibiting the
issuance of non-voting equity securities. (Exhibit Volume, Tab 1). In addition, although
the New Warrants are considered "equity securities" under section 101(16) of the
Bankruptcy Code, section 1123(a)(6) does not require that the Amended and Restated
Articles of Incorporation provide voting rights for the New Warrants because such voting
rights may be obtained by the exercise of the New Warrants, upon which the holder will
receive New Common Stock. *In re First Bancorporation of Texas, Inc.*, 1995 WL 710914,
*4 (Bankr. N.D. Tex. 1995). Accordingly, the Plan satisfies section 1123(a)(6) of the
Bankruptcy Code.

22.    Section 1123(a)(6) is not applicable to the Asbestos PI Trust
because (i) the Asbestos PI Trust does not have a corporate charter; and (ii) the Asbestos PI
Trust is not a corporation to which AWI or Reorganized AWI is transferring, or has
transferred, all or any part of its estate (within the meaning of section 1123(a)(6) of the
Bankruptcy Code) or with which AWI or Reorganized AWI has merged or consolidated or
will merge or consolidate.

I.    **The Plan Satisfies the Requirements of
      Section 1123(a)(7) of the Bankruptcy Code**

23.    Section 1123(a)(7) of the Bankruptcy Code requires that the manner
of selection of any director, officer or trustee of the reorganized debtor, or any successor to
such officer, director or trustee, be consistent with the interests of creditors and equity
security holders and with public policy. In furtherance of Section 7.21 of the Plan, AWI
has the identities of those persons who will serve, on the Effective Date, as officers of
Reorganized AWI. (Rodruan Affidavit, at ¶ 21).

24.    On the Effective Date, the board of directors of Reorganized AWI
will consist of those persons identified in Exhibit "7.21" of the Exhibit Volume (Exhibit
Volume, Tab 11). Following the Effective Date, and subject to the provisions of any
existing employment agreements and the requirements of applicable non-bankruptcy law,
the officers of Reorganized AWI immediately prior to the Effective Date will serve as the
officers of Reorganized AWI. The continuation in office of such individuals is consistent
with the interests of creditors and with public policy. (Rodruan Affidavit, at ¶ 8).
Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

25.    Although section 1123(a)(7) of the Bankruptcy Code does not apply
to either the Asbestos PI Trustees or the members of the TAC established under the
Asbestos PI Trust Agreement, AWI has disclosed the identities of the Asbestos PI Trustees
and the members of the TAC, as well as the role of the Future Claimants' Representative
under the Asbestos PI Trust Agreement.

J.    **Section 1123(b)(2) of the Bankruptcy Code:**
      **The Rejection and Assumption of Executory**
      **Contracts and Unexpired Leases**
      **Are in the Best Interests of AWI's Estate**

26.    Pursuant to section 1123(b)(2) of the Bankruptcy Code, a plan may provide for the rejection or assumption and assignment of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of the Bankruptcy Code.

27    Under section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if (i) outstanding defaults under the contract or lease have been cured under section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53 (Bankr. D. Del. 2001).

28    Section 8.1 of the Plan provides for the assumption of the executory contracts listed on Exhibit "8.1" to the Plan. The assumption of executory contracts and unexpired leases pursuant to Section 8.1 of the Plan, subject to the occurrence of the Effective Date, (i) is in the best interests of AWI, its estate, and creditors, (ii) is based upon and within AWI's sound business judgement, (iii) is necessary to the implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the Bankruptcy Code.

29.    Exhibit "8.2" to the Plan sets forth contracts and leases that, to the extent they constitute executory contracts and unexpired leases, AWI wishes to reject, subject to the occurrence of and effective as of the Effective Date. Included on Exhibit "8.2" is AWI's contract with Liberty Property Holdings, L.P., with respect to AWI's

obligation to provide utility service to Liberty Property Holdings, L.P. Such obligation constitutes an executory contract that may be rejected under section 365(a) of the Bankruptcy Code.

30.    Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code. *See N.L.R.B. v. Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel*, 872 F.2d at 39-40; *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995); *In re III Enterprises, Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa.), *aff'd sub nom, Pueblo Chem., Inc. v. III Enter., Inc. V*, 169 B.R. 551 (E.D. Pa. 1994); *In re Patterson*, 119 B.R. 59, 60 (E.D. Pa. 1990); *Pinnacle Brands*, 259 B.R. at 53. To the extent that sound business reasons justify the debtor's rejection of a particular lease or contract, rejection should be approved.

