Back|Search

# Harding v Wealands (2004)
**[2004] EWCA Civ 1735**

**Waller LJ , Lady Justice Arden DBE , Sir William Aldous**

**Case No: A2/04/1365**                    **Date: 17/12/2004**

**Heading: Personal Injury, Negligence, Damages**
Sub-heading: Road Traffic, Motor Accidents Compensation Act 1999, Jurisdiction

Alerter Extract: The dispute in question related to an accident in a vehicle being driven by Ms Wealands (W) rendering Mr Harding (H) a tetraplegic. The accident occurred in New South Wales and proceedings were issued against W in England. W pleaded that the applicable law governing both the issue of liability and that of damages was the law of New South Wales, relying on s.11 of the Private International Law (Miscellaneous Provisions) Act 1995 (the 1995 Act). W also relied on provisions of the Motor Accidents Compensation Act 1999 (the 1999 Act). This appeal from Elias J's ruling that (i) it was substantially more appropriate that the law of England should apply to the assessment of damages and; (ii) alternatively, that the provisions relied on were procedural and not substantive. The issue therefore considered was whether the restrictions on damages imposed by the 1999 Act were rules of substantive law or rules of procedure.

(1) By s.11 of the 1995 Act the general rule would have established the law of New South Wales as the applicable law relating to all issues, that being the law where the events constituting the tort in this case occurred. But where the general law, by virtue of s.11 being the law where the tort occurred, is also the national law of one of the parties, it will be very difficult to envisage circumstances that will render it substantially more appropriate that any issue could be tried by reference to some other law; (2) The court held that Elias J was wrong to apply English law in preference to the restrictions in the 1999 Act. The judgment is limited to the application of the 1999 Act. Waller LJ dissenting.

Appeal allowed.

Outcome: Appeal Allowed

Mr M McParland                 instructed by Stewarts for the appellant
Mr H Palmer QC                 instructed by Kennedys for the respondent


**Judgment Status: Given Handed Down Approved**
**Transcript Status: Approved**

▼ View Transcript

To download Transcript, right click the icon and select 'Save Target As': 1712RS40.rtf
Scroll down to view text

Case No: A2/2004/1365

Neutral Citation Number: [2004] EWCA Civ 1735
IN THE SUPREME COURT OF JUDICATURE
COURT OF APPEAL (CIVIL DIVISION)
ON APPEAL FROM The Queen's Bench Division
The Hon Mr Justice Elias
HQ02X03016

Royal Courts of Justice
Strand, London, WC2A 2LL

Friday, 17 December 2004

Before :

**LORD JUSTICE WALLER**
**LADY JUSTICE ARDEN**
**and**
**SIR WILLIAM ALDOUS**

- - - - - - - - - - - - - - - - - - - - -

Between :

| | |
|---|---|
| Harding | Claimant/Respondent |
| - and - | |
| Wealands | Defendant/Appellant |

- - - - - - - - - - - - - - - - - - - - -

(Transcript of the Handed Down Judgment of

Smith Bernal Wordwave Limited, 190 Fleet Street

London EC4A 2AG

Tel No: 020 7421 4040,  Fax No:  020 7831 8838

Official Shorthand Writers to the Court)

- - - - - - - - - - - - - - - - - - - - -

**Howard Palmer QC and Mr Charles Dougherty** (instructed by Kennedys) for the **Appellant**

**Charles Haddon-Cave QC and Michael McParland** (instructed by Stewarts) for the **Respondent**

- - - - - - - - - - - - - - - - - - - - -
**Judgment**
**As Approved by the Court**

**Crown Copyright ©**

**Lord Justice Waller :**

1. On the 3rd February 2003 Mr Harding was rendered a tetraplegic as a result of an accident in a vehicle being driven by Ms Wealands. The accident occurred in New South Wales and Ms Wealands is an Australian national. Proceedings were issued and served on Ms Wealands in England who at that time worked at 141 Castle Street Salisbury, on Wednesday 18th September 2002. An application was made on behalf of Ms Wealands to stay the proceedings on the grounds that New South Wales the more appropriate forum for the trial of the action. That application was dismissed on 10th July 2003 by Master Foster. There was no appeal from that decision. On 11th August 2003 Ms Wealands filed a defence denying liability and pleading that the applicable law governing both the issue of liability and that of damages was the law of New South Wales. In her defence reliance was placed on s.11 of the Private International Law (Miscellaneous Provisions) Act 1995, which, if it applied, made New South Wales the applicable law being the place where the alleged tort was committed. The defence further averred that, for the avoidance of doubt, New South Wales law was alleged to govern "all substantive issues including the assessment and/or recoverability of damages".

2. The defence at this stage put in issue liability and in the alternative relied upon a provision under the Motor Accidents Compensation Act 1999 (MACA) of New South Wales, which it was suggested disentitled Mr Harding from commencing court proceedings against the defendant, on the basis that the principal claims assessor had not issued a certificate in respect of the claim under s.92 of MACA. No more need be said about these aspects, since after the order of the trial of preliminary issues, to which I am about to refer, liability was admitted and reliance on s.92 was disavowed.

3. In addition, the defence pleaded seven matters in reliance on the provisions of MACA relating to quantification of damage. It pleaded:-

"Under the law of New South Wales and the Motor Accidents Compensation Act 1999 ("MACA") of New South Wales in particular . . .

5b)   The maximum amount that may be awarded to the Claimant for non-economic loss is presently AUS$309,000 (s.134 MACA)

5c)   In assessing loss of earnings, the Court must disregard the amount by which the Claimant's net weekly earnings exceeded AUS$2,500 (s.125 MACA).

5d)   There is no award for the first 5 days loss of earning capacity (s.124 MACA)

5e)   No award may be made in respect of gratuitous care if such care does not exceed 6 hours a week and is for less than 6 months. (s.128 MACA). Insofar as the gratuitous care provided exceeds this, the amount that can be recovered is limited to the sums set out in s.128 MACA.

5f)   The discount rate in respect of future economic loss is prescribed at 5% (s.127 MACA).

5g)   No interest is payable on damages for gratuitous care or non-economic loss. Interest is only payable in respect of other heads of damages insofar as the conditions set out in s.137 MACA are satisfied and at the rate prescribed in that section for the time being.

5h)   The Claimant must give credit for any payments made to or on behalf of the Claimant by an insurer in relation to a claim made by the claimant (s.130 MACA)."

4. By order dated 31st October 2003 Master Foster ordered the trial of three preliminary

issues, two relating to liability, but the third relating to the question as to which was the applicable law to be applied in relation to the assessment of damages. The issues of liability were conceded on behalf of Ms Wealands and that left the third issue to be resolved.

5. The trial of that issue came on before Elias J, and he ruled on two bases that the applicable law was English law. First he ruled that although by s.11 of the 1995 Act in accordance with the general rule the law applicable to the alleged tort would be the law of New South Wales, under s.12 it was substantially more appropriate that the law of England should apply to the assessment of damages. In the alternative, if he were wrong about that, his decision was that, in relation to the provisions of MACA relied on in the defence, those provisions were procedural and not substantive. On that alternative basis he held that the English court would not in any event apply them. This is an appeal from that judgment.

6. Mr Howard Palmer QC, for Ms Wealands, attacks the judge's findings on both issues, as indeed he must if he is to succeed in establishing that at the trial on damages the provisions of MACA should be applied by the English court. Mr Charles Haddon Cave QC seeks to uphold the judge's judgment on both points. As regards the judge's finding that English law was substantially the more appropriate law, pursuant to an indication given by Clarke LJ, who gave permission to appeal, he seeks to confine the role of an appellate court. He submits that the appellate court should be cautious before interfering with the assessment of a judge on this issue. In relation to the judge's conclusion that in any event the issues raised by MACA were procedural rather than substantive, Mr Haddon-Cave submits that the matter has been resolved in his favour by the Court of Appeal decision in *Roerig v Valiant Trawlers Ltd* [2002] EWCA Civ 21. That is a decision of the Court of Appeal post the 1995 Act, which Mr Haddon-Cave submits applies what might be termed the traditional view as to the dividing line between procedural and substantive, and Mr Haddon-Cave submits that we are bound by that decision.

The 1995 Act

7. It is convenient to set out the key provisions of the 1995 Act:-

" **9 Purpose of Part III**

(2)The characterisation for the purposes of private international law of issues arising in a claim as issues relating to tort or delict is a matter for the courts of the forum.

(4) The applicable law shall be used for determining the issues arising in a claim, including in particular the question whether an actionable tort or delict has occurred.

(5) The applicable law to be used for determining the issues arising in a claim shall exclude any choice of law rules forming part of the law of the country or countries concerned.

(6) For the avoidance of doubt (and without prejudice to the operation of section 14 below) this Part applies in relation to events occurring in the forum as it applies in relation to events occurring in any other country.

**10 Abolition of certain common law rules**

The rules of the common law, in so far as they-

(a) require actionability under both the law of the forum and the law of another country for the purpose of determining whether a tort or delict is actionable; or

(b) allow (as an exception from the rules falling within paragraph (a) above) for the law of a single country to be applied for the purpose of determining the issues, arising in the case in question,

are hereby abolished so far as they apply to any claim in tort or delict which is not excluded from the operation of this Part by section 13 below.

### 11 Choice of applicable law: the general rule

(1) The general rule is that the applicable law is the law of the country in which the events constituting the tort or delict in question occur.

(2) Where elements of those events occur in different countries, the applicable law under the general rule is to be taken as being-

> a. for a cause of action in respect of personal injury caused to an individual or death resulting from personal injury, the law of the country where the individual was when he sustained the injury.
> b. for a cause of action in respect of damage to property, the law of the country where the property was when it was damaged; and
> c. in any other case, the law of the country in which the most significant element or elements of those events occurred.

(3) In this section "personal injury" includes disease or any impairment of physical or mental condition.

### 12 Choice of applicable law: displacement of general rule

(1) If it appears, in all the circumstances, from a comparison of-

> a. the significance of the factors which connect a tort or delict with the country whose law would be the applicable law under the general rule; and
> b. the significance of any factors connecting the tort or delict with another country,

that it is substantially more appropriate for the applicable law for determining the issues arising in the case, or any of those issues, to be the law of the other country, the general rule is displaced and the applicable law for determining those issues or that issue (as the case may be) is the law of that other country.

(2)The factors that may be taken into account as connecting a tort or delict with a country for the purposes of this section include, in particular, factors relating to the parties, to any of the events which constitute the tort or delict in question or to any of the circumstances or consequences of those events.

