# EXHIBIT F

**Westlaw.**

Not Reported in F.Supp.2d
1999 WL 757022 (E.D.La.)
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
Dayle WALKER and Raymond Bagwell, Jr.
v.
YELLOW FREIGHT SYSTEMS, INC., ABC Insurance and XYZ
**No. Civ.A. 98-3565.**

Sept. 24, 1999.

*ORDER AND REASONS*

CLEMENT, J.

*1 Before the Court are two motions *in limine* brought by Defendant Yellow Freight Systems, Inc. ("Yellow Freight"). First is Yellow Freight's Motion to Exclude Expert Testimony and Exhibits pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and this Court's Pretrial Order. Second is Yellow Freight's Motion to Exclude Report and Prohibit Testimony of Mr. Robert Johnson. For the foregoing reasons, Yellow Freight's Motions are DENIED. The Court does, however, find that sanctions against Plaintiffs for violation of the Scheduling Order are appropriate.

A. *BACKGROUND*

On January 5, 1998, Raymond O. Bagwell, III, allegedly suffered fatal injuries while working in the course and scope of his employment for Roadcall Repair Service on Yellow Freight's premises. The decedent's parents, Dayle Walker and Raymond Bagwell, Jr., subsequently filed an action in Louisiana state court, which Yellow Freight removed, alleging damages from extreme grief, mental anguish and distress, as well as irreparable loss and the deprivation of companionship, love and affection and contribution toward Ms. Walker's support. Plaintiffs' theorize that their son suffered his fatal injuries when a tractor trailer, allegedly owned and operated by Yellow Freight, backed into the truck on which decedent was working and crushed him. He was then brought to Charity Hospital in New Orleans where he died. Yellow Freight denies liability.

On January 13, 1999, this Court entered a Pretrial Scheduling Order, which included, *inter alia,* the following orders:
. Written reports of experts, including treating physicians, who may be witnesses for plaintiff fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for defendant as soon as possible, but in no event later than 90 days prior to Final Pretrial Conference Date.
. The parties shall file in the record and serve upon opponents a list of all witnesses who may or will be called to testify at trial, and all exhibits that may or will be used at trial no later than 60 days prior to Final Pretrial Conference Date.
The Final Pretrial Conference is set for October 7, 1999. Yellow Freight now moves for the exclusion of testimony by several witnesses listed by Plaintiffs.

B. *LAW AND ANALYSIS*

Defendant Yellow Freight has filed two motions to exclude Plaintiffs' expert witnesses. In the first motion, Yellow Freight contends that Plaintiffs disclosed several experts in an untimely fashion and in violation of the Pretrial Scheduling Order. In the second motion, Yellow Freight contends that Plaintiff Dayle Walker's economic expert does not meet the requirements of admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). The Court will consider each motion in turn.

1. WHETHER TO EXCLUDE EXPERTS AND EVIDENCE FOR FAILURE TO DISCLOSE IN A TIMELY
FASHION

On August 10, 1999 Defendant Yellow Freight received Plaintiffs' Witness and Exhibit List. Yellow Freight alleges, and Plaintiffs apparently do not dispute, that Plaintiffs listed a number of doctors, nurses, technicians and a psychologist that had never been identified previously. [FN1] Yellow Freight contends that these witnesses are experts and that their disclosure on August 10 therefore violated the deadline for expert disclosures set in the Pretrial Scheduling Order. Yellow Freight further alleges that Plaintiff's delay was unjustifiable and has caused it severe prejudice, as it prepared its case relying on Plaintiffs' discovery responses and the single expert report it had received. Yellow Freight moves the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court to exclude testimony and evidence to be offered through the testimony of these witnesses. Plaintiffs urge the Court to deny Yellow Freight's motion for reasons more fully developed below.

