# DentonWildeSapte...

The Honourable Judge Rodriguez
United States District Judge
United States District Court
District of Delaware
USA

The Honourable Judge Lyons
United States Bankruptcy Judge
United States Bankruptcy Court
District of Delaware
USA

13 June 2005

| | |
|---|---|
| **Our ref** | SWM/53028.00051 |
| **Direct tel** | +44 (0)20 7320 5573 |
| **Direct fax** | +44 (0)20 7246 7777 |
| **Email** | susan.moore@dentonwildesapte.com |

Dear Sirs

**FEDERAL-MOGUL UK GROUP OF COMPANIES (IN ADMINISTRATION AND CHAPTER 11)**

We are the English solicitors for the Administrators of the English Companies in the Federal-Mogul Group (the "UK Debtors").

The Administrators recently applied to Mr Justice David Richards of the English High Court of Justice for directions concerning the conduct of these cases and in particular the determination of certain issues of English law affecting the treatment of US asbestos claims in English insolvency proceedings relating to the UK Debtors.

A procedural hearing took place on 9 and 10 June 2005, at the conclusion of which Mr Justice David Richards gave directions for the future conduct of the Application. At the direction of the Judge, we enclose a copy of the Judgment delivered by the Judge on 10 June 2005. We would make the following comments:

1. There are various references in the Judgment to paragraph numbers of the Application. We enclose a copy of the Application in its amended form[1], which we hope will prove helpful in your consideration of the Judgment.

2. The parties who were represented at the English hearing are set out on the first page of the Judgment. We have asked for a few corrections to be made to this wording: Mr Fisher did not appear[2], and Mr Sheldon appeared for the Legal Representative of the Future Asbestos Claimants, as well as the Official Committee of Asbestos Claimants. We would be happy to provide you with any amended judgment in due course, but considered that it may be helpful

---

[1] The amendments are highlighted and, among other things, set out the assumptions referred to in paragraph 8 of the Judgment. The Amended Application will be re-issued in the English Court later this week.
[2] Mr Fisher had intended to appear for the US Case Representatives (the US and UK debtors as Chapter 11 debtors in possession).

to you to receive the Judgment today, prior to the commencement of the US Estimation hearing tomorrow.

We hope that the Judgment will assist you to understand the manner in which these issues have arisen and are being dealt with by the English High Court.

Yours faithfully,

*Denton Wilde Sapte*

**Denton Wilde Sapte**

IN THE HIGH COURT OF JUSTICE                                    No 5798 (and others) of 2001

CHANCERY DIVISION

COMPANIES COURT

**[2005] EWHC 1198 (Ch)**

Royal Courts of Justice

Friday, 10th June 2005

Before:

MR. JUSTICE DAVID RICHARDS

IN THE MATTER OF **T&N LTD. & Ors.**

A-N-D

IN THE MATTER OF **THE INSOLVENCY ACT 1986**

---

*Transcribed by **BEVERLEY F. NUNNERY & CO***
*Official Shorthand Writers and Tape Transcribers*
*Quality House, Quality Court, Chancery Lane, London WC2A 1HP*
*Tel: 020 7831 5627    Fax: 020 7831 7737*

---

MR. R. SNOWDEN Q.C. and MR. P. ARDEN (instructed by Denton Wilde Sapte) appeared on behalf of the Joint Administrators of T&N Ltd.

MR. S. MORTIMORE Q.C. (instructed by Allen & Overy) appeared on behalf of the Trustees of the T&N Retirement Benefits Scheme (1989)

MR. R. FISHER (instructed by Sidley Austin Brown and Wood) appeared on behalf of the Plan Proponents

MR. R. SHELDON Q.C. (instructed by Lovells) appeared on behalf of the Official Committee of Asbestos Creditors

---

**JUDGMENT**
(As approved by Judge)

MR. JUSTICE DAVID RICHARDS:

1  The administrators of T&N Limited have issued an application seeking directions under s.14(3) of the Insolvency Act 1986. The directions are sought in relation to a number of issues of conflicts of law which may be of great significance in assessing the present and future claims of individuals in the United States for personal injury said to arise from contact with asbestos products.

2  I have in previous judgments (particularly one delivered on 21st October 2004) given some detail of the position of T&N and other companies in the same group, the asbestos-related claims against those companies, and the proposals for a plan of reorganisation under Chapter 11 of the United States Bankruptcy Code. I will not repeat those details in this judgment.