31.    The rejection of the executory contracts and unexpired leases set forth in Section 8.2 of the Plan, subject to the occurrence of and effective as of the Effective Date, (i) is in the best interests of AWI, its estate and creditors, (ii) is based upon and within AWI's sound business judgement, (iii) is necessary to the implementation of the Plan, and (iv) satisfies the requirements of section 365(a) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

K.    **The Plan Satisfies Section
1123(b)(3) of the Bankruptcy Code**

32.    Section 1123(b)(3)A) of the Bankruptcy Code permits a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor

or to the estate." Section 5.2 of the Plan provides for the amendment of the Claims Settlement Guidelines as set forth on Exhibit "1.39" to the Plan. Such amendment is (i) fair and reasonable, (ii) in the best interests of AWI, its estate, and its creditors, and (iii) necessary to the implementation of the Plan. To the extent applicable, Section 5.2 of the Plan complies with section 1123(b)(3)(A) of the Bankruptcy Code.

33.    Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." Section 11.3 of the Plan provides that any rights, claims, or causes of action accruing to AWI pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including, without express or implied limitation, any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and (except as provided in Articles X and XI of the Plan) any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of AWI shall remain assets of AWI's estate and, on the Effective Date, shall be transferred to Reorganized AWI. Reorganized AWI shall be deemed the appointed representative to, and may, pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of Reorganized AWI. Such section is (i) fair and reasonable, (ii) in the best interests of AWI, its estate, and its creditors, (iii) necessary to the implementation of the Plan, and (iv) complies with section 1123(b)(3)(B) of the Bankruptcy Code.

34.    Accordingly, the Plan satisfies section 1123(b)(3) of the Bankruptcy Code.

L.    **The Transfers of Properties Under the Plan
Are Governed by the Exemptions Provided
In Section 1146(c) of the Bankruptcy Code**

35.    Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any liens granted in connection with the exit finance facility referred to in Section 7.16(g) of the Plan, shall not be subject to any stamp, or other similar tax. *See Baltimore County, Md. v. Hechinger Liquidation Trust (In re Hechinger Inv. Co. of Delaware Inc.)*, 335 F.3d 243, 252-53 (3d Cir. 2003); *In re GST Telecom, Inc.*, 2002 WL 442233 (D. Del. 2002).

**AWI Has Satisfied Section
1129(a)(2) of the Bankruptcy Code**

36    Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with all of the applicable provisions of the Bankruptcy Code. AWI has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, (i) AWI is a proper debtor under section 109 of the Bankruptcy Code, (ii) AWI has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, (iii) AWI has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan, and (iv) AWI has

complied with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable non-bankruptcy law, the local Bankruptcy Rules and the specific rules of the Bankruptcy Court throughout the Chapter 11 Case.

37.    AWI has complied with the operating guidelines and financial reporting requirements enacted by the United States Trustee by (i) timely filing all operating reports and financial statements and (ii) maintaining and providing proof of insurance.

38.    AWI has paid all statutory fees required to be paid during the Chapter 11 Case and has filed all fee statements required to be filed.

39.    AWI has timely filed with the Court all schedules, lists of executory contracts, and statements of financial affairs.

40.    Sufficient and timely notice of the Confirmation Hearing and all other hearings in the Chapter 11 Case has been given to holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been given.

41.    The solicitation of votes was made following approval and dissemination of the Disclosure Statement to holders of Claims and Equity Interests in classes that are impaired and entitled to vote and was made in good faith and in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. The Ballots of holders of Claims were properly solicited and tabulated.

42.    AWI has complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court and has fulfilled all of the obligations and duties owed to its estate and creditors as required by and set forth in

sections 1107 and 1108 of the Bankruptcy Code. Accordingly, AWI has satisfied section 1129(a)(2) of the Bankruptcy Code.

## The Plan Satisfies the Requirements of
## Section 1129(a)(3) of the Bankruptcy Code

43.    Section 1129(a)(3) of the Bankruptcy Code states that a plan must be proposed in good faith and not by any means forbidden by law. *See Solow v. PPI Enters.(U.S.) (In re PPI Enters (U.S.)),* 324 F.3d 197, 211-12 (3d Cir. 2002); *In re PWS Holding Corp.,* 228 F.3d 224, 242 (3d Cir. 2000), *citing In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 150 n.5 (3d Cir. 1986) *(quoting In re Madison Hotel Assocs.,* 749 F.2d 410, 425 (7th Cir. 1984)); *In re SGL Carbon Corp.,* 200 F.3d 154, 162 n.10 (3d Cir. 1999); *In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 609 (Bankr. D. Del. 2001).