### 14 Transitional provision and savings

(2) Nothing in this Part affects any rules of law (including rules of private international law) except those abolished by section 10 above.

(3) Without prejudice to the generality of subsection (2) above, nothing in this Part-

> a. authorises the application of the law of a country outside the forum as the applicable law for determining issues arising in any claim in so far as to do so-
>
> > i. would conflict with principles of public policy; or

ii. would give effect to such a penal,
revenue or other public law as would
not otherwise be enforceable under the
law of the forum; or

b. affects any rules of evidence, pleading or
practice or authorises questions of procedure in
any proceedings to be determined otherwise than
in accordance with the law of the forum."

8. I would make the following comments at this stage. First, it is clear the Act abolishes the double actionability rule and abolishes such exception as there was to that rule as applied in *Boys v Chaplin* [1971] AC 356. Second, the Act provides by s.11 that the general rule is that the law of the country where the events occurred will decide all issues. Third, s.12 allows for that general rule to be displaced in relation to "all issues or any issue" in a case where it is substantially more appropriate for the law of another country to apply. Fourth, s.14(2) makes clear that no other rules other than the double actionability rule and the exception as established in *Boys and Chaplin* have been abolished. In particular, s.14(3) makes clear that nothing authorises questions of procedure to be determined otherwise than in accordance with the law of the forum, and the subsection contemplates that "procedure" is something wider than "rules of evidence, pleading or practice".

### The First Issue: Was the judge right to displace the general rule in this case?

9. By s.11 of the 1995 Act the general rule would have established the law of New South Wales as the applicable law relating to all issues, that being the law where the events constituting the tort in this case occurred.

10. Neither Mr Howard Palmer nor Mr Haddon-Cave sought to suggest that the approach to s.12, which I sought to articulate as the proper approach in *Roerig*, was other than accurate. What s.12 requires is first an identification of the issue in relation to which it might be suggested that the general rule should not be applicable. I pointed out, and I repeat, that there is at this stage some inter-connection between the arguments relating to whether the sections in MACA are procedural or substantive and this issue as to whether a law other than New South Wales is the law to be applied. The point I made is that by s.12 the law of the forum is not an option. It follows that if an issue is one that must be decided by the law of the forum, then it cannot be an issue to which s.12 would apply. I re-emphasise this point simply because the Act contemplates that issues which by the common law would have been issues to be decided by the law of the forum are issues which the Act recognises as being "substantially more appropriate to be tried by the law of the forum." That is the Act's basic position and in one sense (as the judge also thought) the second point on the appeal as to whether the provisions of MACA are procedural or substantive should be considered first. But they were not in argument and have not been by the judge and thus I proceed with consideration of s.12.

11. Since in this case the law of the forum is also the only other possible law apart from the law of New South Wales, it is possible to consider this aspect without refining the issue further than as an issue of quantum.

12. The next task is to identify the factors that connect the tort with England and those that connect the tort with New South Wales. As I stressed in *Roerig*, and as the judge appreciated, the identification is of factors that connect the tort with the respective countries, not the issue or issues with the respective countries. No-one criticised the judge's approach, which was in accordance with my suggested approach in the *Roerig* case. He assessed the factors in the following way:-

"In this case the factors connecting the tort with New South Wales are that the accident occurred there, the defendant is an Australian national from New South Wales; she was driving on a New South Wales driving licence with New South Wales insurance; and the injuries were suffered there. By

> contrast, the factors connecting the tort with England are that the claimant
> was British, he had always lived and worked in England, he was domiciled
> in England at the relevant time, he and the defendant were both resident in
> England and living together in a settled manner; and they were only in
> Australia for the purposes of a holiday. The consequences of the injury
> would be suffered by the claimant in England and the cost of dealing with
> the cost of special care required in the future would have to be borne in
> England."

13. It is right to put a little more flesh on the above bare bones. In seeking to establish English law as the substantially more appropriate law, it could only be "factors relating to the parties" which could connect the tort to England. What lay behind the above summary by the judge were the following details. Ms Wealands was an Australian national who lived in New South Wales in Australia up until the time she left to live with Mr Harding in June 2001. Mr Harding met Ms Wealands for the first time at the wedding of his friend, Kevin Ruston, and Ms Wealands' sister in Australia in about March 2001. They had already been in communication and their relationship developed. Mr Harding returned to England after the wedding and about three months later, in June 2001, Ms Wealands left Australia to join the claimant in his flat in London and they formed a settled relationship. That relationship was such as to lead to Ms Wealands describing herself at the time of the accident as the "de facto" wife of Mr Harding. Ms Wealands was in the United Kingdom on a working holiday visa, which would have expired in May 2003.

14. Ms Wealands returned to Australia on the 14th January 2002 to stay with her parents in New South Wales for her father's sixtieth birthday, and she was intending to stay for five weeks on holiday. On the 29th January 2002 Mr Harding arrived in New South Wales, his holiday being limited to three weeks, and he intended to remain with Ms Wealands until they both returned to the flat in London. When Ms Wealands arrived in Australia in January 2002 she took back her Suzuki motorcar, which she had lent to her brother-in-law, Kevin Ruston, during her absence, the car having been purchased by her in New South Wales in 2000. Ms Wealands had a New South Wales driving licence and was compulsorily insured with NRMA, an Australian insurance company. The accident in which Mr Harding was so seriously injured occurred on 3rd February 2002 on a dirt track in New South Wales, when Ms Wealands lost control of the car and it rolled over. The only witnesses were the passengers in the car who were, apart from Mr Harding and Ms Wealands, Ms Wealands' sister and brother-in-law, Kevin Ruston, who were living in New South Wales at the time. Mr Harding suffered fractures involving cervical vertebrae C4,5 and 6 and was rendered tetraplegic from C5 downwards in the course of the accident. He was treated in hospital initially in New South Wales until he was repatriated to the United Kingdom on 26th March 2002 for continuing treatment and rehabilitation. While in the hospital in New South Wales Ms Wealands and Mr Harding decided to get married and Ms Wealands accompanied Mr Harding back to England when he returned in March 2002. Sadly, after they had been back for a month, their relationship fell apart. Ms Wealands remained in England for another six months and it was in those circumstances that she could be served personally with these proceedings in Salisbury on 18th September 2002.

15. The judge recognised that his task was to compare the significance of the English factors with the significance of the New South Wales factors in order to decide whether it was substantially more appropriate that the law of England should determine the issues relating to quantum in this case. He said:-

> "(Waller LJ in *Roerig* emphasised that it was not intended that the general
> rule should be dislodged easily. Proper recognition has to be given to the
> word "substantially". At the same time however it is not a requirement that
> the connection with the country whose law would be the appropriate law
> under the general rule should be insubstantial or insignificant. The

*question is whether the connecting factors with another country are sufficient to make it substantially more appropriate for that law to be applied."*

16. Mr Howard Palmer made no criticism of that passage and rightly. The reference to the fact that it was not a requirement that the connection with that law which would be the appropriate law under the general rule should be insubstantial or insignificant, is to the proposal as it was first made by the Law Commissions in their working paper in 1984 (tab 11 in our bundle). Their original recommendation was that the factors connecting the tort with the law which would otherwise be more appropriate should be "insubstantial or insignificant". But their final proposal was that "the threshold be lowered by concentrating less on the insignificance of the connection of the tort or delict with the system of law indicated by the general rules, and more on how substantial is the connection of the tort or delict with the system of law of another country."

17. The judge then considered certain of the authorities, e.g. *Edmund v Simmonds* [2001] 1 WLR 1003, and the basis on which Garland J had in that case dis-applied Spanish law under s.12. He further considered the facts in *Roerig* and my reasoning for not dis-applying the general law of England in favour of Dutch law. The judge then concluded his judgment on this issue in the following terms:-

> "32. In my judgment, the factors connecting the tort with England here are sufficiently strong to make it substantially more appropriate to displace the law of New South Wales as the applicable law on these substantive matters (as they are assumed to be for the purposes of this argument) in favour of English law. Whilst the case is not on all fours with *Edmund v Simmonds* since the defendant in this case was driving in her home state, there are significant similarities with that decision. Both claimant and defendant were living together in a settled relationship and resident in England at the relevant time. That, in my view, clearly distinguishes the case from *Roerig*.
> 33. In the context of considering factors relating to the parties, as section 12 (2) requires me to do, the defendant's link at the material time with England and with the claimant are far more significant than her Australian connection. The latter, of course, explains why they chose Australia for their holiday, but in my judgment, that is not a significant factor connecting the tort with New South Wales. Perhaps the strongest factor favouring New South Wales is the fact that the defendant was insured there. I do not discount that factor, as the claimant would have me do, but nor will I give it very much weight, in part for the reasons urged upon me by the claimant.
> 34. I consider that many contrary factors connecting the tort to England make the application of English law substantially more appropriate. In particular, the fact that the consequences of the accident will be felt in England, although not of itself sufficient to displace the general rule, is in my opinion, a factor that should be given significant weight when making the relevant comparison, particularly given that the issue under consideration relates to the calculation of damages. The objective is to do justice, and the fact that the costs of alleviating the consequences of the accident will be borne in a particular country will usually at least be a point in favour of the application of that law, even although not of itself sufficient to displace the general rule."

18. Two things immediately strike me about that passage. First, can it really be right to say that Ms Wealands' link at the material time with England and with Mr Harding was far more significant than her Australian connection? Can it possibly be right to suggest that the strongest factor in favouring New South Wales was that fact that the defendant was insured there as opposed to, for example, the fact she was Australian, driving her motorcar in Australia, with the accident happening on the dirt road of New South Wales?

<u>Approach of the Appellate Court</u>

19. I am not sure ultimately there was much between Mr Haddon-Cave and Mr Howard Palmer as to the correct approach of an appellate court considering the judge's ruling as to whether England was "substantially" the more appropriate law. In the judgment of Clarke LJ in *Assicurazioni Generali SpA v Arab Insurance Group* [2002] EWCA Civ 1642, [2003] 1 WLR 577 at para 18 and 19 Clarke LJ cites certain important passages in previous judgments, which reflect what should be the approach of an appellate court. First a passage in a previous judgment of Buxton LJ in *Norowzian v Arks Ltd* (2) [2000] FSR 363 at 370, where Buxton LJ said:-

> "On the other hand the standards applied by the law in different context vary a great deal in precision and generally speaking, the vaguer the standard and the greater the number of factors which the court has to weigh up in deciding whether the standards have been met, the more reluctant an appellant court will be to interfere with the trial judge's decision."