> FN1. Defendant moves to exclude the expert testimony and evidence sought to be introduced through Dr. Dana Fouchi, Dr. Bahram Zamanian, Dr. Gerardo Aristimuna, Dr. Robert Cunitz and 15 medical personnel from Charity Hospital (formally known as Medical Center of Louisiana, Charity Campus). These 15 witnesses are Dr. Kathleen Hubbell, Dr. James Moises, Dr. Kennon Beuchter, Dr. Rodriguez (no first name given), Dr. Charles W. Thomas, Dr. M. Karen, Dr. J. Craven, Dr. O. Wood, Ms. Jackie Alston, R.N., Ms. Laura Massey, R.N., Ms. Jodie Abbott, R.N., Mike Verges, R.N., S. Kelly, R.N., A. Wallace, C.S.T., and M. Ditta, S.R.N.A.

*2 As a preliminary matter, it is clear that the Court may, in its discretion, exclude expert testimony and evidence if Plaintiffs violated the Scheduling Order. This authorization comes from two sources. First, a district court may sanction a party's failure to comply with a pretrial scheduling order by excluding evidence in order to preserve "the integrity and purpose" of such an order. _Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir.1990); Barrett v. Atlantic Richfield Co., 95 F.3d 375, 379-82 (5th Cir.1996);_ Fed. R. Civ. P. 16(f). Second, a district court may also sanction a party's failure to comply with expert disclosure requirements by excluding evidence in order to "highlight the importance of Rule 26(a)(2), and to serve as an incentive to comply with the rule". Robert Matthew Lovein, _A Practitioner's Guide: Federal Rule Of Civil Procedure 26(a)--Automatic Disclosure,_ 47 Syracuse L.Rev. 225 (1996) (citing _In re Ford Motor Co.,_ N. MDL 991 sec. G, 1996 U.S. Dist. LEXIS 753, at *4 (E.D. La. Jan. 22 1996)); Fed. R. Civ. P. 37(c).

Defendant moves for exclusion under Rule 37(c)(1), which states in pertinent part:
> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial ... any witness or information not so disclosed.

Contrary to the apparent language of this portion of the rule (and the suggestions of the Defendant), exclusion is not mandatory or automatic. Instead, the district court may impose "other appropriate sanctions" in "lieu of" exclusion, such as requiring payment of reasonable expenses caused by the failure, informing the jury of the failure, or taking any of the actions authorized under Rule 37(B)(2)(A), (B) or (C). [FN2] See Fed. R. Civ. P. 37(c)(1) and advisory note.

> FN2. Defendant cites _Finely v. Marathon Oil Co._, 75 F.3d 1225 (7th Cir.1996), which states that "[t]he sanction of exclusion is ... automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." 75 F.3d at 1230. One commentary has noted that this case is often cited to suggest that district courts have no discretion in imposing sanctions, but that such a reading is "probably too broad", given that the rule provides that other sanctions may be imposed "in lieu of" exclusion. Steven E. Feldman, Philip Dale Segrest, Jr. & Robert B. Breisblatt, _Mandatory Disclosure and the Rocket Dockets Accelerating the Processes of Litigation,_ 456 PLI/PAT 269, 304 (1996). The Court prefers Mr. Feldman et al.'s explanation of the rule over Plaintiffs' attempt to distinguish the case on its facts; although it is unquestionably true that the instant case does not present an issue of "the lack of foundation for the admissibility of a jar of oil and water in a breach of contract case", Plaintiff's Memorandum in Opposition p. 4, this is perhaps the paradigmatic example of a "distinction without a difference."

The imposition of sanctions is a matter of discretion for the district court, _Sierra Club v. Cedar Point Oil Co., Inc., 73 F.3d 546, 572 (5th Cir.1996);_ however, this discretion is channeled. In evaluating the appropriateness of excluding testimony or evidence under Rule 37, the Fifth Circuit has directed district courts to consider four factors:
(1) The explanation, if any, for the party's failure to comply with the discovery order;
(2) The prejudice to the opposing party of allowing the witnesses to testify;
(3) The possibility of curing such prejudice by granting a continuance; and
(4) The importance of the witnesses' testimony.
_See, e.g., Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1000 (5th Cir.1998); Barrett, 95 F.3d at 380; Sierra Club, 73 F.3d at 572._

Based on its evaluation of the _Campbell_ factors, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 757022 (E.D.La.)  
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 3

Court concludes that exclusion is not warranted. The Court does, however, find that some sanctions are appropriate.