3  As part of the process whereby the plan of reorganisation under Chapter 11 is considered by the US Courts there is due to start on 14th June, in the US District Court for the District of Delaware, a hearing with a view to estimating for the purposes of the plan the amount of present and future asbestos claims. The administrators are not themselves participating in that hearing, nor as presently advised do they intend to promote schemes of arrangement or company voluntary arrangements in the United Kingdom with a view to implementing the plan of reorganisation in its present form if it were approved by the US Courts.

4  The application today is simply for directions as to the future conduct of the application which has been issued by the administrators. As well as the administrators themselves there are also represented before me the trustees of the T&N Pension Scheme, and the Official Committee of Asbestos Claimants appointed in the United States for the purpose of the Chapter 11 proceedings, and the legal representative for future asbestos claimants appointed for the same purpose.

5  A problem faced both by the courts and by all parties in both the United States and the United Kingdom is the daunting one of evaluating the asbestos-related claims for the purpose of the future conduct of both the Chapter 11 proceedings in the United States and the administration proceedings in the United Kingdom. It is impossible to wait to deal with those problems on an individual case by case basis. It is imperative to reach some conclusion on a more general basis.

6  All parties represented before me argue that as a first step in this process, so far as the conduct of the administrations in the United Kingdom are concerned, it is important to determine some fundamental questions as to which system (or systems) of law will, as a matter of English conflicts rules, govern at any rate the bulk of the relevant asbestos-related claims. It is the view of the Asbestos Claimants Committee and the legal representative for future Asbestos Claimants,

for whom Mr. Sheldon Q.C. appears today, that these are also very important issues in the present proceedings in the United States. All parties have been conscious of the problems of dealing with difficult issues of law in a general way detached from the facts of individual cases. Mr. Sheldon referred me to what was said by Lord Bridge of Harwich in <u>Lonrho Plc v Fayed and Others</u> [1992] A.C. 448 at p.470, and by Lord Mustill in <u>Scher v Policyholders Protection Board</u> [1994] 2A.C. 57 at p.113. He does not, however, say that these difficulties should stop the court from considering appropriate issues, but rather that it underlines the importance of the facts which are to be assumed for the purposes of this application, and that the application should address only those issues which can properly be determined in this way.

7   The core issues which all parties before me agree should be addressed are:

    (i)  whether, under English law, the choice of law applicable to the US asbestos claims would be governed by either the common law or the provisions of the Private International Law (Miscellaneous Provisions) Act 1995; and

    (ii)  whether, under English law, the law to be applied to the quantification of damages in respect of such claims would be English law.

This second question arises whether it is the common law or the 1995 Act which governs the choice of law otherwise applicable to the claims.

8   In order for these issues to be determined all parties are agreed, and it appeared to me to be the case, that a restricted number of factual assumptions could be made, some of which would be in the alternative. In the submissions made to me there was not full agreement on those assumptions but I have encouraged counsel to agree the assumptions and it appears that the parties have either agreed, or are very close to agreeing, the relevant assumptions. There are additional issues which, following discussion in the course of submissions before me, can properly be addressed at this stage. They include the proper construction of s.11(2)(a) of the 1995 Act which refers to: "... the law of the country where the individual was when he sustained the injury" when that provision is applied to a country containing a number of separate jurisdictions and legal systems, such as the United States.

9   Accordingly, I direct that the issues raised in paras. 3, 4(1) – (3) and 5(1) and (2) should, subject to finalisation of the assumed facts, proceed to the hearing. Subject to any submissions that may be made to me when we consider the necessary directions for that hearing, it does not appear to me at the moment that these issues will require any evidence as to facts beyond a general description of

the claims and the circumstances of the T&N companies, none of which I would expect to be controversial, nor any expert evidence as to US law and practice.

10   The administrators have also sought directions on a number of other related issues. First, in paras.4(4) and 5(3) of their application they seek direction as to whether, if the quantification of damages is governed by English law, general damages should be quantified by reference to:

> (a)   The levels established by English authorities and the Judicial Studies Board Guidelines (7th Edition, updated as at May 2004, or such edition as may be current at the time of quantification); and/or
>
> (b)   some other material and, if so, what material.

I am not persuaded that this is a matter which is properly the subject of directions under s.14(3) at this stage. If there is a real issue between the administrators and Mr. Sheldon's clients (or other parties) as to the correct approach to the quantification of general damages in accordance with principles of English law the issue can be raised in a more focused form.