44.    The Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan is based on extensive good faith arm's length negotiations between and among AWI and the Committees, which represent constituencies having very different, and in many instances, competing interests in the Chapter 11 Case. The Plan (including the agreements set forth in the Exhibit Volume) was negotiated with the participation of the Committees, including representatives of the largest plaintiffs' asbestos firms in the country, and reflects the culmination of such efforts and the substantial input of each representative group. The Plan has been proposed with the legitimate and honest purpose of reorganizing AWI's business and affairs, restructuring its asbestos-related liability, and maximizing the value available for distribution to creditors. Further, the discharge, exculpation and indemnification provided in Sections 11.2, 11.6 and 8.6 of the Plan have been agreed to in good faith and are consistent with sections 105 and 1129 of the Bankruptcy Code. Thus,

AWI has complied with the "good faith and not by any means forbidden by law" requirement of section 1129(a)(3) of the Bankruptcy Code.

### The Plan Satisfies the Requirements of
### Section 1129(a)(4) of the Bankruptcy Code

45.     Section 1129(a)(4) of the Bankruptcy Code requires that all payments made or to be made by the plan proponent, by the debtor or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, have been approved by, or are subject to the approval of, the court as reasonable.

46.     All payments made by AWI out of the ordinary course of business have been approved by the Bankruptcy Court, and all payments made or to be made to professionals retained by order of the Bankruptcy Court will be, as set forth in Section 2.2 of the Plan, subject to review and approval by the Bankruptcy Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

### The Plan Satisfies the Requirements of
### Section 1129(a)(5) of the Bankruptcy Code

47.     Section 1129(a)(5) of the Bankruptcy Code requires the proponent of a plan of reorganization to disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor under the plan, and to show that the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy. Section 1129(a)(5) of the Bankruptcy Code also requires the proponent of a plan of reorganization to disclose the identity of any insider

that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider

48.    AWI has disclosed in the Disclosure Statement, the Exhibit Volume, and through evidence presented at the Confirmation Hearing the identities and nature of compensation of those persons who will serve, on the Effective Date of the Plan, as directors and officers of Reorganized AWI.  Moreover, although the identities of the Asbestos PI Trustees are not required to be disclosed, AWI has also disclosed the identities of the Asbestos PI Trustees in the Exhibit Volume and the members of the TAC through evidence presented at the Confirmation Hearing.  *See In re Eagle-Picher Indus., Inc.*, 1996 U.S Dist. LEXIS 17160, *29-30 (S.D. Ohio 1996) ("The trustees of the § 524(g) trust in this case are not subject to the statutory provision . . . They are not directors, officers or voting trustees of the debtor.").  Based on, among other things, the experience, education and/or particular skills of each and the manner of selection of each and any successors thereto, the appointment or continuation in office of such individuals is consistent with the interests of creditors and with public policy  (Rodruan Affidavit, at ¶¶ 18-22; Trafelet Affidavit, at ¶ 24).  Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**Section 1129(a)(6) of the Bankruptcy
Code Is Not Applicable to the Plan**

49.    Section 1129(a)(6) of the Bankruptcy Code requires a debtor to obtain the approval of any governmental regulatory commission, with jurisdiction over the debtor, with respect to any rate changes provided for in the debtor's plan of reorganization  The Plan does not provide for any changes in rates that require regulatory approval of any

governmental agency. Section 1129(a)(6) of the Bankruptcy Code is accordingly not applicable.

## The Plan Satisfies the Requirements of Section 1129(a)(7) of the Bankruptcy Code

50.    Section 1129(a)(7) of the Bankruptcy Code requires each creditor or equity interest holder in an impaired class to accept the plan of reorganization or receive or retain under such plan on account of such claim or interest property of a value, as of the effective date of such plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

51.    Based upon the Proposed Findings of Fact contained herein, the Revised Liquidation Analysis, and the sworn statements made in the Aronson Affidavit, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

## The Plan Does Not Satisfy the Requirements of Section 1129(a)(8) of the Bankruptcy Code

52.    Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests under a plan, such class either has accepted the plan or is not impaired under the plan. According to the Trumbull Certification, all classes of impaired Claims that were entitled to vote on the Plan, other than Class 6 (General Unsecured Claims other than Convenience Claims), have voted to accept the Plan. The Claims in each of Classes 1, 2, 4, 5, 9, 10 and 11 are unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired Claims in such classes are deemed to have accepted the Plan. Although Class 12 (Equity Interests) voted to accept the Plan, because Class 6 rejected the Plan, Class 12 is deemed to have rejected the Plan pursuant to Section 3.2(l)(iii) of the Plan. Although the Plan does not comply with section 1129(a)(8) of the Bankruptcy Code because of the rejection of the Plan by

Class 6 and the deemed rejection of the Plan by Class 12, as set forth below, the Plan can be confirmed because the treatment provided to holders of Claims in Class 6 and the holder of the Equity Interests in Class 12 complies with the requirements of section 1129(b) of the Bankruptcy Code.