Then Clarke LJ quoted the well known passage from the speech of Lord Hoffmannn in *Biogen Inc v Medeva plc [1997] RPC1 45*, where Lord Hoffmannn said:-

> "The need for appellate caution in reversing the judge's evaluation of the facts is based upon much more solid grounds than professional courtesy. It is because specific findings of fact, even by the most meticulous judge are inherently an incomplete statement of the impression which was made upon him by the primary evidence. His express findings are always surrounded by a penumbra of imposition as to emphasis, relative weight, minor qualification and nuance (as Renean said, la verité est dans une nuance) of which time and language do not permit exact expression, but which may play an important part in the judge's overall evaluation. It would in my view be wrong to treat *Benmax* as authorising or requiring an appellate court to undertake a *de novo* evaluation of the facts in all cases in which no question of the credibility of witnesses is involved. Where the application of a legal standard such as negligence or obviousness involves no question of principle, but is simply a matter of degree, an appellate court should be very cautious in differing from the judge's evaluation."

20. I accept, accordingly, that this court should be very cautious in differing from the judge's evaluation made in this case. But even acting cautiously I simply cannot accept a conclusion that the defendant's link at the material time with England and with Mr Harding was far more significant than her Australian connection, or that the strongest factor favouring New South Wales was the fact that Ms Wealands was insured there. I would fully understand, having regard to the settled relationship, that Mr Harding and Ms Wealands were in, that if they had been on holiday in France when this accident occurred England might have been found to be substantially more appropriate and to have displaced French law. But where the general law, by virtue of s.11 being the law where the tort occurred, is also the national law of one of the parties, it will, I suggest, be very difficult to envisage circumstances that will render it <u>substantially</u> more appropriate that any issue could be tried by reference to some other law. In this case all that the judge relied on, as Mr Haddon-Cave emphasised, was the parties' "settled relationship", but however settled that relationship, Ms Wealands had left her car in New South Wales, was still a citizen of Australia driving on a New South Wales driving licence, and the accident occurred in New South Wales.

21. Thus, even though I recognise the need for caution, I am simply unable to accept the judge's holding that in this case the application of the general rule should be disapplied.

<u>Procedural or Substantive</u>

22. I start by re-emphasising that the 1995 Act abolished only two rules of common law and expressly preserved all others. Furthermore, it is important to stress that s.14(3)(b) makes clear that nothing in this part "affects any rules of evidence, pleading or practice" – or "authorises questions of procedure in any proceedings to be determined otherwise than in accordance with the law of the forum." That makes it clear that "questions of procedure" went beyond evidence, pleading or practice.

23. No-one disputes the general proposition that questions of substance were thus intended to be for the law as identified by s.11 or s.12, and questions of procedure were intended to be for the law of the forum. No-one, I think, would also quarrel with the proposition that the law of damages is partly substantive and partly procedural. Indeed, it is possible to go further and say that no-one would now quarrel with the proposition, that the question whether or not a head of damage was recoverable would be a substantive question. Equally, no-one would quarrel with the fact that at some stage quantification becomes a matter for the forum.

24. In *Roerig* I took the view, a view with which other members of the court agreed, that the position taken by the majority in *Stevens v Head* [1992] 176 CLR 433, a decision of the High Court of Australia on appeal from the Supreme Court of Queensland, reflected the accurate position at common law. We were not in *Roerig* referred to a more recent decision of that Court in *John Pfeiffer pty Ltd v Rogerson* [2000] 203 CLR 503. In *Stevens v Head* the majority were of the view that, in relation to quantification of damage, anything beyond the ascertainment of the heads of liability was procedural and thus said at 459, referring to a New South Wales statute:-

> "s.79 is plainly a provision which affects the measure of damages but does not touch the heads of liability in respect of which damages might be awarded. It is simply a law relating to the quantification of damages and that, as we have seen, is a matter governed solely by the *lex fori*."

The provision or the sub-section of s.79 to which that dictum was addressed included s.79(3), which limited the maximum sum which could be awarded for damages for non-economic loss by the Motor Accidents Act 1998 of New South Wales. That seems to be a predecessor of and to bear a similarity to certain of the provisions of MACA which we have to consider in this case.

25.    The majority in *Pfeiffer* stressed that they were concerned only with the federal context and not the international context and were putting issues that might arise in the international context entirely on one side. It was in that context they expressed the view that it was appropriate to adopt a formulation put forward by Mason CJ, who was in the minority in *Stevens v Head*, which was to the following effect:-

> "Rules which are directed at governing or regulating the mode or conduct of court proceedings are procedural and all other provisions or rules are to be classified as substantive."

The majority continued on the same page (544) to say:-

> "*All questions about the kinds of damage, or amount of damages that may be recovered, would likewise be treated as substantive issues governed by the lex loci dilecti.*"

26.    The decision in *Pfeiffer* has been considered in the High Court of Australia in the international context in *Regie National des Usines Renault v Zhang* [2002] 187 ALR 1, and I simply record that the above view in relation to all questions about the kinds of damage was commented on in these terms:-

> "We would reserve for further consideration as the occasion arises whether that . . . position should be applied in cases of foreign tort."

27.    I doubt in the interests of certainty whether there is room for any intermediate position and the real question is which of the above views should be accepted as representing the common law. Should procedure be confined in the very narrow way that Mason CJ has suggested? Should all questions that arise in relation to damages be

substantive? Or, should the position be that once heads of damage have been established, all questions going to the assessment of those damages thereafter will be procedural? There is a suggestion in the Law Commissions' Report that statutory limitations on damages should be substantive, even though damages otherwise should be a matter for the *lex fori*. Paragraphs 3.38 and 3.39 of that report say:-

> "*Damages*
>
> > 3.38 The Consultation Paper provisionally recommended that there should be no change in the present law on the question of damages, which we confirm. Accordingly, the applicable law in tort or delict determines the question of the availability of particular heads of damages whereas the measure or quantification of damages under those heads is governed by the *lex fori*. Furthermore, we do not think that express guidance need be given in any implementing legislation on how damages should be quantified in a case where a court in the United Kingdom is faced with assessing the quantum of damages under a head of damage unknown to our law. We expect the question to arise infrequently and to attempt to solve the problem in advance may be less satisfactory than leaving the court to resolve the question on the particular facts of the dispute before it.
>
> > *Limitations on recovery*
> > 3.39 We agree with the view taken by all consultants who commented on this matter, that a statutory ceiling on damages is a substantive issue for the applicable law in tort or delict rather than a procedural issue for the *lex fori*. We do not think that there is a need for this matter to be included in implementing legislation, since it is connected with the question of damages generally, on which we are making no proposals for a change in the law."

28.    The view expressed in 3.39 seems to be inconsistent with the view in 3.38. It does however have support from a dictum in *Cope v Doherty* {1858) 4 K and J 369 by Wood VC and the comment of Turner LJ in the same case when in the Court of Appeal (1858) 2 de G and J 614 relied on by Mason CJ in his dissenting judgment in *Stevens v Head* at 448. In the thirteenth edition of Dicey and Morris para 7.038 it is said "statutory provisions limiting a defendant's liability are *prima facie* substantive", and questions the approach in *Stevens v Head* (para 7-039). Indeed at para 35.055 the editors are more positive, suggesting that "the existence and extent of financial ceilings on recoverable damages" are questions of substantive law, and by a footnote suggest that *Stevens v Head* should not be followed, relying, it is right to say, on the above para 3.39 in the Law Commissions' Report.

29.    I have difficulty in singling out ceilings on damages in this way. One of the provisions of MACA, with which we are concerned in this very case, certainly contains an express limitation on recoverability of damages for non-pecuniary loss, but the other provisions could be argued to be at least in their effect "limitations" on damages. Furthermore, there does not seem to me to be any logical distinction between producing a case from the *lex loci dilecti*, which establishes that by the proper law damages are awarded at that lower level, and producing a statute which places a cap on the amount of damages recoverable. Mr Howard Palmer in his submissions recognised this latter point because he, without hesitation, submitted that it would not simply be a foreign statute such as MACA to which reference would be made if New South Wales law was the appropriate law; authorities from that jurisdiction assessing damages at a lower (or presumably higher) level could also be referred to.

30.    It would also seem to me very unsatisfactory to contemplate that an English court

might view some aspects of MACA as procedural and some as substantive. MACA is clearly a package of measures directing the court of New South Wales to act in a certain way. When applied by the court in New South Wales each provision will have in one sense a "substantive" effect on the damages recoverable. It would not in my view be right for the English court to contemplate there being a different answer depending on whether it is the discount provision which is being considered, or the cap on damages for non-economic loss.

31.    For that reason I am also disinclined to take one provision and examine it and allow that to influence the overall view. For example, Mr Howard Palmer would prefer to start with the provision placing a cap on non-economic loss. He would then refer to *Cope v Doherty* 4 K & J 367, where, as I have said, at 384 Wood VC suggested that a statute which limited the damage for which a ship-owner was liable would be dealing "with the substance and not the form of the procedure". That case primarily held that the statute did not apply to foreigners and therefore had no application to the case and the remark was accordingly obiter. But that said, it supports the argument that a limit on damages should be held to be substantive, and that has the other support I have indicated.

32.    On the other hand, Mr Haddon Cave would start with the provision which suggests that the discount rate in respect of future economic loss is prescribed by s.127 of MACA at 5%. He would draw attention to the fact that such a provision seems inconsistent with the rate of 2.5%, provided for by the Damages (Personal Injury) Order 2001, made pursuant to s.1 of the Damages Act 1996, the subject of the Lord Chancellor's statement of July 27th 2001. Mr Haddon Cave would say a discount provision is clearly procedural.

33.    As I have said, these provisions of MACA constitute a package and the answer ought to be the same for all. Thus it is my view that the contest ought to lie between the common law being as suggested by the majority in *Stevens v Head* or in the form suggested by Mason CJ in his minority judgment.