### a. DR. ROBERT CUNITZ

Yellow Freight moves for the exclusion of testimony by Dr. Robert Cunitz, whom they contend was a late-disclosed expert. Plaintiffs contend that Dr. Cunitz was timely disclosed because the sole purpose of his testimony is to contradict or rebut the testimony of Yellow Freight's trucking safety expert, Mr. Carmen Daecher, and the expected testimony of Yellow Freight's as-yet-undeposed employees. Because Dr. Cunitz is a rebuttal witness, Plaintiffs believe that Rule 26(a)(2)(C) affords them 30 days to disclose his identity following Yellow Freight's disclosures. In its Reply Memorandum, Yellow Freight argues that Plaintiffs cannot take advantage of the 30 day rebuttal period because the deadline set forth in the Pretrial Scheduling Order trumps the default provision of Rule 26(a)(2)(C). Yellow Freight also blames Plaintiffs for failing to depose their employees, thus weakening their argument that the additional time for rebuttal was necessary.

*3 In pertinent part, Rule 26(a)(2)(C) states
> In the absence of other direction from the court, ... if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), [disclosure shall be made] within 30 days after the disclosure made by the other party.

Yellow Freight argues that the Pretrial Scheduling Order constitutes "other direction from the court", thereby superseding the default provision of Rule 26(a)(2)(C). The Court finds that the Pretrial Scheduling Order does not override the provisions of Rule 26(a)(2)(C) because the Order does not provide a deadline for disclosure of rebuttal witnesses. Thus, Plaintiffs' disclosure of Dr. Robert Cunitz's identity was timely. [FN3]

> FN3. The Court notes, however, that Rule 26(a)(2)(C) applies only to the rebuttal of *expert* witnesses; Rule 26(a)(2)(C) does *not* provide additional time for Plaintiffs to rebut the testimony of Yellow Freight's employees.

But identity is only half the story. Rule 26(a)(2)(B) requires a party to accompany the disclosure of an expert witness with a complete, written report prepared and signed by the witness. Plaintiffs have failed to provide Yellow Freight with such a report. Plaintiffs contend that this failure results from the inability of Dr. Cunitz to make conclusions without the deposition testimony of Yellow Freight's employees. Plaintiffs claim that they have been unable to schedule these necessary depositions.

The Court finds Plaintiffs' explanation suspect at best. Plaintiffs have known the identities of these potential witnesses at least since June 11, 1999 when Yellow Freight responded to Plaintiffs' interrogatories, affording them ample time to schedule the depositions. Even had Plaintiffs' failure to depose Yellow Freight's employees been excusable, Plaintiffs never moved this Court for an extension of time to disclose Dr. Cunitz's report, which would have apprised the Court of Plaintiffs' difficulties and would have afforded the Court an opportunity to provide flexibility in the discovery process without undermining the integrity of its Scheduling Order. Simply stated, the Court will not allow *ex post* excuses to replace careful planning.

The Court recognizes the prejudice Plaintiffs' failure has caused Yellow Freight, which must now prepare to defend against Dr. Cunitz's testimony. However, because Dr. Cunitz's testimony may be necessary to rebut Mr. Daecher's testimony and thus may be extremely important to Plaintiffs' case, the Court finds that exclusion of Dr. Cunitz's testimony would be unduly harsh. Instead, the Court orders that Plaintiffs shall bear the costs of deposing Dr. Cunitz.

### b. CHARITY HOSPITAL WITNESSES

Yellow Freight also moves to exclude the testimony of the Charity Hospital personnel who treated the decedent and all evidence that Plaintiffs would seek to introduce through these witnesses. Based on Plaintiffs' Witness and Exhibit List, in which Plaintiffs designate all of the Charity Hospital personnel as "Fact Witnesses", and based on Plaintiffs' Opposition Memorandum, in which Plaintiffs state that the "treating personnel are obviously fact witnesses" and indicate that the only "expert" testimony they will be called on to give is the "translation" of the hospital record, the Court concludes that Plaintiffs intended to present the Charity personnel solely as fact witnesses. As fact witnesses, their disclosure was timely made within the parameters set for nonexpert witnesses in the Pretrial Scheduling Order. Accordingly, the Court shall allow the Charity personnel to testify as fact witnesses and shall allow evidence to be admitted through their testimony.