11   Secondly, certain issues are raised in para.6 of the application as to the quantification of damages if they are governed by US law. Following discussion in the course of submissions the administrators do not at this stage press for directions as to the hearing of those issues. At first blush they appear to me to be issues which would require further definition as well as evidence and perhaps, though I am not certain as to this, the facts of particular cases before they could be dealt with.

12   Thirdly, para.7 raises a potentially important issue as to whether a proof of debt for punitive damages, which might be awarded under United States law, would be admissible to proof in the liquidation of T&N. The issue of punitive damages and the part, if any, which they should play in the estimation of US asbestos claims for the purposes of consideration of the plan of reorganisation under Chapter 11 may well be addressed by the US District Court in the forthcoming estimation hearing.

13   I was referred to a recent decision of the United States District Court for the District of Delaware in the case of <u>Owens Corning, et al v Credit Suisse First Boston, et al</u>. The decision is dated 31st March 2005. In that case not only did the Judge say that, because claims for punitive damages were in a United States liquidation under Chapter 7 deferred to compensatory claims, they should be disregarded when considering a plan in a case where there is a shortfall of assets, but he also observed that:

> "Moreover, as a practical matter, it seems highly doubtful that, in today's tort system, punitive damages would be allowed in any substantial amount, in most jurisdictions, to deter tortious conduct which ended more than twenty years ago."

I should add that <u>Owens Corning</u> was a company involved with asbestos and that he is there referring to asbestos-related claims.

14  It may transpire from the judgment arising from the forthcoming estimation hearing that punitive damages will not feature as a basis for claims in respect of US asbestos claims, in which case this issue will be academic. If that is not so, consideration by the English court of the issue raised by the administrators is likely in my judgment to be assisted by any consideration given to the question of punitive damages by the United States Court in the estimation hearing. Accordingly, I do not consider that the issue in para.7 of the application should be dealt with at this stage, but should arise for consideration, if at all, only after the US Court has given its judgment following the estimation hearing.

15  Finally, in para.8 the administrators raise questions as to the estimation of claims for the purposes of proof in an English liquidation on the assumption that:

> "(a)  the substantive law to be applied to US Asbestos Claims is the law of a state of the United States of America; and
>
> (b)  that substantive law permits of recovery on a several or joint and several basis against multiple defendants on the basis of 'collective theories of responsibility'."

16  The administrators have exhibited a memorandum prepared by Shearman & Sterling, which contains material on these collective theories of responsibility and the different ways in which they are treated in different state jurisdictions in the United States. It may well be that this raises important matters, but at this stage I find it difficult to assess the scope of the issues and the evidence and the argument which would be needed to resolve them. It is another area in which the court may well be assisted by the judgment of the US Court following the estimation hearing.

17  In any event, they are issues on which expert evidence will, I think, be essential in order to understand the nature of the claims, and the ways in which they would be dealt with by the Courts in the United States. I have therefore concluded that this too is an issue which should not be dealt with at this stage but should await at least the Judgment of the US District Court following the estimation hearing. Accordingly, I will give directions for the hearing of the issues raised in the remaining paragraphs which I enumerated earlier in this Judgment, and I will

1  adjourn consideration of the issues raised under the other paragraphs of the
2  administrators' application.
3
4  18  One final matter that I should mention is that there has been concern that nothing
5      done on this application should amount to claims handling for the purposes of the
6      insurance and reinsurance arrangements which T&N has in place. This affects
7      the form of the present application and, in particular, makes it undesirable to join
8      as representative respondents any persons who have asbestos claims. At the
9      same time all the parties before me are agreed that there is little point in giving
10     directions to the administrators which do no more than give them protection by
11     saying that they could reasonably follow a proposed course of action.
12     Accordingly, on this application the court will aim to determine the issues raised
13     by the application for the purposes of the proper conduct of the administration in
14     a manner which is binding on the parties appearing before the court which will
15     include at least the administrators, the pension fund trustees, and Mr. Sheldon's
16     clients.
17
18  MR. SNOWDEN: I am obliged to your Lordship. Can I mention four points on the
19      Judgment? Two are just small corrections when your Lordship comes to look at
20      a copy of it.
21
22  MR. JUSTICE DAVID RICHARDS: Thank you.
23
24  MR. SNOWDEN: I think you mentioned that you are not prepared to deal I think you
25      said with paras. 4(4) and 5(4), I think it should be 4(4) and 5(3).
26
27  MR. JUSTICE DAVID RICHARDS: Thank you very much.
28
29  MR. SNOWDEN: You mentioned earlier the <u>Corning</u> Judgment given "in 2004",
30      I think it is clearly 2005.
31
32  MR. JUSTICE DAVID RICHARDS: Yes, I am sorry.
33
34  MR. SNOWDEN: In the final and helpful comments your Lordship made in relation
35      to claims handling the decision will clearly be binding upon the parties your
36      Lordship mentioned subject to appeal?
37
38  MR. JUSTICE DAVID RICHARDS: Oh of course, yes. I do not think that is a
39      qualification that need be made.
40
41  MR. SNOWDEN: That was one of the things Mr. Sheldon pointed out, namely one of
42      the purposes of making a finding.
43
44