### The Plan Satisfies the Requirements of
### Section 1129(a)(9) of the Bankruptcy Code

53.    Section 1129(a)(9) of the Bankruptcy Code provides for certain mandatory treatment of claims entitled to priority under the Bankruptcy Code.

54.    As required by section 1129(a)(9)(A) of the Bankruptcy Code, Section 2.1 of the Plan provides that each holder of an Allowed Administrative Expense shall be paid on account of such Allowed Claim, in full, in cash, on the Effective Date of the Plan; *provided, however*, that Administrative Expenses of the type specified in Section 1.1(c)(i) of the Plan shall be assumed and paid by Reorganized AWI in accordance with the terms and conditions of the particular transactions and any agreements relating thereto. In addition, pursuant to Section 2.2 of the Plan, all payments made or to be made (as Administrative Expenses) to professionals retained by orders of the Court will be subject to review and approval by the Bankruptcy Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code.

55.    Consistent with section 1129(a)(9)(B) of the Bankruptcy Code, Section 3.2 of the Plan provides that each holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim, in full, in cash, in an amount equal to such Claim, on the later of the Effective Date and as soon as reasonably practicable after the date such Claim becomes Allowed.

56.    Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 2.4 of the Plan provides that each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim either (a) in full, in cash, on the latest of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law or (b) upon such other terms as may be mutually agreed upon between each holder of a Priority Tax Claim and Reorganized AWI.

57.    AWI has sufficient cash to fund payments of Allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Tax Claims Accordingly, the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

### The Plan Satisfies the Requirements of Section 1129(a)(10) of the Bankruptcy Code

58.    Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept a plan of reorganization, determined without including any acceptance of such plan by any insider.

59.    The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because Classes 3 and 7, which are impaired classes, have voted to accept the Plan by the requisite majorities. Because Classes 3 and 7 contain no insiders (Rodruan Affidavit, at ¶ 12), at least one impaired class entitled to vote on the Plan has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by insiders.

### The Plan Satisfies the Requirements of Section 1129(a)(11) of the Bankruptcy Code

60.    Section 1129(a)(11) of the Bankruptcy Code requires that a plan be feasible and that the debtor or its successor under such plan would not likely require

liquidation or further financial reorganization, except as provided under such plan. *See In re NII Holdings*, 288 B.R. 356, 364 (D. Del. 2002); *In re Am. Family Enters.*, 256 B.R. 377, 404-05 (D.N.J. 2000); *Corestates Bank, N.A. v. United Chem. Tech., Inc.*, 202 B.R. 33, 41-42 (E.D. Pa. 1996); *Moody v. Sec Pacific Bus. Credit, Inc*, 85 B.R. 319, 346 (W.D. Pa. 1988), *citing Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)).

61. As set forth above in the Findings of Fact, Reorganized AWI will be able to satisfy its obligations under the Plan after confirmation. AWI has carefully structured the Plan and the Asbestos PI Trust to provide appropriate mechanisms and funding to consummate the Plan with a high degree of certainty that Reorganized AWI will be able to meet its obligations under the Plan.

62. Thus, based upon the Findings of Fact and the Conclusions of Law contained herein, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code, and Reorganized AWI will not likely require liquidation or further financial reorganization after confirmation.

### The Plan Satisfies the Requirements of Section 1129(a)(12) of the Bankruptcy Code

63. Section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under section 1930 of title 28 of the United States Code, as determined by the court at the hearing on confirmation of the plan, either have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

64. Section 11.1 of the Plan provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees payable under section 1930 of title 28 of the United States Code. All post-consummation fees that are due and payable will be

paid by Reorganized AWI until the Chapter 11 Case is closed pursuant to section 350(a) of the Bankruptcy Code.    Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

### The Plan Satisfies the Requirements of
### Section 1129(a)(13) of the Bankruptcy Code

65.    Section 1129(a)(13) of the Bankruptcy Code requires the continuation of payment of all retiree benefits, at the level established pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

66.    Section 8.7 of the Plan provides that, on and after the Effective Date, Reorganized AWI shall continue to pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code) for the duration of the period AWI has obligated itself to provide such benefits.    Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