34.    I took the view in *Roerig,* and after further consideration still adhere to the view, that the majority in *Stevens v Head* were expressing accurately the traditional position at common law as approved by the House of Lords in *Chaplin v Boys*. The powerful dissenting judgment of Mason CJ, particularly from pages 448 – 451, would seek to suggest otherwise. In some of it's reasoning however that judgment relies on cases in contract where the position, I accept, is different. Otherwise it relies on non-binding dicta, which in my view do not reflect the main body of opinion. I also suggest that reliance on Lord Wilberforce's view that provisions of the *lex loci dilecti* "denying, or limiting, or qualifying recovery of damages because of some relationship of the defendant to the plaintiff, or in respect of some interest of the plaintiff (such as loss of consortium) or some head of damage (such as pain and suffering) should be given effect to" is misplaced. By putting the words *denying, limiting or qualifying* in italics, Mason CJ seeks to suggest that Lord Wilberforce would have supported the view that a limitation on damages would be something for the substantive law. In my view, as the full quotation demonstrates, the dictum simply supports Lord Wilberforce's view that heads of damage would be for the substantive law, and the quotation simply does not support the concept of a cap placed by a local law in relation to the quantification of damage being substantive

35.    In *Roerig*, which was concerned with deductions of benefits, I said that that kind of issue is very much tied up with policy issues relevant to the local court. The same seems to me to be true of the provisions in MACA. MACA clearly reflects New South Wales policy and would be applied by that court whatever that court took as to the appropriate substantive law (see page 455 in *Stevens v Head)*. Although it is for the English court to characterise law, it is, it seems to me, relevant that it is clear from the terms of that local law that it will be applied by the local court whatever the substantive law may be. That points to that law being procedural in my view.

36.    I did not actually understand Mr Howard Palmer to be arguing that the majority view in *Stevens v Head* did not accurately reflect the traditional position at common law.  His submission was that that traditional view was expressed in the context of the application of the double actionability rule, but his argument was once the double actionability rule is abolished, then the common law should be free to develop so as to take the narrow view of procedure, supported by Mason CJ.

37.    Mr Howard Palmer's submission suffers, in my view, from the following weakness.  It was certainly true that while the double actionability rule was in place there was a view that, once that rule had established the English court's jurisdiction, then the English court could and should deal with everything by its own law.  Alternatively, the view was that even if liability might be a matter for the foreign law, damages would be a remedy given by the English court and thus a matter for the English court, even so far as heads of damage was concerned.  This latter view was the view of Lord Upjohn in the Court of Appeal in *Boys v Chaplin* [1968] 2 QB 1 at 26 onwards.  It is indeed of interest how the Court of Appeal decided *Boys v Chaplin* because that gives an understanding of the reasoning in the House of Lords.  Lord Denning would have decided the case in favour of applying English law to the assessment of damage by applying the "proper law of the tort" as applied in some States of the United States.  Lord Upjohn would have decided that the appropriate law was English law for the assessment of damages, on the basis I have just outlined.  It was the dissenting judgment of Lord Justice Diplock which suggested that the correct rule in relation to substance and procedure was that actionability included the "heads of damage" as distinct from the "quantification of damages" sustained under those heads.  (see 43).

38.    In the House of Lords, Lord Hodson accepted that heads of damage were substantive, but clearly did not contemplate that anything beyond that would be substantive and then seemed to take the view that the proper law of the tort of that issue should be applied, (see 380b).  Lord Guest was of the view that it was not right to apply the proper law of the tort, but he was of the view that pain and suffering was not a head of damage but merely an element in the quantification, and on that basis he would have applied the *lex fori* of England (see 382g-h).  Lord Donovan agreed with Lord Upjohn's approach.  Lord Pearson thought that it would not be right to call heads of damage procedural.  He thought they must be substantive, but was of the view that once England has jurisdiction it would simply apply its own law whether heads of damage were substantive or not.  Lord Wilberforce was of the view that, since pain and suffering was not recoverable under the proper law, it would not and should not in normal circumstances be recoverable (see 392b).  He thought it was appropriate to have some exception so that in certain circumstances that issue could be decided by English law (392c-f).  But his closing remarks are of interest in that he was of the view that, if necessary, he would classify pain and suffering as procedural.

39.    The important point to make is that on no view did any of their Lordships suggest that any aspect of the quantification of damage apart from the decision as to whether a head of damage was recoverable could be substantive.  There is no doubt that the common law had developed over the years.  Mr Haddon Cave referred us to two authorities, *Huber v Steiner* (1835) 2 Bing (NC) 202 and *Don v Lippmann* (1837) CL. and F. 1, seeking to support an argument that quantification of damage as a matter for the *lex fori* was of some antiquity.  As Mr Palmer and Mr Dougherty point out in their note, there is no discussion in these cases of quantification of damage in tort.  The cases merely exemplify the stage of the common law relevant to the period, showing that "remedies" were considered at that time for the *lex fori*.  As it seems to me, this all has very little to do with the double actionability rule or its influence.  Certainly, the view that remedies were for the English court was the view of Lord Upjohn, Lord Guest and Lord Donovan, but it was not the view of the majority in *Chaplin v Boys*.  The view of Diplock LJ in the Court of Appeal, supported as the general rule by the majority in *Chaplin v Boys* that "heads of damage" was substantive and "assessment" or "quantification of damage" is for the *lex fori* is not founded on the fact that there was a

double actionability rule, it simply reflected a development in the common law. For that reason in *Roerig* I took the view that the majority in *Stevens v Head* correctly reflected the view of the House of Lords in *Chaplin v Boys*, when I said at para 25:-

> "25. The passages in the speeches of the majority in *Boys v Chaplin* [1971] AC 356 relied on are at pp 378-379 (Lord Hodson), pp 381-382 (Lord Guest) and p393 (Lord Wilberforce): see 176 CLR 433,457, footnote 94. The passages referred to support the view that so far as damages are concerned it is a question for the substantive law whether a head of damage is recoverable, but quantification of the actual head is procedural. If one poses the question whether the issue in this case is about the right to recover loss of dependency the answer seems to me to be that it is about the quantification of damages. The concern of the court in considering a tortious claim should be as to liability, including liability for particular heads of damage without the existence of which liability might not be complete. The question whether deductions should be made for benefits is not a question which goes to liability: it is a question going to assessment.
> 26. It also seems to me that there is a good reason why, once it is established that a particular head of damage is recoverable by whatever is the appropriate law, the assessment of the appropriate figure for that head of damage should be for the forum, including in particular what deductions should be made according to the public policy of the forum. As *Dicey & Morris*, vol 1, para 7-004 says:
>> "The primary object of this rule" – i.e. that procedure should be governed by the lex fori-"is to obviate the inconvenience of conducting the trial of a case concerning foreign elements in a manner with which the court is unfamiliar."
> They add (I accept) that: "If, therefore, it is possible to apply a foreign rule . . . without causing any such inconvenience, those rules should not necessarily . . . be classified as procedural." In my view the question whether deductions of benefits should be made is likely to be bound up both with policy considerations and with the way in which damages under the particular head are to be assessed overall."

40. On this appeal (I accept) Mr Howard Palmer has argued a point that was not argued in *Roerig*, which is that, with the disappearance of the double actionability rule, the basis on which the traditional view was formed has fallen away. As I have indicated I do not accept that view. The rules of common law on assessing damages were not dependent upon the existence of a double actionability rule. It therefore does not seem to me that, when the 1995 Act abolished the double actionability rule, it at the same time intended to vary the common law so far as quantification and assessment of damages was concerned. S.14(3)(b) and its wording seems to me to confirm that position.

41. Accordingly, whether or not strictly we are bound by the judgments in *Roerig*, I adhere to the view there expressed. It is unnecessary accordingly to consider whether what I said on this issue in that case was strictly obiter or not.

42. I would accordingly dismiss the appeal on this aspect of the judge's judgment.

**Lady Justice Arden:**

43. I gratefully adopt the statement of facts in the judgment of Waller LJ. I refer to the law, which, under the general rule in section 11 of the Private International Law (Miscellaneous Provisions) Act 1995 ("the 1995 Act"), is the applicable law as the lex loci delicti. I use the expression "MACA" to refer to the provisions of the Motor Accidents Compensation Act 1999 relied on by the appellant in this action and summarised in paragraph 3 of the judgment of Waller LJ.

44. In my judgment, it is logical to decide the issue of proper law first because the resolution of the question whether the issues as to damages in this case are ones of substance or procedure involves an iterative process between the law governing the tort and the law of the forum (English law).

*Proper Law*

45. I agree with the judgment of Waller LJ on this. I would add that, while section 12 permits different laws to be applied to individual issues, it would not in my judgment be appropriate to conclude, in reliance on that provision, that damages should be governed by English law. In this case, damages are to be awarded for the injury caused by the respondent's negligence. That injury is an essential ingredient of the tort and cannot be separated out from the negligence, which occurred in Australia. It might be different if, for instance, there was a claim for wrongful interference of goods and there was an issue as to whether the defendant had authority from the claimant conferred by a written instrument governed by a law which was neither the law of the forum or the lex loci delicti.

46. I would also like to add one further reason to those given by Waller LJ why this court must be cautious in setting aside the evaluation of the trial judge. The question of the proper scope of the appellate function depends not only on the factors described by Lord Hoffmannn in *Biogen Inc v Medeva plc*, but also on considerations of legal policy. If an appeal could be more freely brought against a trial judge's evaluation of facts, there would be many more appeals. This would lead to additional costs, delay and uncertainty as to the effect of the trial judge's reasoning. Unless there is a good reason, a trial should generally lead to finality. Moreover, unless this court takes a cautious approach to a judge's evaluation of fact, the improvements brought about by the Civil Procedure Rules adopted in 1998 would be severely undermined. It is not in the public interest that the appellate process in this type of situation should be opened wider than that envisaged in the authorities cited by Waller LJ.

*Substance or procedure?*

47. The issue here is whether the restrictions on damages imposed by MACA are rules of substantive law or rules of procedure. If those restrictions are rules of substantive law, they will apply even in proceedings brought in this court because the proper law of the tort is that of New South Wales. If, however, the restrictions are rules of procedure, English law will apply as the law of the forum. As Waller LJ has explained, the distinction between matters of substance and procedure is preserved by section 14(3)(b) of the 1995 Act. By implication, the characterisation of a question as one of procedure is a matter for English law.

48. The first question is whether this court is bound by the holding in *Roerig v Valiant Trawlers Ltd* [2002] 1 WLR 2304 that matters concerning the quantification of damages are matters of procedure whereas matters relating to heads of damages are matters of substance. For convenience, I refer to this below as "the damages principle". In my judgment, this court is not bound by that part of the decision because the court had already decided that English law was the proper law of tort, and decided the substance/procedure issue only in case it was wrong on the proper law issue. Since English law was also the law of the forum, it made no difference to the decision of the court whether the applicable rule was one of substance or procedure. In so far as resolution of the substance/procedure issue formed an alternative ratio, that issue was decided not on the basis of the damages principle but on the basis that, irrespective of the substance/procedure question, the relevant issue was governed by section 4 of the Fatal Accidents Act 1976, which was a mandatory rule which an English court had to apply. On the other hand, clearly the decision, which is a very recent one, is entitled to

the highest respect.