*4 The Court wishes to emphasize, however, that it will hold Plaintiffs to the representations made in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 757022 (E.D.La.)  
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 4

their papers and will treat these witnesses as fact witnesses only--the Charity witnesses will be able to testify only as to what they observed with respect to the decedent and to "translate" the emergency room records for the jury. Their testimony will be limited to the four corners of the decedent's hospital records and a minimal amount of background information. They will not be allowed to give any other expert testimony. Importantly, the Charity personnel will not be able to offer any opinion that decedent's injuries were caused by being crushed.

Plaintiffs attempt to argue that the Charity personnel can be allowed to testify as experts without prejudice to Yellow Freight because all of these witnesses will testify based on the emergency room records, which Yellow Freight received before Plaintiffs did. While this certainly lessens the prejudice, the Court finds it anything but harmless to require Yellow Freight to depose 15 expert witnesses within 60 days of the Pretrial Conference. Moreover, Plaintiffs have failed to provide any explanation for their delay, other than their assertion that "[t]o require a report of each of the attending medical personnel at Charity hospital is an exercise in futility." The Court finds no futility in requiring Plaintiffs to comply with the Scheduling Order. Thus, should Plaintiffs decide to qualify the Charity witnesses as experts, Plaintiffs will be required to pare down the list significantly [FN4] and bear the costs of any necessary depositions.

> FN4. In any event, the Court expresses disbelief that 15 witnesses are needed to testify regarding a hospital stay of less than three hours.

### c. DR. DANA FOUCHI

Dr. Dana Fouchi is one of Plaintiff Dayle Walker's treating physicians. Presumably, Plaintiff intends to offer Dr. Fouchi's testimony to establish damages. Thus, Dr. Fouchi will have to be qualified as an expert. Defendant moves to exclude Dr. Fouchi's testimony.

Plaintiff offers no explanation for her failure to disclose Dr. Fouchi's identity in a timely fashion. Indeed, her only response to Defendant's objection is that "a copy of [Dr. Fouchi's] medical file on Mrs. Walker has already been forwarded to defendant. The same argument that applies to the hospital personnel applies to Dr. Fouchi." Plaintiff does not, however, state on which date she forwarded this file to Yellow Freight, and the Court must conclude that the reason for this omission is obvious: it was late. Plaintiff's unjustified failure to comply with the Scheduling Order necessarily prejudices Yellow Freight, who, at this late date, must now prepare to rebut Dr. Fouchi's testimony. Although the Court finds that the infraction does not warrant total exclusion of Dr. Fouchi's testimony and that Dr. Fouchi's testimony is too important to exclude without unfairly prejudicing the Plaintiff, the Court concludes that a sanction is nonetheless warranted.

Accordingly, the Court orders that the Plaintiff shall bear the costs of deposing Dr. Fouchi. If this deposition cannot be conducted within a reasonable time before trial to allow Yellow Freight to prepare its case, the Court shall grant a continuance of the trial if requested.

### d. DR. BAHRAM ZAMANIAN, DR. GERARDO ARISTIMUNA

*5 Yellow Freight has moved to exclude the testimony of Dr. Bahram Zamanian and Dr. Gerardo Aristimuna, two cardiologists who have treated Plaintiff Dayle Walker. Plaintiff states that "the only one of plaintiff Dayle Walker's physician whom she plans to call is Dr. Dana Fouchi." Thus, Defendant's motion is moot as to these two witnesses.

### e. SUMMARY

In summary, the Court shall limit the testimony of the Charity Personnel unless Plaintiffs bear the costs of deposing them, orders Plaintiffs to bear the costs of deposing Dr. Cunitz, and orders Plaintiff Walker to bear the costs of deposing Dr. Dana Fouchi. The Court does not find exclusion warranted, and Yellow Freight's Motion is therefore denied.