| | |
|---|---|
| 1 | MR. JUSTICE DAVID RICHARDS: Yes. |
| 2 | |
| 3 | MR. SNOWDEN: My Lord, just before I forget, in terms of mechanics it would |
| 4 | obviously be very helpful if your Lordship's judgment could be transmitted to the |
| 5 | United States Court. |
| 6 | |
| 7 | MR. JUSTICE DAVID RICHARDS: Certainly. I think up until now either your |
| 8 | solicitors, or some other parties, have arranged that. |
| 9 | |
| 10 | MR. SNOWDEN: My Lord, can I say two things about it? First, it would be I think |
| 11 | helpful from our perspective for your Lordship to indicate or direct that we |
| 12 | should do that so that it is going with your direction that we should do it. It |
| 13 | makes things easier in the States. |
| 14 | |
| 15 | MR. JUSTICE DAVID RICHARDS: Yes. As to that may I say I find it very helpful |
| 16 | to be kept updated as to what is happening in the US proceedings, particularly of |
| 17 | course if there is any judgment, but it is helpful to be updated and therefore for |
| 18 | that purpose I direct the transmission of this judgment – I suppose to both US |
| 19 | Courts, is that right? |
| 20 | |
| 21 | MR. SNOWDEN: That may well be right. Purely by mechanics I apprehend your |
| 22 | Lordship may not be in a position to be able to approve a copy of the judgment |
| 23 | immediately? |
| 24 | |
| 25 | MR. JUSTICE DAVID RICHARDS: Well it may be possible – I think proceed on the |
| 26 | basis that it may well be possible to do so. |
| 27 | |
| 28 | MR. SNOWDEN: In which case we will endeavour to get a transcript of it to your |
| 29 | Lordship through your clerk as soon as we can. |
| 30 | |
| 31 | MR. JUSTICE DAVID RICHARDS: There may be a short delay, but I do not |
| 32 | anticipate it should be a major problem. |
| 33 | |
| 34 | |

**IN THE HIGH COURT OF JUSTICE**  **No 5798 (and Others) of 2001**
**CHANCERY DIVISION**
**COMPANIES COURT**

IN THE MATTER OF T&N LIMITED AND OTHERS
AND IN THE MATTER OF THE INSOLVENCY ACT 1986

**BETWEEN:**

**(1) SIMON VINCENT FREAKLEY**
**(2) JAMES JOHN GLEAVE**
**(3) GARY PETER SQUIRES**

**Applicants**

**and**

**(1) EUROPEAN INTERNATIONAL INSURANCE COMPANY LIMITED**
**(2) CURZON LIMITED**
**(3) THE TRUSTEES OF THE T&N RETIREMENTS BENEFITS SCHEME (1989)**

**Respondents**

---

**AMENDED ORDINARY APPLICATION**

---

**TAKE NOTICE** that Simon Vincent Freakley, James John Gleave and Gary Peter Squires, the Joint Administrators of T&N Limited ("the Company") intend to apply to the Judge on:

Date:

Time:

Place:       Royal Courts of Justice, Strand, London, WC2A 2LL

**FOR** the following relief:

**Preliminary Relief: Claims Handling**

1. That it may be declared that the prosecution of this application seeking the relief set out below is not contrary to the rights of Curzon Insurance Limited under the Asbestos Liability Policy CZ 7/96 ASB/096 between Curzon Insurance Limited and T&N Limited, and in particular that it is not contrary to Curzon's rights under Section III(4)(f) thereof with regard to the administration, defence and disposition of "Asbestos Claims" as therein defined, which rights have been transferred by Curzon Insurance Limited to Centre Reinsurance International Company, European International Reinsurance Company Limited and Muenchener Rueckversicherungs-Gesselschaft under a Reinsurance Agreement dated 27 December 1996.