### Section 1129(b) of the
### Bankruptcy Code Is Satisfied

67.    Section 1129(b)(1) of the Bankruptcy Code requires that a plan of reorganization not discriminate unfairly against classes of claims or equity interests that have rejected or are deemed to have rejected the plan. Class 6 has rejected the Plan and, as a result of such rejection, Class 12 is deemed to have rejected the Plan. The Plan does not discriminate unfairly against Class 6 because all holders of Allowed Unsecured Claims in Class 6 are receiving at least the same percentage recovery under the Plan as holders of Asbestos Personal Injury Claims in Class 7 of the Plan, and the Plan does not allocate a materially greater risk to Class 6 in connection with the proposed distribution. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 611 (Bankr. D. Del. 2001). In addition, no

holder of a Claim in Class 6 or the Equity Interests in Class 12 will receive or retain any property under the Plan on account of such junior Claims or Equity Interests, and no class of Claims senior to Class 6 or to Class 12 is receiving more than full payment on account of such Claims.

68.    The Plan does not discriminate unfairly against Class 6 by providing a disproportionately small recovery in comparison with the values assigned to the number and amount of future Asbestos Personal Injury Claims in Class 7. Notwithstanding that the Plan was negotiated between the Unsecured Creditors' Committee and the other major constituents in the case, AWI has satisfied the initial burden of production and the ultimate burden of persuasion as to the estimated values assigned to the number and amount of future Asbestos Personal Injury Claims based upon the testimony and report of Dr. Mark A. Peterson. *In re Genesis Health Ventures, Inc.*, 266 B.R. at 599. The Court concluded that estimating future claims is more an imprecise art than a science, and that the best anyone can do is to try to find an estimate that is not unreasonable. *See In re Babcock & Wilcox Co.*, 274 B.R. 230, 262 (Bankr. E.D. La. 2002) (noting that any estimation of future claims is problematical, and the best that can be done is to try to find an estimate that is not unreasonable).

69.    Based upon the testimony and report of Dr. Peterson, the burden of production shifts to the Unsecured Creditors' Committee, the objector. *See In re Genesis Health Ventures, Inc.*, 266 B.R. at 599 (in the context of unfair discrimination, the court shifted the burden to the objecting creditor once the debtor had satisfied its initial burden of production). At the Confirmation Hearing, the Unsecured Creditors' Committee offered the testimony of Dr. Letitia Chambers, who attempted to raise concerns regarding Dr.

Peterson's methodology. However, Dr. Chambers failed to provide any cogent basis for her disagreements, offering nothing but a facile and superficial critique of Dr. Peterson's report. Because the Unsecured Creditors' Committee failed to offer any written report evaluating or providing a range of numbers for projected future claims, the burden of production has not been met. *See In re Genesis Health Ventures, Inc.*, 266 B.R. at 599. Moreover, based upon Dr. Peterson's testimony and a thorough review of his report, the Court concluded that the range of claim amount projected by Dr. Peterson was supported by a preponderance of the evidence.

70.    The Unsecured Creditors' Committee asserts that that the Plan unfairly discriminates under section 1129(b)(1) of the Bankruptcy Code because the Plan calls for a payout of $1.8 billion to the Asbestos PI Trust, and AWI will only be required to pay between $520 and $805 million if certain legislation is passed by Congress in its present form. Accordingly, the Unsecured Creditors' Committee argues that AWI should be required to wait anywhere between three and fourteen months before seeking confirmation, providing full recovery to Class 6 rather than only 59 to 60 cents on the dollar under the Plan. For the reasons stated on the record of the Confirmation Hearing, the Court cannot base a finding of fact on the sheerest of speculation regarding the prospects for passage of legislation, much less legislation that has only been reported out of committee. Therefore, the Unsecured Creditors' Committee's argument in this regard is summarily rejected.

71.    Section 1129(b)(2) of the Bankruptcy Code requires that a plan of reorganization be fair and equitable against classes of claims or equity interests that have rejected or are deemed to have rejected the plan. Although the holder of Equity Interests

will receive the New Warrants as a result of the rejection of the Plan by Class 6, the New Warrants will be deemed to have been distributed on account of Asbestos Personal Injury Claims, the holders of which, by their acceptance of the Plan, have agreed to give to the holder of the Equity Interests. Accordingly, the allocation by the holders of Asbestos Personal Injury Claims of the portion of their distribution represented by the New Warrants, to which they otherwise would have been entitled (based upon the relative values of Unsecured Claims in Class 6 and Asbestos Personal Injury Claims in Class 7) is permissible and does not violate section 1129(b)(2) of the Bankruptcy Code. *In re Genesis Health Ventures, Inc.*, 266 B.R. at 612. *See also In re SPM Mfg. Corp.*, 984 F 2d 1305 (1st Cir 1983); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. 2003) (enhanced value received by holders of Class 6B Claims on account of contributions from other classes is not a treatment of such claims under the plan and does not constitute unfair discrimination).