49. The issue, therefore, is whether the damages principle represents the law and, accordingly, whether all matters relating to heads of damage are matters of substantive law whereas all matters as to the assessment of damages (including caps) are questions of procedure. There is the further issue as to what constitutes a head of damage or a matter relating to the assessment of damages for this purpose. All these questions are intertwined, and I start with an examination of the substance/procedure issue relative to damages. This question has been considered in a number of recent authorities in Australia, which are persuasive authority only. In *Stevens v Head* (1993) 176 CLR 433, the High Court of Australia (by a majority, Mason CJ and Deane and Gaudron JJ dissenting) took the view that the damages principle was good law in Australia and held that caps and floors on damages for non-economic loss were accordingly procedural. In *Roerig*, the court agreed with the view of the majority in *Stevens v Head*. In the subsequent decision in *Pfeiffer Pty Ltd v Rogerson* (2003) 203 CLR 503, the High Court adopted the view of the minority in *Stevens v Head*, i.e. they applied a very restrictive meaning of procedure, but this was in the context of a choice between the laws of different states of the Commonwealth of Australia. Under the constitution of Australia, full faith and credit had to be given to the laws of each state, and thus the extent of liability in tort should not depend on whether the victim was or was not resident in the state in which the tort occurred. The High Court accordingly held that caps on damages in that context were matters of substantive law. In a yet later case, *Regie National des Usines Renault SA v Zhang* (2002) ALR 1, the High Court left open the question which approach to matters of substance and procedure would be applied in the case of a foreign tort. Accordingly, that issue has not been settled in Australia. On the other hand, these cases contain useful (albeit for our purposes inconclusive) discussion of the problems on this aspect of this appeal.

50.    The holding in *Roerig* on the substance/procedure issue involves the proposition that there is a bright line to be drawn between matters of assessment and heads of damage. Waller LJ has set out in detail the relevant parts of the decision of the House of Lords in *Boys v Chaplin* [1971] AC 356. This case concerned the doctrine of double actionability. It was this doctrine which was abolished by section 10 of the 1995 Act. Certainly, the House of Lords in *Boys v Chaplin* proceeded on the basis that there was a distinction between "heads of damage" and the "assessment of damages", and that the former were matters of substance whereas the latter was procedural. However, the House did not have to, and did not, define those terms. The application of a cap is not a head of damage in the sense of legal category of damages. Nor does it involve in any real sense an "assessment" of damages, since no evaluation of damages is involved: the application of a cap is a mechanical exercise. Moreover, the statutory question posed by the 1995 Act is: are the provisions of MACA questions of procedure or substance? In my judgment, the answer to that question has to be found by examining the nature of those concepts, relative to damages, rather than simply through the prism of heads and measurement of damages.

51. In my judgment, the speeches of the members of the House of Lords in *Boys v Chaplin* show clearly that there is no bright line between questions of procedure and questions of substance in relation to damages. The majority decided that the question whether damages should be recoverable for pain and suffering was a question of substance. But the other two members of the House held that the matter was one of procedure. As I read the judgments, characterisation was, as the 1995 Act now in effect provides, effected under the law of the forum. Waller LJ examines the individual speeches in paragraph 38 of his judgment. I take the view that Lord Wilberforce considered that the question whether damages were recoverable for pain and suffering in that case was a question of substance, and not (as stated by Waller LJ) of procedure. Lord Wilberforce recognised that it was something of an "artifice" to treat the recoverability of damages for pain and suffering as a matter of "procedure" (page 393B). He took the view that the matter was one of substance because the policy of the

local rule in Malta did not extend to the circumstances of the case under consideration (page 392 A-F). His reasoning, therefore, was quite different from that of the other members of the majority, namely Lord Hodson and Lord Pearson. In their case, the conclusion that English law applied depended on damages for pain and suffering being a separate head of damage. To Lord Guest, a head of damage in the circumstances of *Boys v Chaplin* meant all the damages recoverable for the personal injury that had occurred. In these circumstances, I conclude that the damages principle is one of uncertain meaning and application.

52. How then is the distinction between substance and procedure to be ascertained in any particular case? In my judgment, the first step is to have regard to the context. The meaning of substance and procedure for the purposes of section 14 of the 1995 Act must be sought in the context of the 1995 Act and not, for instance, in those cases where the matter has arisen for other purposes, for instance, for determining whether the presumption against retrospectivity in legislation applies. In the context of section 14, a principled approach requires the court to start from the position that it has already decided that the proper law of the tort is not the law of the forum, i.e. that some other law applies to the tort, either because it is the lex loci delicti or because it is substantially more appropriate than the lex loci delicti. On this basis, a reference to the law of the forum must be the exception, and it must be justified by some imperative which, relative to the imperative of applying the proper law, has priority. It may, for instance, be appropriate to apply the law of the forum where the court cannot put itself into the shoes of the foreign court. This would arise where it has no power to award damages on a structured basis, even though such a power exists in the court of the jurisdiction which is the proper law. It would also arise where the court cannot put itself into the shoes of the foreign court of the lex loci delicti in the sense that it cannot do justice unless it applies its own law. As I see it, this is the reason for treating the assessment of damages as a matter for the law of the forum.

53. Another relevant factor informing my approach to the substance/procedure issue is that of logic. There is no authority in English law on the question whether a cap on damages imposed by a foreign proper law is a question of procedure or substance, other than *Cope v Doherty* (referred to by Waller LJ) (1858) 4 K & J 367, 383 to 384, 391 per Page Wood VC, obiter, and on appeal (1858) 2 De G & J 614, 626 per Turner LJ, obiter, (which dicta treat the question as one of substance), and *Caltex Singapore Pte Ltd v BP Shipping Ltd* [1996] 1 Lloyd's Law Rep. 286. In the latter case, it was common ground that a provision of Singapore law giving a ship-owner the right to limit his liability for damage resulting from a collision in Singapore was procedural. There was a similar (though higher) provision in England. Clarke J held that this was procedural, or at least not substantive. This case does not directly assist on this appeal as it concerned a limit contained in a very different statutory scheme derived from an international convention. However, Clarke J accepted that prima facie a statute imposing a limitation on a person's liability for damages was substantive, unless the particular statute required the provision to be regarded as procedural. On examination of the statutory scheme, and the way it had to operate in practice, Clarke J concluded that the limitation in question did not qualify the right of the claimants and could not be regarded as a matter of substantive law for the purposes of the conflicts of laws. The approach in the *Caltex* case would thus not necessitate the conclusion that the limits on damages in this case are procedural.

54. In my judgment, when the court seeks to ascertain whether a matter is one of substance or procedure, it has to ask whether the restrictions imposed by MACA are restrictions on the right to recover damages conferred by the foreign law. This test is in line with the second of the guiding principles identified by the majority in the *Pfeiffer* case at [99], which is set out in paragraph 90 of the judgment of Sir William Aldous. That guiding principle led the majority in the *Pfeiffer* case to conclude that "laws that bear on the existence, extent or enforceability of remedies, rights and obligations should be characterised as substantive and not as procedural laws" ([102]).

55.    Applying the test that I have identified at the start of the previous paragraph, it is, in my judgment, clear that the overall limit on the recovery of damages for pain and suffering imposed by MACA and the disregard of the first five days' loss of earning capacity and loss of earnings in excess of A$2,500 must necessarily be restrictions on the right to recover damages at all under the foreign law and thus be questions of substance.  The limit on recovery for gratuitous care in MACA, and the requirement to bring insurance recoveries into account, may not be in point, but, if they are, they seem to me to be restrictions of the same nature and to be matters of substantive law accordingly.  The more difficult question is the proper classification of the discount rate and provisions as to interest.  I note that in *Boys v Chaplin*, Lord Wilberforce considered that provision for future losses would be a matter for the law of the forum (page 393B).  However, Lord Wilberforce does not explicitly state how he has reached this conclusion and it may well be that he had in mind a situation where the foreign law gave no specific guidance as to how damages for loss of earnings in the future was to be calculated, and left the matter to the discretion of the judges, as in English law prior to the Damages Act 1996.  One can well understand the reluctance of a judge in one forum to try to place himself in the position of a judge in the lex loci delicti if the latter had a discretion to fix discount rates according to rates of return likely to be obtained on investments in practice in that other jurisdiction over the period for which the award of damages was being made.  (This might well be all the more so if that court was not a common law court.)  In such a case, therefore, it may well, exceptionally, be more conducive to the ends of justice to apply the more familiar rules as to discount rates used in the law of the forum.  Given the precision of the directions in MACA, however, I am content to reach the conclusion that the discount rate in MACA must also be a limitation on the substantive right to recover damages under the proper law.  The methodology in Australia would be familiar to any judge in England and Wales.  No element of discretion for the trial judge in England is involved.  By the same reasoning, with necessary modifications, I conclude that the interest rate imposed by MACA on damages for non-economic loss must likewise be treated as matters of substantive law.  (This court left open the question whether the power to award interest on damages was procedural or substantive in *Kuwait Oil Tanker Co SA v Bader*, 30 May 2000.)  In so far as MACA makes provision as to when interest is payable and for the periods and rates at which it is payable, it seems to me that the English court should give effect to these provisions as part of the respondent's rights under New South Wales law.  Neither justice nor convenience nor necessity justify the law of the forum applying its own rules to these matters.

56.    I note in passing that it is generally accepted that questions as to the remoteness of damage are questions for the proper law of the tort (see, for example, *Dicey & Morris, The Conflict of Laws* (2000) (13ed) para. 35 – 055 set out in paragraph 88 of the judgment of Sir William Aldous).  Rules as to remoteness are restrictions imposed on the damages which a claimant may recover.  The statutory caps imposed by MACA seem to me to be closer in character to rules of remoteness than to rules as to the assessment of damages.  This reasoning supports the conclusion that I have reached as to the characterisation of MACA as questions of substance.

57.    The particular restrictions in MACA are quite different from such matters as whether damages can be paid by instalments, and whether subsequent damages for the same injury can be claimed in a fresh action, and the question of converting the domestic unit of account into foreign currency.  While these matters do not arise in this case, it seems to me (provisionally) that those matters are likely to be matters of procedure.  Likewise, the question whether a matter has to be dealt with by a judge alone or by a judge with a jury must be a matter of procedure.