### 2. WHETHER TO EXCLUDE THE REPORT AND PROHIBIT THE TESTIMONY OF ROBERT JOHNSON UNDER *DAUBERT*

Plaintiff Dayle Walker alleges that her son contributed toward her ordinary living expenses, and she seeks to recover for the loss of this contribution. At trial, Plaintiff intends to offer the expert testimony of Mr. Robert Johnson, a forensic economist and president of Robert W. Johnson & Associates, to assist the jury in calculating the damages resulting from this loss. Yellow Freight moves to exclude Mr. Johnson's report and to exclude his testimony.

In his report, Mr. Johnson set forth several calculations in order to determine the present cash value of decedent's economic loss. Mr. Johnson calculated the present value of the decedent's lost wages and fringe benefits from January 5, 1998, the date of death, until the year 2029, the end of Ms.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 757022 (E.D.La.)  
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 5

Walker's life expectancy, and concluded that the total present value of decedent's expected income is $1,643,593. This figure is based on information supplied by Plaintiff's counsel, the United States Bureau of the Census, and the United States Chamber of Commerce. Mr. Johnson also estimated the value of decedent's household services to be $8,578 in 1998 and 1999 and $8,753 per annum thereafter. This estimate is based on a study entitled "Measuring Household Production for the GNP" by Janice Peskin, Ph.D. published in 1982 by Family Economic Review (hereinafter the "Peskin study"). Lastly, Mr. Johnson stated in his report that his analysis estimated Mr. Bagwell's total income as a percentage of total family income and estimated decedent's consumption percentage based on the study "Injury and Recovery", which both parties have identified as "Injury and Recovery in the Course of Employment" by Earl Cheit published in 1961 (hereinafter the "Cheit study").

Yellow Freight moves to exclude the economic expert testimony and report of Mr. Johnson on the basis that the proposed testimony fails to meet the requirements for admissibility set forth in the Federal Rules of Evidence and articulated by the United States Supreme Court in _Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)_. Essentially, Yellow Freight argues that Mr. Johnson's opinions are irrelevant and unreliable. Not surprisingly, Plaintiff disagrees. On this issue, the Court agrees with Plaintiff.

*6 Under the Federal Rules of Evidence, a qualified expert witness may testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Before allowing such testimony, the district court must make initial determinations concerning the qualification of the potential witness and the admissibility of the proposed evidence. Fed.R.Evid. 104(a).

In determining whether the proposed expert evidence is admissible, the Supreme Court has emphasized that the district court is to execute a gate-keeping function by allowing only reliable and relevant expert testimony. In _Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)_, a case involving the admissibility of scientific expert testimony under Rule 702, the Supreme Court held that the trial judge must make a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. Thus, the focus of the _Daubert_ inquiry should be on the methodology used, not on the conclusions reached. _Id._ at 595. The judge may consider (1) whether the theory or technique underlying the opinion can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has been generally accepted in the relevant scientific community. _Id._ at 593-94. _See also Moore v. Ashland Chem. Inc., 151 F.3d 269, 275 (5th Cir.1998)_ (en banc). The Supreme Court subsequently clarified that the _Daubert_ analysis applies to all expert testimony, including testimony based on "technical" and "other specialized" knowledge. _See Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167 (1999)_.

In determining the admissibility of Mr. Johnson's testimony under the _Daubert_ standard, the Court first finds that Mr. Johnson is qualified as an economic expert. Mr. Johnson received his M.B.A. from Stanford Business School and has testified as an expert in quantifying both economic and non-economic damages for both plaintiffs and defendants in a wide variety of civil cases.