**Substantive Relief: Principles Governing Assessment of U.S. Asbestos Claims**

2. That subject to and conditionally upon the Court making a declaration in, or substantially in, the terms set out in paragraph 1 above:

   (1) Directions may be given to the Joint Administrators in respect of the issues which are described in paragraphs 3 to 8 below and which arise in connection with the consideration by the Joint Administrators as a necessary part of the discharge of their functions of the treatment of personal injury claims arising from <u>alleged</u> exposure to asbestos <u>in the United States</u> on the part of persons resident in the United States ("U.S. Asbestos Claims")<u>,</u> on the <u>following</u> assumptions<u>:</u>

   (a) <u>The claimants are United States residents;</u>

   (b) <u>The claimants allege exposure in the United States to an asbestos product causing an asbestos related disease or diseases;</u>

   (c) <u>The claimants allege that the Company is liable in respect of that exposure and the disease or diseases;</u>

   (d) <u>The Company went into liquidation and was wound up pursuant to the provisions of the Insolvency Act 1986;</u>

   (e) ~~and~~ <u>The claimants sought to prove in the liquidation of the Company;</u>

(f) Such claims constitute foreign tort claims for the purposes of English private international law.

(2) The decision of the English Court in relation to those issues may be communicated to the United States Bankruptcy Court for the District of Delaware and the United States District Court for the District of Delaware pursuant to paragraph A.7.i.a of the Procedures and Issues for Inter-Court Communications.

3. On the assumption that all of the exposure ~~the acts or omissions~~ giving rise to U.S. Asbestos Claims occurred before 1 May 1996, but

(1) The onset of the disease or diseases in respect of which a claim is made occurred after 1 May 1996; or

(2) The disease or diseases in respect of which a claim is made became apparent after 1 May 1996; or

(3) The onset of the disease or diseases in respect of which a claim is made occurred before 1 May 1996 but the disease or diseases worsened after 1 May 1996; or

(4) The onset of a disease or diseases occurred prior to 1 May 1996 but the onset of a further disease or diseases in respect of which a claim is made occurred after 1 May 1996;

~~(5) the damage caused by those acts or omissions either occurred or became apparent on or after 1 May 1996,~~

whether the choice of law applicable to any such and if so which claims ~~and issues arising in respect of such claims~~ would be governed by:

~~(1)~~1.   The provisions of the Private International Law (Miscellaneous Provisions) Act 1995 ("the 1995 Act") or

~~(2)~~2.   The common law.

4. To the extent that the choice of law applicable to U.S. Asbestos Claims would be governed by the common law:

(1) Whether the general rule is that the substantive law to be applied to such claims and all issues arising in respect of such claims would be English law;

(2) If the answer to sub-paragraph (1) above is "yes", whether a liquidator should apply the general rule unless satisfied, in relation to any such claim, that it falls within the exception to the general rule established or confirmed by the Privy Council in <u>Red Sea Insurance Ltd v Bouygues SA</u> [1995] 1 AC 190

(3) Whether, regardless of the substantive law to be applied to such claims, the law to be applied to the quantification of damages in respect of such claims would be English law

(4) If the answer to sub-paragraph (3) above is "yes", whether general damages sought in respect of such claims would be quantified by reference to:

  (a) The levels established by English authorities and the Judicial Studies Board Guidelines (7th Edition, updated as at May 2004, or such edition as may be current at the time of quantification); and/or

  (b) Some other material and, if so, what material.

5. To the extent that the choice of law applicable to U.S. Asbestos Claims would be governed by the 1995 Act, and on the assumption that as a consequence and in accordance with the provisions of section 11 of the 1995 Act the general rule is that the substantive law to be applied to such claims would be the law of a state of the United States of America:

(1) Whether (absent circumstances which might give rise to displacement under section 12 of the 1995 Act of the general rule set out in section 11 of the 1995 Act) <u>on a true construction of section 11 of the 1995 Act</u> the substantive law to be applied would be the law of the state in which the holder of such claim was when he sustained the personal injury in respect of which such claim is made, ~~irrespective of whether or not another state or states may have had jurisdiction in respect of such claim~~;

(2) Whether, regardless of the substantive law to be applied to such claims, the law to be applied to the quantification of damages in respect of such claims would be English law

(3) If the answer to sub-paragraph (2) above is "yes", whether general damages sought in respect of such claims would be quantified by reference to:

    (a) The levels established by English authorities and the Judicial Studies Board Guidelines (7th Edition, updated as at May 2004, or such edition as may be current at the time of quantification); and/or

    (b) Some other material and, if so, what material.