72.    The Unsecured Creditors' Committee asserts that the absolute priority rule of section 1129(b)(2) of the Bankruptcy Code has been violated because the Plan, which they negotiated and agreed to, calls for the Warrants to be issued to holders of Equity Interests unless Class 6 rejects the Plan, in which case the Warrants would be issued to Class 7, which, according to the terms of the Plan, would decline them, and they would end up back in the holding company and then be distributed to the holder of the Equity Interests. As to these Plan provisions, the Unsecured Creditors' Committee made a knowing waiver of a known right to object to this arrangement when they entered into a consensual plan encompassing it. One cannot simply agree to provisions that might otherwise be suspect and then assert that they are illegal. That kind of conduct is too sharp

even for a bankruptcy case. Secondly, even if there was no waiver, the agreement stands on no different footing than the agreements in *In re SPM Mfg. Corp.*, 984 F.2d at 1305, and *In re Genesis Health Ventures, Inc.*, 266 B.R. at 612. Furthermore, to the extent that giving the Warrants initially to Class 7 might discriminate against Class 6, no unfair discrimination exists. The Warrants are only valued at $45 million, a mere pittance compared to the $4.689 to $6.479 billion in Asbestos Personal Injury Claims that are expected. It is hard to see how getting such a small amount of value to such a huge class of tort claims who will receive only one-third of the recovery on their claims that the other unsecured creditors will receive, could ever amount to unfair discrimination. Given the nature of the Asbestos Personal Injury Claims, the need for 75 percent (75%) agreement to the Plan in order to obtain the benefits of section 524(g) of the Bankruptcy Code, the inability to obtain confirmation without such an agreement, and the tiny amount of discrimination involved, vesting the initial rights to the Warrants in Class 7 rather than Class 6, easily meets the four part test of *In re Ambanc La Mesa Ltd. P'ship*, 115 3d 650 (9th Cir. 1997), and similar formulations of the test, as well as the two part test in *In re Genesis Health Ventures*, 266 B.R. at 611. *See Liberty Nat'l Enter. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc Le Mesa Ltd. P'ship)*, 115 F.3d. 650, 656 (9th Cir. 1997) (discrimination between classes must satisfy four criteria to be considered fair under 1129(b): (1) the discrimination must be supported by a reasonable basis; (2) the debtor could not confirm or consummate the Plan without the discrimination; (3) the discrimination is proposed in good faith; and (4) the degree of discrimination is directly related to the basis or rationale for the discrimination); *In re Genesis Health Ventures, Inc.*, 266 B.R. at 611 (there is a rebuttable presumption of unfair discrimination where there is

(1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution). Having reached that conclusion it follows that Class 7 could do whatever it wants with the Warrants including letting the holding company issuer give them to old Equity Interests.

73.   For the foregoing reasons, the Plan satisfies section 1129(b) of the Bankruptcy Code in that it does not discriminate unfairly and is fair and equitable with respect to the class of Claim and Equity Interests that is impaired under, and has rejected or is deemed to have rejected, the Plan.

### The Plan Satisfies the Requirements of Section 1129(d) of the Bankruptcy Code

74.   Section 1129(d) of the Bankruptcy Code provides that, on request of a governmental unit, the court may not confirm a plan if its principal purpose is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended. The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and there has been no objection to the Plan by any governmental unit alleging any such avoidance. (Rodruan Affidavit, at ¶ 8). Accordingly, the Plan satisfies section 1129(d) of the Bankruptcy Code.

**The Modifications Satisfy the Requirements
of Section 1127 of the Bankruptcy Code
and Rule 3019 of the Bankruptcy Rules**

75.     The Modifications do not adversely change the treatment of the

Claim of any creditor. To the contrary, the Modifications clarify certain provisions of the

Plan and preserve the Plan, as negotiated, and the rights of all parties as set forth therein.

76.     The Modifications comply in all respects with section 1127 of the

Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code.

Sufficient and adequate notice of the Modifications was provided, and no additional

disclosure or notice is required with respect to the Modifications.

**The Asbestos PI Channeling
Injunction and the Establishment of
the Asbestos PI Trust Comply with
Section 524(g) of the Bankruptcy Code**

77.     The Plan and its Exhibits are a fair, equitable and reasonable

resolution of the liabilities of AWI for Asbestos Personal Injury Claims.

78.     The Asbestos PI Trust satisfies the requirements for a trust under

section 524(g) of the Bankruptcy Code.