58.    Part of the problem in English law may be that all questions as to the measure of damages, causation and remoteness of damage were originally matters for the jury (see generally *A Historical Introduction to the Law of Obligations* by Professor David Ibbetson (Oxford) (1999)).  In addition, there would have been difficulties in leading

expert evidence at trial. These factors would have made it difficult for questions, for instance, as to the measure of damages to be determined according to foreign law. These factors may also help explain why, counter-intuitively to modern eyes, the damages principle came to be accepted without elaboration or explanation. Damages are not naturally regarded as procedure. In the field of damages, the substance/procedure issue really refers to a legal policy issue, such as those of justice, convenience and necessity. Questions as to the form of the remedy, which it is well-established are governed by the law of the forum, are more obviously questions of procedure.

59.    Be the historical explanation as it may, with the exception of *Cope v Doherty* and the *Caltex* case referred to above, and the dicta of Lord Wilberforce in *Boys v Chaplin,* the substance/procedure distinction has never been the subject of analysis in the context of caps or other restrictions of the type to be found in MACA. Thus it falls to this court to perform that analysis in order to identify the true basis and extent of the principle, and to apply it in the modern context where judges no longer sit with juries to determine awards of damages. A more detailed analysis of the damages principle was unnecessary in *Boys v Chaplin* because the item of damages in question in that case, namely damages for pain and suffering, was recoverable only under English law. If recoverability was a question of substantive law, English law applied under the rule as to double actionability. If it was a question of procedure, again English law applied as the law of the forum. Accordingly, once it was decided that double actionability applied, it was unnecessary to pursue a detailed analysis of the substance/procedure issue. There was no question of the English court having to apply the foreign law as that law did not recognise any claim for damages for pain and suffering.

60.    In my judgment, when, in the context of conflicts of laws, the court says that a particular issue is one of procedure rather than substance (and under section 14 it is a question for the court), the court is really saying that it cannot, for whatever reason, apply the relevant foreign law to that issue.

61.    In my judgment, the drafting of section 14 is of importance. It supports my approach. The section itemises evidence, pleadings, practice and procedure in that order. Evidence, pleadings and practice are self-explanatory. Procedure is at the end of the list. The context of section 14 suggests that the approach of Mason CJ in the *Pfeiffer* case that procedure covers matters as to the mode and conduct of trial is the basic approach of section 14. It is, however, in my judgment, unnecessary to decide on the comprehensive meaning of "procedure" in this case. In my judgment, the meaning of procedure in this context must be elucidated on a case by case basis.

*An analogy*

62.    The law of damages is not the only area of conflicts of law where it may be impossible to draw bright lines between substance and procedure. In derivative actions, brought by minority shareholders on behalf of their companies, for instance, it has been held that the entitlement to bring a derivative action in the English courts is governed by the law of the place of incorporation of the company in question (*Konamameni v Rolls Royce Industrial Power (India) Ltd* [2002] 1 All ER 979). However, there may be matters in respect of such actions, for instance, compliance with CPR 19.9 which are matters of procedure and are thus governed by English law (see *Base Metals Trading Ltd v Shamurin* [2004] EWCA Civ 1316 at [68]; [2004] 4 All ER 1). (An interesting question may arise whether, in the event of a breach of duty by a director of a foreign company, which is governed by the law of the place of incorporation, damages would in a derivative action brought in England be curtailed by principles of English law as to reflective loss.) The example of derivative actions demonstrates the proposition, already demonstrated by *Boys v Chaplin*, that, in relation to the substance/procedure distinction, much turns on the context. In my judgment, a more nuanced approach is required than simply a rule that, for instance, questions as to heads of damages, or a rule that questions

as to the right to bring a derivative action, are matters of substance.

*Judgment of Waller LJ*

63.    I now turn to particular points dealt with in the judgment of Waller LJ.

64.    Like Waller LJ I do not accept the argument of Mr Howard Palmer QC, for the appellant, that the decision as to what is procedural must now be viewed differently in the light of the abolition of the double actionability rule from the way in which it was seen in *Boys v Chaplin*. My rejection of this argument, however, does not mean that I reject the appellant's case.

65.    As to the argument of Waller LJ in paragraph 29 above, I do not consider that it would follow from a decision that the relevant provisions of MACA are matters of substance that other aspects of damages would necessarily be subject to New South Wales law. In this judgment, I am dealing only with the specified restrictions in MACA.

66.    In paragraph 30 of his judgment, Waller LJ holds that it would be unsatisfactory to contemplate that an English court might view some aspects of MACA as procedural and some as substantive. For my own part, I do not see this as a question of difficulty. There may well be rules in MACA which do not go to determine the right of the claimant under the law of New South Wales. However, I consider that there is a guiding principle to be applied here. I have already indicated the nature of that principle above. Once the court has decided that the law of New South Wales is the proper law of the tort, it is logical, so far as possible, to apply the law of New South Wales throughout. However, there may be reasons why the law of New South Wales cannot be applied, for instance, because the issue is a matter of procedure in the sense of mode of conducting the case, and so English law must be applied. I do not see any reason why there has to be the same answer to every aspect of New South Wales law.

67.    As to paragraph 34 of the judgment of Waller LJ, I, for my part, do not consider that reliance on the passage cited from the speech of Lord Wilberforce is misplaced. Lord Wilberforce in effect equated a head of damage with a restriction on the recovery of damages. Accordingly, in my judgment, the interpretation placed on this passage by Mason CJ in *Stevens v Head* was correct. It also follows, in my judgment, that the view expressed by the Law Commissions in paragraph 3.39 of their report, *Private International Law: Choice of Law in Tort and Delict* (1990) (Law Com. No.193; Scots Law Com. No.129), was correct. I need not set that passage out as it appears in [105] of the judgment of Sir William Aldous.

68.    Waller LJ is concerned that the particular rules in MACA constitute mandatory rules which the courts of New South Wales are bound to apply irrespective of the proper law. Even if that is so, it cannot affect the question whether English law should apply. The only question for resolution under section 14 of the 1995 Act is whether the particular provisions of MACA constitute substance or procedure for the purposes of English law.

69.    In my judgment, the conclusion which I have reached, which is also the conclusion of Sir William Aldous, will discourage forum shopping. The view expressed by Waller LJ, on the other hand, is likely to encourage forum shopping.

*Disposition*

70.    For the above reasons, in my judgment, the judge was wrong to apply English law in preference to the restrictions in MACA. Accordingly, the appeal must be allowed. My judgment is, however, limited to the application of MACA (as I have defined it above). There may be other matters arising with respect to the assessment of the damages in this case which must be dealt with in accordance with English law.

*Postscript*

71.   Sir William Aldous has expressed sympathy for the respondent. I concur. Naturally, I too am very sorry on a personal level that this tragic accident occurred. But it may be that some of the restrictions in MACA apply not to a claimant with severe injuries, like Mr Harding, but to claimants with less serious, and more short-lived injuries. Moreover, this is an unusual case in that the appellant, an Australian national, was personally served with these proceedings within the jurisdiction.

## Sir William Aldous :

72.   On 3 February 2002 Miss Tania Wealands, an Australian, was driving her Suzuki vehicle along a dirt road in New South Wales, Australia. Beside her was her settled boyfriend, Mr Giles Harding. Miss Wealands lost control of the vehicle which rolled over. Unfortunately Mr Harding suffered devastating spinal injuries and is now a tetraplegic.

73.   In September 2002 Mr Harding started in England proceedings for damages in negligence. Liability was at first disputed, but has now been admitted and it is agreed that Mr Harding is entitled to substantial damages under the law. The issue that came before Elias J and before this Court is – which law? Is it the law of New South Wales or England? The answer is of real importance to Mr Harding who will need care and support for the rest of his life as under the law of New South Wales his recovery will be substantially less than under English law.

74.   Upon reading the papers, I was struck by the plight of Mr Harding. This was brought home to me when I saw him in Court in his wheelchair. Any judge would wish to award full compensation, but the issues before us are issues of law and any decision could have lasting consequences in a society where the compensation culture has become or is becoming endemic and there is a tendency for forum shopping.

75.   The Private International Law (Miscellaneous Provisions) Act 1995 (the 1995 Act) governs the two issues that need to be determined when deciding which law is applicable. S.11 of that Act provides that the general rule to be applied is that the law is to be the law of the country in which the event constituting the tort occurred. Therefore the parties agree that, under the general rule, New South Wales law should be applied. However, s.12 allows the general rule to be overridden if, in all the circumstances, it appears on a comparison of the significance of factors that it is substantially more appropriate for the law of another country to be applied.

76.   Both before the judge and this court, counsel for Mr Harding submitted that the general rule should be overridden. The judge accepted that submission. Thus the first issue before this Court was whether the judge was right. For the reasons given in the judgment of Waller LJ, I have come to the conclusion that the general rule in s.11 should not be overridden pursuant to the jurisdiction provided by s.12. It follows that the second issue needs to be decided.

77. The second issue turns upon the true construction of s.14 of the 1995 Act and the effect of the law of New South Wales as contained in the Motor Accidents Compensation Act 1999 (the 1999 Act).

78.   S.14 of the 1995 Act provides:

> "14.    Transitional provision and savings
> (1)    …
> (2)    Nothing in this Part affects any rules of law (including rules of private international law) except those abolished by s.10 above.
> (3)    Without prejudice to the generality of subsection 2 above, nothing in

this part –

(a)    authorises the application of the law of a country outside the forum as the applicable law for determining issues arising in any claim in so far as to do so –

(i)    Would conflict with principles of public policy; or

(ii)    would give effect to such a penal, revenue or other public law as would not otherwise have been enforceable under the law of the forum; or

(b)    affects any rules of evidence pleading or practice or authorises questions of procedure in any proceedings to be determined otherwise than in accordance with the law of the forum.

(4)    This part has effect without prejudice to the operation of any rule of law which either has effect not withstanding the rules of private international law applicable in the particular circumstances or modifies the rules of private international law that would otherwise be so applicable."

79.    S.10 (a) abolished the double actionability rule which was applied in such cases as *Phillips v Eyre* (1870) LR 6 QB 1 and s.10 (b) the rule outlined in *Boys v Chaplin* [1971] AC 356.

80.    The Judge held that "all aspects of assessment of damages are procedural" and that the restrictions imposed by the 1999 Act were part of that assessment.   They were therefore procedural.   He went on to conclude that even if he had been wrong on the s.12 issue, English law applied to the assessment of Mr Harding's damages.   Thus restrictions imposed by the 1999 Act did not apply.