The Court next concludes that Mr. Johnson's testimony is relevant to the facts of the instant case. Under Louisiana law, future earnings are relevant in considering loss of support, _Nigreville v. Federated Rural Electric Insurance, 642 So.2d 216 (La.Ct.App.1994)_, and Louisiana courts generally allow economic expert testimony to establish lost earnings. _See, e.g., Pierron v. Lirette, 468 So.2d 1305 (La.Ct.App.1985)_. [FN5] Thus, in the abstract, expert testimony concerning decedent's future wages would tend to assist the jury in calculating Ms. Walker's damages. Accordingly, the Court must reject Yellow Freight's argument that Mr. Johnson's calculation of decedent's total wage figures are irrelevant because they "bear no relation" to Plaintiff Walker's claim for recovery of her son's $300 monthly contribution. Having determined that the subject of Mr. Johnson's report is, indeed, relevant, the Court must now determine whether Mr. Johnson's testimony in particular will assist the jury in this determination.

> FN5. In this way, the instant case can be distinguished from _Pick v. American Medical Systems, Inc., 1997 WL 149985 (E.D.La.1997)_ (Berrigan, J.), on which Yellow Freight relies. In _Pick,_ the court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
1999 WL 757022 (E.D.La.)  
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 6

concluded that Louisiana does not permit expert testimony on "hedonic damages" because it is within the province of the jury to determine the amount of general damages, if any, to which a plaintiff is entitled. Thus, the court concluded that expert testimony on this subject could not assist the trier of fact as required by Rule 702 and should not be admitted.

*7 *Daubert* requires that there be a valid connection between the expert testimony and the pertinent inquiry; the testimony must "fit" the facts of the case. 509 U.S. at 591. Thus, Mr. Johnson's proposed testimony must be validly connected with the issue of Plaintiff's damages. Yellow Freight suggests several ways in which this connection is broken. For example, Yellow Freight contends that the Cheit study, which is based on surviving spouses, does not fit this case, which involves a surviving parent. Similarly, Yellow Freight contends that the Peskin study does not fit this case because the decedent was not a farm worker.

Despite these superficial gaps in the connection between Mr. Johnson's report and the facts of this case, the Court finds the connection sufficiently established and valid. In an affidavit accompanying Plaintiff's Opposition Memorandum, Mr. Johnson cites a 1997 survey conducted by the Journal of Forensic Economists indicating that the Cheit study in general provides the most accurate personal consumption estimates available. Johnson Aff. ¶ 5. Mr Johnson further explains that the Peskin study was not limited to farm workers, but was merely calculated by the Department of Agriculture, and cites an article describing it as containing the best available estimates of the value of household services. Johnson Aff. ¶ ¶ 7-8. Thus, the Cheit and Peskin studies are appropriate for their intended use in this case, namely to serve as a basis for estimating the damages Plaintiff incurred from losing the contribution from her son.

The Court next concludes that Mr. Johnson's testimony is reliable.

Yellow Freight makes a two-pronged attack on the reliability of Mr. Johnson's report. Yellow Freight first attacks the literature Mr. Johnson relied on in making his calculations. Yellow Freight argues that the economic community does not accept the Peskin study for calculating the value of household services of non-farmers. As discussed above, this contention appears to be 180 degrees from the truth. The Peskin study has been published, was thereby subjected to peer review, and seems to have passed with flying colors in the eyes of the relevant community.

Yellow Freight also insinuates, and Dr. Kenneth J. Boudreaux states in an affidavit, *see* Boudreaux Aff. ¶ 9, that Johnson's valuation of decedent's household services is based on an unsupportable assumption that decedent contributed 35 hours per week of household services. Johnson retorts that the value set forth in the Peskin study is based on an average of 15.1 hours of household services per week. Because the Peskin study itself is reliable, the Court assumes that any figures it provides are reliable. In his affidavit, Dr. Boudreaux discounts the value of the Peskin study. Dr. Boudreaux is admittedly unfamiliar with the Peskin study [FN6] and the Court does not give great weight to his objections.

> FN6. Dr. Boudreaux states that, to his knowledge, the U.S. Department of Agriculture does not collect information reflecting household services supplied by "all males", "or if it did it would be for farmers." Boudreaux Aff. ¶ 8.