6. To the extent that, whether under the 1995 Act or under the common law, the law to be applied to the quantification of damages in respect of U.S. Asbestos Claims would be the law of a state of the United States of America:

(1) Whether there should be taken into account the level of awards previously made by the courts of that state and/or other states of the United States of America, in claims in respect of the same or substantially the same type of damage and, if so, how and in what manner;

(2) Whether, and if so in what circumstances:

    (a) The law of such a state might be displaced in favour of English law; and/or

    (b) A claim quantified by reference to the law of a state of the United States of America might nevertheless be limited having regard to the amount which would be payable in respect of the same or substantially similar claim by reference to English law.

7. To the extent that (a) the substantive law to be applied to U.S. Asbestos Claims is the law of a state of the United States of America and (b) the law of that state permits of an award of punitive damages, and on the assumption that such an award might be capable of being made in accordance with the substantive law:

(1) Whether a claim in respect of punitive damages would be provable as a debt in the liquidation of the Company;

(2) Whether the law to be applied to the quantification of punitive damages would be English law;

(3) If the answer to (2) above is "yes", whether such punitive damages would be quantified so far as reasonably possible by reference to the levels for

appropriate awards of punitive damages as they appear from English authorities; and/or some other material and, if so, what material.

(4) To the extent that the law to be applied to the quantification of punitive damages is the law of a state of the United States of America:

(a) Whether there should be taken into account the level of awards previously made by the courts of that state and/or other states of the United States of America, in claims in respect of punitive damages and, if so, how and in what manner;

(b) Whether, and if so in what circumstances:

(i) The law of such a state might be displaced in favour of English law; and/or

(ii) A claim quantified by reference to the law of a state of the United States of America might nevertheless be limited having regard to the amount which would be payable in respect of the same or substantially similar claim for punitive damages by reference to English law.

8. On the assumption that (a) the substantive law to be applied to U.S. Asbestos Claims is the law of a state of the United States of America and (b) that substantive law permits of recovery on a several or joint and several basis against multiple defendants on the basis of "collective theories of responsibility":

(1) Whether, where recovery is permitted against multiple defendants and liability is several, such claims should be estimated for the purposes of proof on the basis that liability in respect of the claim is apportioned between all companies or persons potentially liable to the holder of such claim;

(2) Whether, where recovery is permitted against multiple defendants and liability is joint or joint and several, the amount of such claim should be reduced by the amount of actual and/or potential recoveries made against other defendants jointly or jointly and severally liable with the Company in respect of the same.

9. That such further issues may be determined and such further directions given as the Court may consider appropriate.

**Procedural Relief**

10. That such directions may be given for the conduct of this application as may be appropriate.

**General**

11. That such order may be made for the costs of this application as may be appropriate.

~~IT IS NOT INTENDED TO SERVE THIS APPLICATION ON ANY PARTY~~

IT IS INTENDED TO SERVE THIS APPLICATION ON:

1. EUROPEAN INTERNATIONAL INSURANCE COMPANY LIMITED
2. CURZON LIMITED
3. THE TRUSTEES OF THE T&N RETIREMENTS BENEFITS SCHEME (1989)

The grounds on which this application is presented are set out in the 18th Witness Statement of James John Gleave to be filed in support of this application.

This application was issued by Denton Wilde Sapte, solicitors for the Joint Administrators.

~~Dated:           May 2005~~

Dated:          June 2005

~~Signed:~~          .......................................

Signed

Denton Wilde Sapte
1 Fleet Place
London EC4M 7WS
Ref: SWM/53028.00051/7080253.01

Solicitors for the Joint Administrators

Nos 5798 (and others) of 2001

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**COMPANIES COURT**

**IN THE MATTER OF T&N LIMITED AND OTHERS**

**AND IN THE MATTER OF THE INSOLVENCY ACT 1986**

---

**AMENDED ORDINARY APPLICATION**

---

Denton Wilde Sapte
1 Fleet Place
London
EC4M 7WS
Tel: 020 7242 1212

REF: SWM/53028.00051/7080253.01

Solicitors for the Joint Administrators