79.     The Asbestos PI Permanent Channeling Injunction is consistent with

sections 105(a), 524(g), and 1129 of the Bankruptcy Code and other applicable provisions

of the Bankruptcy Code, and the Asbestos PI Permanent Channeling Injunction is in the

best interests of AWI's estate. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-

03 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986); *In re Johns-Manville Corp*, 801 F.2d 60,

63-64 (2d Cir. 1986). *See also, In re Am. Family Enters.*, 256 B.R. 377, 391 (D.N.J.

2000); *In re Eagle-Picher Indus., Inc*, 1996 U.S. Dist. LEXIS 17160, *26-28 (S.D. Ohio

1996). Because Indirect PI Trust Claims, including those arising under contract, relate to

direct Asbestos Personal Injury Claims, they are appropriately channeled to the Asbestos
PI Trust and have historically been channeled to trusts established in connection with
asbestos related chapter 11 cases. *See, e.g., In re Forty-Eight Insulations,* 115 F.3d 1294
(7th Cir. 1997); *In re Prudential Lines, Inc.,* 59 F.3d 327 (2d Cir. 1995); *In re Combustion
Eng'g Inc.,* 295 B.R. 459 (D. Del. 2003); *In re The Babcock & Wilcox Co., et al,* 2001
U.S. Dist. LEXIS 9660, *22 (E.D. La. 2001); *In re Eagle-Picher Indus., Inc.,* 1996 U.S.
Dist. LEXIS 17160, *26-28 (S.D. Ohio 1996).

      80.    Moreover, in addition to the protection afforded the debtor or
transferees or successors of the debtor under the plan, section 524(g)(4) sets forth the broad
categories of third parties who, if alleged to be directly or indirectly liable for Asbestos
Personal Injury Claims, may be beneficiaries of the Asbestos PI Permanent Channeling
Injunction. Generally, these categories include the following:

      (i) a party owning a financial ownership interest in the debtor, a past or
present affiliate of the debtor, or a predecessor in interest of the debtor (11 U.S.C.
§ 524(g)(4)(A)(ii)(I));

      (ii) a party who has been involved as an officer, director or employee of the
debtor, a past or present affiliate of the debtor, or a predecessor in interest of the
debtor (11 U.S.C. § 524(g)(4)(A)(ii)(II));

      (iii) an insurer of the debtor or a past or present affiliate of the debtor, or a
predecessor in interest of the debtor (11 U.S.C. § 524(g)(4)(A)(ii)(III)); and

      (iv) third parties who have had involvement in a transaction changing the
corporate structure, or in a loan or other financial transaction affecting the financial
condition of, the debtor or a related party, including but not limited to involvement

in providing financing (debt or equity) or advice to an entity involved in such a transaction or acquiring or selling a financial interest in an entity as part of such a transaction (11 U.S.C. § 524(g)(4)(A)(ii)(IV)).

81.     Each of the PI Protected Parties falls within one or more of these categories, or is a representative, Affiliate or subsidiary of an Entity covered by these categories, and is therefore entitled to the protection of the Asbestos PI Permanent Channeling Injunction under section 524(g) of the Bankruptcy Code.

## The Claims Trading Injunction Is Permissible Under Section 105(a) of the Bankruptcy Code

82.     The Claims Trading Injunction is needed so that the beneficial interests in the Asbestos PI Trust are not considered "securities" under the federal securities laws. Without the Claims Trading Injunction, AWI might not be permitted to create a trust for the benefit of the holders of Asbestos Personal Injury Claims. The Claims Trading Injunction, therefore, forms an integral part of AWI's reorganization and the Plan.

83.     The Court has jurisdiction to enter the Claims Trading Injunction under sections 1334(a), (b), and (d) of title 28 of the United States Code.

84.     Section 105(a) of the Bankruptcy Code permits approval and entry of the Claims Trading Injunction, especially where, as here, such injunction is essential to the formulation and implementation of the Plan as provided in section 1123(a)(5) of the Bankruptcy Code, confers material benefits on AWI's estate, and is in the best interests of holders of Claims against AWI.

85.     The Claims Trading Injunction is consistent with sections 105 and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and the Claims Trading Injunction is in the best interests of AWI's estate. *See Celotex Corp. v*

*Edwards,* 514 U.S. 300, 310-311 (1995); *In re Dow Corning Corp.,* 280 F.3d 648, 656-58

(6th Cir. 2002); *In re Wedgewood Realty Group, Ltd.,* 878 F.2d 693, 701-02 (3d Cir 1989);

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1002-03 (4th Cir.), *cert. denied,* 479 U.S.