81.    With reluctance, I am unable to agree with the conclusion reached by the judge and Waller LJ.  Waller LJ has set out in full the submissions of the parties. I will therefore  concentrate on the reasons as to why I would allow the appeal and declare that the restrictions on damages in the 1999 Act must be applied when the English court makes an award of damages.

82.    We are not concerned with whether the damages that Mr Harding will recover could be affected by any English rule of pleading or practice.   The submission was that even if the English court was applying New South Wales law, the assessment of the amount was a procedural matter and therefore to be determined according to English law. Thus the restrictions on damages in the 1999 Act would be irrelevant.

83.    The Judge in a passage, not criticised by either party, described the seven restrictions on damages imposed by the 1999 Act in this way:

"7.       Seven such restrictions all deriving from the Motor Accidents Compensation Act 1999 have been identified in this case and each of them was pleaded in the defence.   Essentially they are as follows:

(1)       The maximum amount that may be awarded to the claimant for non-economic loss is presently Australian $309,000 (s.134).

(2)       In assessing loss of earnings, the court must disregard the amount by which the claimant's net weekly earnings exceed Australian $2,500 (s.125).   This amount is indexed to C s.146.

(3)       There is no award for the first 5 day's loss of earning capacity (s.124).

(4)       No award may be made in respect of gratuitous care if such care does not exceed six hours a week and is for less than six months (s.128). Insofar as the gratuitous care exceeds this amount, the amount that can be recovered is limited to certain sums identified in s.128:

(5)       The discount rate in respect of future economic loss is prescribed at 5% or as stipulated in regulations (s.127).'

No regulations have as yet been enacted:

(6)       No interest is payable on damages for gratuitous care on uneconomic loss (s.137).'

That provision also specifies that interest in respect of other heads of damage is only payable insofar as conditions set in s.137 are certified.

These conditions impose certain procedural steps which the parties are
required to state.
(7)        The claimant must give credit to any payments made to or on
behalf of the claimant by amongst others an insurer in relation to the claim
made by the claimant (s.130)"

84.    The judge went on:

> 8.  The first two of these limitations can be considered as imposing different
> forms of a cap on damages.    The third and fourth exclude damages
> altogether for a particular identified loss.    The other three are separate and
> independent rules of a different nature.    S.5 of the Act sets out the objects
> of the legislation.    One of them is to 'keep premiums affordable'.
> 9.  Two of these provisions in particular will adversely affect the claimant,
> namely the limitation on damages for uneconomic loss, essentially
> equivalent to the damages for pain and suffering and the discount rate fixed
> at 5%.    That is double the current rate applicable in England.'"

85.    Despite the submissions of counsel, I believe it right to take the seven pleaded
restrictions as a package. I can see no good reason for splitting them up so that one or
more might be categorised as substantive and the others as procedural.

86.    In my view the restrictions in the 1999 Act are substantive law. The word
"procedure" in the 1995 Act should be given its natural meaning namely, the mode or
rules used to govern and regulate the conduct of the court's proceedings. To do so, gives
effect to the views expressed in Dicey & Morris and the Law Commissions' Report. It is
also supported by persuasive authority. Further there is no authority which binds this
court to conclude that the restrictions are procedural. It also avoids forum shopping, an
aim of the 1995 Act. That being so, I can see no reason why the restrictions cannot be
applied by an English court adopting its normal procedure.

87.    I start with Dicey & Morris on The Conflict of Laws. Rule 13 states "All matters
of procedure are governed by the domestic law of the country to which the court
wherein any legal proceedings are taken belongs (*lex fori*).    Paragraph 7 –003 of Dicey
& Morris states:

> "While procedure is governed by the *lex fori, matters of substance are
> governed by the law to which the court is directed by its choice of law rule
> (lex causae).    Dicey wrote that English lawyers gave 'the widest possible
> extension to the meaning the term 'procedure'.    As a matter of history, this
> is true; and a court may, even today, be tempted to extend the meaning of
> 'procedure' in order to evade an unsatisfactory choice of law rule.    But in
> general   the attitude expressed by Dicey has fallen into disfavour for
> precisely because it tends to frustrate the purposes of choice of law rule.
> Thus some questions which were at one time thought of wholly in terms of
> procedure are now considered to be procedural in some of their aspects
> only.    The development of law as to damages illustrates this process.*
> The difficulty in applying this rule lies in discriminating between rules of
> procedure and rules of substance.    The distinction is by no means clear cut.
> …"

88.    Dicey & Morris states in Chapter 13, the chapter which relates to torts:

> "35-053 The quantification assessment of damages were, at common law, a
> matter for *lex fori and will continue to be so in cases falling within part 3 of
> the 1995 Act.    Thus even when according to a foreign law applicable under
> the Act damages for personal injuries can be re-assessed in the light of
> changed circumstances the English law will assess them 'once and for*

*all'.   The English court will, whatever the foreign applicable law may say.
assess general damages in accordance with its own domestic law.   It has
also been said that whether social security benefits are deductible from an
award of general damages is a rule for the quantification of damages and
not a rule dealing with a head of damage.   The question will, accordingly
be referred to English law.*

35-054  Difficulties may arise, however, in a situation where the applicable
law provides a head of damages which is unknown to the law of the forum
or provides a cause of action, creating a liability in damages, which is
unknown to English law.   For then there may be no appropriate rules of
quantification available in the forum's law.   According to the Law
Commissions the question was expected to 'arise infrequently and to
attempt to solve the problem in advance may be less satisfactory than in
leaving the court to resolve the question on the particular facts of the
dispute before it.'   One possible solution would be to model the English
assessment on that which obtains in the foreign applicable law, though, in
effect, this would be to permit the applicable law to determine the question
of quantification and, may, in any event be a method which is not always
possible in particular cases.

35-055.  On the other hand, questions such as whether loss of earning
capacity or pain and suffering or (in fatal accident claims) solatium or loss
of society are admissible heads of damage, all questions of remoteness of
damage ,the existence and extent of the claimant's duty to mitigate damage,
whether exemplary damages are recoverable, the existence and extent of
financial ceilings on recoverable damage, and whether recovery can be had
for any head of damage unknown to English law are questions of
substantive law.   As such, these questions will be governed by the law
applicable to the tort determined in accordance with the rule 202 or rule
203."

89.    The authority relied on for the conclusion that the existence and extent of
financial ceilings on recoverable damages is a question of substantive law is *Stevens v
Head* [1993] 176 CLR 433.   The 4th cumulative supplement (March 1, 2004) adds as a
reference *John Pfeiffer Pty Limited v Rogerson* [2000] 203 CLR 503.

90.    In *Pfeiffer*, the respondent Mr Rogerson suffered an accident in New South Wales
while working for Pfeiffer which was a company which had its principal place of
business in the Australian Capital Territory.   The issue was whether damages should be
assessed under New South Wales law or the law of the Capital Territory.   The relevant
Act of New South Wales, the Workers Compensation Act 1987, contained restrictions
on recovery similar to but not the same as those contained in the 1999 Act.   Gleeson CJ,
Gaudron, McHugh, Gummow and Hayne JJ considered at length the difference between
substance and procedure.    At 543 they said:

"99.    Two guiding principles should be seen as lying behind the need to
distinguish between substantive and procedural issues.   First, litigants who
resort to a court to obtain relief must take the court as they find it.    A
plaintiff cannot ask that a tribunal which does not exist in the forum, (but
does in the place where a wrong was committed) should be established to
deal, in the forum, with the claim that the plaintiff makes.   Similarly, the
plaintiff cannot ask that the courts of the forum adopt procedures or give
remedies of a kind which their constituting statutes do not contemplate any
more than the plaintiff can ask that the court apply any adjectival law other
than the laws of the forum.   Secondly, matters that affect the existence,
extent or enforceability of the rights or duties of the parties to an action are
matters that, on their face, appear to be concerned with issues of substance,
not with issues of procedure.   Or to adopt the formulation put forward by

> Mason CJ in *McKain*, 'rules which are directed to governing or regulating the mode or conduct of court proceedings are procedural and all other provisions or rules are to be classified as substantive.
> 100.    These principles may require further elucidation in subsequent decisions but it should be noted that giving effect to them has significant consequences for the kind of case in which the distinction between substance and procedure has previously been applied.    First, the application of any limitation period, whether barring the remedy or extinguishing the right, would be taken to be a question of substance not procedure (which is the result arrived at by the statutes previously referred to).    The application of any limitation period would, therefore, continue to be governed (as that legislation requires) by the *lex loci delicti*.    Secondly, all questions about kinds of damage, or amount of damages that may be recovered, would likewise be treated as substantive issues governed by the *lex loci delicti*."

They went on to hold that the restrictions on damages in the Workers Compensation Act 1987 were part of the substantive law.

91.    In *Pfeiffer* Kirby J said that the common law rules had for too long been under the ghost of *Phillips v Eyre*.    He cited with approval the Canadian Supreme Court in *Tolofson v Jensen*[1994] 3 CR 1022.    He said:

> "133.    The Canadian Supreme Court did not consider it necessary to await legislation to do away with this distinction in cases of such a kind.    It is explained that 'the purpose of substantive/procedural classification is to determine which rules will make the machinery of the forum court run smoothly as distinguished from those determinative of the rights of both parties.'    This court should adopt a similar principle whilst recognising that there is no bright line between 'substance' and 'procedure'.    Doing so, will, in turn, contribute to reducing the capacity of the parties to affect adversely the rights of others merely by electing to bring a claim in the courts of one law area of the nation rather than another."

92.    He went on at page 564 to say:

> "164.    In the present case, the foregoing meant the application of the common law of Australia as applicable in New South Wales, as modified in turn by any relevant statutory law of that state.    The statutory modification applicable is that governing the recovery of damages in such claims.    This was not a procedural law which could be ignored by the court of the forum because it was bound only by its own procedural rules.    It was classified as a matter of substantive law.    It was therefore to be applied by the court of the forum, that is, the Supreme Court.    Once applied, it limited the recovery which the respondent might make in his proceedings in the Supreme Court.    The limitation in question was the same whether the respondent brought those proceedings in a court in New South Wales, in the Australian Capital Territory or in any other court of Australia having jurisdiction in the case."

93.    The judgments in *Pfeiffer* are important both  for their reasoning and the conclusion that the restrictions on damages  were part of the substantive law of Australia; not procedural.    It is important to note that the similarity between the restrictions considered in *Pfeiffer*  and those contained in the 1999 Act are such that there can be no doubt that the restrictions in the 1999 Act do, following *Pfeiffer*,  form part of the substantive law of New South Wales and are not procedural.