The second prong of Yellow Freight's attack focuses on the factual assumptions Mr. Johnson used in reaching his conclusions. Yellow Freight argues that Mr. Johnson's proposed testimony is unreliable because it is based on "rank" speculation. Specifically, Yellow Freight contends that Johnson should not have based his calculations on the assumption that decedent would attend and complete a four year college because no evidence supports it. Yellow Freight further contends that Johnson should not have calculated the potential economic loss through 2029, as there is no support for the assumption that decedent would have lived at home for twenty years. Yellow Freight refers to the Affidavit of Dr. Boudreaux, who states that available data indicate that it is typical for children to leave their parents' home either at first marriage or when becoming economically independent. Boudreaux Aff. ¶ 7.

*8 Plaintiff responds to each of these arguments. Plaintiff argues that her testimony and the affidavit of Max Sanders, Jr. support Johnson's assumption that the decedent would have gone to college. Plaintiff further contends that the close relationship she shared with her son, in addition to his demonstrated willingness to support her, substantiate Mr. Johnson's assumption that decedent would continue to support her for the remainder of her life.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 757022 (E.D.La.)
**(Cite as: 1999 WL 757022 (E.D.La.))**

Page 7

The evidence before the Court indicates that Mr. Johnson's assumptions are not wholly unfounded. At the same time, Ms. Walker's confusing deposition and her optimistic projections do not provide Mr. Johnson's assumptions with the surest of footings. Nevertheless, this potential shortcoming in the expert testimony does not justify its exclusion. In *Daubert,* the Supreme Court stressed that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the ... appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. The Fifth Circuit recently underscored this point when it wrote that the trial court's role as gatekeeper "is not intended to serve as a replacement for the adversary system". *United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1078 (5th Cir.1996) (per curiam). Rather, the "perceived flaws" in an expert's testimony often should be treated as "matters properly to be tested in the crucible of the adversarial system", not as "the basis for truncating that process". *Id.* at 1079. Thus, Yellow Freight's arguments that Mr. Johnson's assumptions are ill-founded should be saved for trial.

Yellow Freight rests heavily on the Fifth Circuit's pre-*Daubert* opinion in *Transco Leasing Corporation v. United States,* 896 F.2d 1435 (5th Cir.1990). In *Transco,* two consolidated Federal Tort Claims Act cases for wrongful death and property damage were tried in a lengthy bench trial. The court found the government liable and assessed damages. On appeal, the Fifth Circuit held that the trial court had overvalued the damages of one of the plaintiffs. Specifically, the court held that a $4000 raise the decedent "possibly" would have received was too speculative to be used in calculating his lost income stream. *Id.* at 1454. Yellow Freight's reliance on *Transco* is misplaced. First, the admissibility of the expert's testimony in *Transco* was not at issue. Indeed, the Fifth Circuit upheld the trial court's reliance on all aspects of the report other than the speculative increase. Second, the assumption involved in *Transco* rested on a series of hypotheticals, none of which were well supported. In contrast, Ms. Walker can provide evidence that the decedent intended to go to college and a reasonable jury could conclude based on the decedent's past actions that he intended to support his mother for some years to come. Then again, the jury could disregard either of these assumptions and correspondingly reduce the damage total. This is essentially what the Fifth Circuit did in *Transco* when it reduced the economic loss figure by the amount corresponding with the overly speculative evidence.

*9 In summary, the Court finds that Mr. Johnson is qualified as an expert and that his testimony is both relevant and reliable. Accordingly, Yellow Freight's motion to exclude his testimony and report is denied.

### C. *CONCLUSION*

IT IS ORDERED that Yellow Freight's Motion to Exclude Expert Testimony and Exhibits and Yellow Freight's Motion to Exclude Report and Prohibit Testimony of Mr. Robert Johnson are DENIED.

IT IS FURTHER ORDERED that the testimony of the Charity Hospital personnel be LIMITED pursuant to this Order and Reasons, the Plaintiffs BEAR THE COSTS of deposing Dr. Robert Cunitz, and Plaintiff Walker BEAR THE COSTS of deposing Dr. Dana Fouchi.

1999 WL 757022 (E.D.La.)

**Motions, Pleadings and Filings (Back to top)**

• 2:98CV03565 (Docket) (Dec. 02, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.