876 (1986); *In re Johns-Manville Corp.,* 801 F.2d 60, 63-64 (2d Cir. 1986); *In re*

*Combustion Eng'g Inc.,* 295 B.R. 459 (D Del. 2003); *In re Asbestos Claims Mgmt. Corp.,*

294 B R. 663 (N.D. Tex. 2003);*In re Eagle-Picher Indus., Inc.,* 1996 U.S. Dist. LEXIS

17160, *68 (S.D. Ohio 1996).

**The Discharge, Exculpation and Indemnity**
**Provisions Are Consistent with Sections 105**
**and Other Provisions of the Bankruptcy Code**

86.    The Bankruptcy Court has jurisdiction to approve the provisions in

Sections 11.2 (Discharge of AWI), 11.6 (Exculpation), and 8.6 (Indemnification) of the

Plan pursuant to sections 1334(a), (b) and (d) of title 28 of the United States Code.

87.    Given the circumstances, the Plan's discharge provisions, including

the Asbestos PI Permanent Channeling Injunction, are proper.  Section 105(a) of the

Bankruptcy Code empowers the court and permits court approval of the discharge,

exculpation and indemnification provisions where, as here, such provisions are essential to

the formulation and implementation of the Plan and confer material benefits on AWI, its

estate and creditors.  On the basis of the Affidavits in Support of Confirmation and the

record presented at the Confirmation Hearing, the Bankruptcy Court finds and concludes

that it has jurisdiction to approve the discharge, exculpation and indemnification

provisions set forth in the Plan and that such provisions of the Plan are consistent with

sections 105 and 1129 of the Bankruptcy Code and other applicable provisions of the

Bankruptcy Code and are in the best interests of AWI's estate and creditors.  *See In re*

*PWS Holding Corp.,* 228 F.3d 224 (3d Cir. 2000); *In re Continental Airlines,* 203 F.3d 203

(3d Cir. 2000); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir.), *cert denied*, 479 U.S. 876 (1986); *In re Combustion Eng'g Inc.*, 295 B.R. 459, 483-87 (D. Del. 2003); *In re Am. Family Enters.*, 256 B.R. 377, 406-07 (D.N.J. 2000); *In re Allegheny, Health, Educ., & Research Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).

**The New Common Stock, the New Warrants,**
**and the Plan Notes Are Exempt from Registration**
**Pursuant to Section 1145 of the Bankruptcy Code**

        88.    Under section 1145 of the Bankruptcy Code, the New Common Stock, the New Warrants, and the Plan Notes will be freely tradeable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act and compliance with any rules and regulations of the Securities Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments; and (iii) applicable regulatory approval. The issuance of New Common Stock, the New Warrants, and the Plan Notes are or were in exchange for Claims against, or Equity Interests in, AWI, or principally in such exchange and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

        89    The exemption from the requirements of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration of the offer, issuance, exchange or transfer of a security provided for in the Plan or registration or licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by section 1145 of the Bankruptcy Code and is applicable to the extent set forth in the Plan.

The New Common Stock, the New Warrants, and the Plan Notes are exempt from registration pursuant to section 1145 of the Bankruptcy Code and are freely tradeable by the holders thereof except to the extent a holder is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code. For the purposes of section 1145(d) of the Bankruptcy Code, Class 7 is not an "underwriter" as defined in Section 2(11) of the Securities Act of 1933.

### The Plan Provides for
### Proper Retention of Jurisdiction

90.     The Bankruptcy Court or the District Court, as provided in Article IX of the Plan, may retain jurisdiction over the matters set forth in Section 9.2 of the Plan and the Confirmation Order as ultimately entered by the Bankruptcy Court and District Court.

### Effect of Confirmation

91.     The Plan and its provisions shall be binding upon AWI, Reorganized AWI, the Disbursing Agent, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in AWI, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

92.     Pursuant to Section 11.7 of the Plan, except as otherwise provided in the Plan, upon the Effective Date, title to all property of AWI's estate shall vest in Reorganized AWI free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and all such Claims, Equity Interests, Encumbrances, and other interests shall be extinguished. From and after the Effective Date, Reorganized AWI may operate its business and may use, acquire, and dispose of property, and compromise or settle any Claims and Equity Interests without the supervision of or approval by the Bankruptcy

Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

### Miscellaneous

93.    To the extent any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

### Conclusion

These Proposed Findings of Fact and Conclusions of Law shall serve to support the entry of the Proposed Confirmation Order and issuance of the Asbestos PI Permanent Channeling Injunction and the Claims Trading Injunction in the Confirmation Order.

Dated:

Wilmington, Delaware
December ___, 2003

THE HONORABLE RANDALL J. NEWSOME
United States Bankruptcy Judge