94.    I realise that in *Pfeiffer* the court did not decide whether the New South Wales restrictions would be considered substantive in an international context. However the court's reasoning would indicate that they would have and it would be illogical to come

to a different conclusion.

95.    In my view the approach of the High Court of Australia in *Pfeiffer* to the ambit of the word 'procedure' is consistent with the purpose of differentiating between substance and procedure.    An English court would apply its procedure when determining a case according to New South Wales law, but that does not mean that it should disregard the substantive law of New South Wales contained in the 1999 Act, unless to do so would require it to depart from its rules which regulate the mode and conduct of its proceedings. No such departure would be required in this case.

96.    The Judge considered that he was bound by the judgment of this Court in *Roerig v Valiant Trawlers Limited* [2002] EWCA Civ 21, [2002] 1 WLR 2304.  He said this:

> "62.    In any event, in my judgment, whatever the merits of the defendant's arguments on this point, I am bound by the decision of the court of appeal. The rationale of the decision is that all aspects of assessment are procedural and that seems to reflect the traditional view.    More specifically, by adopting the reasoning of the majority in *Stevens v Head* in preference to the observations of the editors of Dicey against Morris who supported the contrary view, the court was plainly accepting the view that a rule imposing a ceiling on damages is procedural.    Moreover, since in Roerig the court held that the question of deduction of benefits received elsewhere was procedural, it would be directly contrary to the ruling in that case to say that effect should be given to the New South Wales rule that credit should be given for insurance benefits."

97.    I will come to the judgments in *Roerig*, but turn first to consider *Stevens v Head* which was relied on by Waller LJ in the *Roerig* case.  It was a case dealing with New South Wales legislation substantially similar to the 1999 Act.    It was decided by a four to three majority.    As was pointed out by Callaman J in *Pfeiffer* at p569:

> "181.    Although *McCain* and *Stevens* are recent cases, they have not proved to be of simple and easy application.    They were decided by very narrow majorities.    Furthermore, there are aspects of the reasoning of the majority in both cases that cannot be satisfactorily reconciled with quite a deal of the reasoning in *Breavington* in which there were six different judgments delivered.
>
> 182.    The correctness of *McCain* and *Stevens* has been subject to strong and persuasive criticism by a number of authors; Nygh, Morris, Pryles, Juenger, Hancock, Carter, and the Australian Law Reform Commission. The principle for which the cases stand has been replaced and amended by legislation in the United Kingdom.    There had been earlier attempts to ameliorate its consequence from the House of Lords and the Privy Council and it has been overturned judicially in Canada.    It does not represent the universal law of the United States.
>
> 183.    The various matters to which I have referred provide compelling reasons why *McCain* and *Stevens* should be reconsidered.
>
> 184.    The continued application of *McCain* and *Stevens* stand, as pointed out by Dean J in *Stevens*, as an open invitation to litigants to forum shop with consequences which could have a significant impact upon the economic, social and other policies of States which have legislated in respect of them differently from other States.    This in turn could lead to diversity of judicial approach.    It is undesirable that the courts might be placed in the position which could lead to a perception, however unwarranted, that they are in competition with another, or may be seeking to attract litigants from other courts.    The present case is a clear example of forum shopping."

98.    In my view the dissenting judgment of Mason CJ in *Stevens* is consistent with the judgments of *Pfeiffer* and to be preferred to the judgment of the majority.    At p.445 he said:

"It is an accepted principle of private international law that matters of substantive law are to be determined by the law of the cause and matters of procedural or adjectival law by the law of the forum.  If the relevant provisions of part 6 are classified as substantive, they will be applicable as part of the *lex loci*, according to the second condition of the choice of law rule.  If, however, they are classified as procedural, they will not be applicable to the facts of this case, as all issues of procedure will be determined by the law of Queensland.

As I observed in *Mckain*, *the simplicity of the proposition that matters of substance should be determined according to the law of the cause and matters of procedure according to the law of the forum belies the difficulty of identifying just what is procedural and what is substantive.  In that case, I stated my reasons for rejecting the traditional equation drawn between matters relating to a remedy and matters of procedure and proposed a new criterion for the substance-procedure distinction which has its genesis in the principle reason for drawing the distinction at all.  That criterion characterised as procedural 'those rules which are directed to governing or regulating the mode or conduct of the court proceedings'.  All other provisions or rules are to be classified as substantive."*

99.    Although *Pfeiffer* was decided in 2000 it was not cited to the Court of Appeal in *Roerig*.   In that case a Dutch woman brought an action on behalf of herself and her children as dependents of a Dutchman who was killed while working in an English registered trawler owned by the defendants.

100.    The Court of Appeal upheld the judge's decision, but the general rule that English law applied was not dislodged on the facts of that case.   However Waller LJ, giving a judgment with which Sedley and Simon Brown LJJ agreed, concluded that when the damages were to be assessed under English law certain benefits payable under Dutch law were  not to be deducted.

101.    I do not believe that the judge was bound by the judgments in *Roerig* to conclude that the restrictions imposed by the 1999 Act were procedural.  In *Roerig* the court had decided that the applicable law was English law and it did not matter whether the question concerning benefits under Dutch law was procedural or substantive.   In any case there appears to be a real difference  between assessing loss taking into account or refusing to take into account benefits and arriving at an amount of damages in the light of restrictions imposed by the 1999 Act.   The latter is by Australian law substantive whereas the former might be considered to be procedural according the English or even Dutch law.

102.    Waller LJ said in paragraph 24 of his judgment in *Roerig* that he found the judgment of the majority in *Stevens* compelling.   In the light of the judgments in *Pfeiffer*, I cannot agree. In any case I believe that the judgments of the majority in *Stevens* were also concerned with the impact of the double actionability rule.   They said at page 460:

"Double actionability (in the sense explained in *Mckain*) operates *satisfactorily in respect of causes of action; with respect to the quantification of damages, no law other than lex fori can work effectively.*"

103.    The first part of the sentence quoted above may well be right, but the second conflicts with *Pfeiffer*. In England the double actionability rule was swept away by s.10 of the 1995 Act and therefore care must be taken before adopting the reasoning in *Stevens v Head* . Even though section 14 (2) of the 1995 Act preserved the previous rules of common law there is , in my view , no reason to put a strained construction upon the word " procedure" in the 1995 Act. The court should seek the intention of Parliament.

104.    The1995 Act was passed after publication of the Law Commissions' paper Private International Law: Choice of Law in Tort and Delict. It said in paragraph 3.38 and 3.39:

"3.38    The consultation paper provisionally recommended that there should be no change in the present law on the question of damages, which we confirm.    Accordingly, the applicable law in tort of delict determines the question of the availability of particular heads of damages whereas the measure or quantification of damages under those heads is governed by the *lex fori*.    Furthermore, we do not think that express guidance need be given in any implementing legislation on how damages should be quantified in a case where a court in the United Kingdom is faced with assessing the quantum of damages under a head of damage unknown to our laws.    We expect the question to arise infrequently and to attempt to solve the problem in advance may be less satisfactory than leaving the court to resolve the question on the particular facts of the dispute before it.
Limitations on Recovery
3.39    We agree with the view taken by all consultants who commented on this matter, that a statutory ceiling on damages is a substantive issue for the applicable law in tort or delict rather than a procedural issue for the *lex fori*.    We do not think there is a need for this matter to be included in implementing legislation, since it is connected with the question of damages generally, on which we are making no proposals for a change in the law."

105.    It was submitted that there was an inconsistency between those two paragraphs.    I disagree.    Most if not all questions relating to damages are in one sense quantification in that the court is seeking to quantify the injured party's loss.    But the Law Commissions drew a distinction between a statutory ceiling affecting quantum and the procedural steps taken to arrive at the appropriate figure.    The Commissions' view expressed in 1990, is consistent with that of the High Court of Australia in *Pfeiffer*. The restrictions on damages imposed by New South Wales statutes are according to Australian law substantive not procedural.    In my view the same conclusion should be reached under English law.    To conclude otherwise would be to stretch the word "procedure" to cover issues not truly procedural and would also encourage forum shopping which the 1995 Act sought to prevent.

106.    In this Court a considerable amount of effort was spent in analysing the speeches in *Boys v Chaplin*.    That was a case decided before the double actionability rule was abolished.    The result would I believe have been the same under the present law, but there would have been no need to apply what Lord Wilberforce at pages 392 and 393 recognised was an artificial distinction between procedure and substance.    As Waller LJ pointed out in *Roerig* (see paragraph 25 on page 2315) there are passages in the speeches in *Boys v Chaplin* to support the view that, as far as damages are concerned, it is a question of substantive law whether a head of damages was recoverable, but quantification of the actual head is procedural.    But that does not answer the crucial question in this case namely whether the restrictions upon the amount of damages are procedural.    No doubt such restrictions affect the amount of damages and are therefore part of the quantification, but they are not part of the rules governing or regulating the mode of conduct of the Court when assessing the damages.    The reasoning in *Boys v Chaplin* does not in my view require me to accept the submissions made on behalf of Mr Harding.

107.    In my view the English court should adopt its rules used to govern and regulate the mode and conduct of the proceedings, but should, when applying New South Wales law, give effect to the restrictions in the 1999 Act. I would grant a declaration to that effect and allow the appeal.

ORDER:

1. The Appeal is allowed and the Order of Elias J. dated 27th May 2004 is set aside
2. On the preliminary issues ordered to be tried by the Order of Master Foster dated 31st October 2003, there be declarations that, in relation to this claim;

(a) The law applicable to all substantive issues is the law of New South Wales

(b) The legal provision referred to in paragraphs 5(b) to (h) of the Defence are provisions of substantive law and shall be applied to issues of quantum in accordance with the law of New South Wales.

3. The Respondent to repay to the Appellant the sum of £24,000, being the total of sums paid on account of costs as ordered by Elias J., together with interest at 8% p.a (to be calculated on £12,500 from 8th June 2004 and on £11,500 from 20th September 2004) to date of repayment.

4. The Respondent do pay the Appellant the costs of the preliminary issue here and below, to be the subject of detailed assessment (if not agreed) at the conclusion of the trial of the action (or earlier settlement).

5. The Respondent do pay to the Appellant the sum of £43,500 on account of costs here and below.

6. Leave to appeal to the House of Lords granted.

(Order does not form part of approved Judgment)