# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 01-10578 (RTL) |
| FEDERAL-MOGUL GLOBAL, INC., | : | Jointly Administered |
| T&N LIMITED, et al. | : |  |
| Debtors. | : | **Hearing Date: September 28, 2004 @ 10:00 a.m.** |
|  | : | **Objections Due By: September 21, 2004 @ 4:00 p.m.** |

-------------------------------------------------------x

## MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS PURSUANT TO BANKRUPTCY RULE 3003(c)(3) FOR ORDER FIXING FINAL DATE FOR FILING PROOFS OF ASBESTOS CLAIMS AND APPROVING NOTICES AND PUBLICATION PROCEDURES RELATED THERETO

TO THE HONORABLE RAYMOND T. LYONS
UNITED STATES BANKRUPTCY JUDGE:

   As and for its motion (the "Motion") for entry of an order pursuant to Rule

3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i)

fixing December 1, 2004 as the final date (the "Bar Date") for filing certain proofs of

claim against the respective estates of the debtors in the above-captioned cases (the

"Debtors"), (ii) approving the forms of notice related thereto, (iii) approving proposed

procedures for providing notice of the Bar Date, and (iv) deferring and adjourning the

confirmation hearing on the proposed plan of reorganization (the "Plan") for three

months, with an objection deadline thirty days prior to the confirmation hearing, the

Official Committee of Asbestos Property Damage Claimants ("Property Damage

Committee"), respectfully represents:

## Jurisdiction

1.      The Court has subject matter jurisdiction to consider and determine this application pursuant to 28 U.S.C. § 1334.  This application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § § 1408 and 1409.

## Background

2.      On October 1, 2001 (the "Commencement Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Contemporaneously with the filing of the chapter 11 cases, the Debtors filed for administration proceedings before the High Court of Justice in the United Kingdom for the Debtors located in that jurisdiction.

## Relief Requested

4.      By this Motion, the Property Damage Committee requests an order (i) fixing December 1, 2004 as the Bar Date for the filing of timely proofs of claim by current asbestos personal injury claimants (the "Current Asbestos Claimants") against the estates of the Debtors, (ii) approving the form of notices related thereto, (iii) approving the proposed procedures for providing notice of the Bar Date, and (iv) deferring and adjourning the confirmation hearing on the proposed Plan for three months, with an objection deadline thirty days prior to the hearing.  A form of proposed order establishing the Bar Date is annexed hereto as Exhibit A.

5.      Bankruptcy Rule 3003(c)(2) requires, *inter alia*, that proofs of claim be filed by all creditors whose claims are "not scheduled or scheduled as disputed, contingent, or unliquidated."  The Debtors filed their schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>") on December 18, 2001, December 19, 2001, and December 20, 2001.   Thereafter, on March 6, 2002, an Amended Summary of Schedules of Assets and Liabilities was filed for Federal Mogul Corp.

6.      Bankruptcy Rule 2002(a)(7) provides that creditors must be given "not less than twenty (20) days notice by mail" of "the time fixed for filing proofs of claim pursuant to Rule 3003(c)."  Based on the notice procedures set forth below, the Bar Date will give all Current Asbestos Claimants ample opportunity to prepare and file proofs of claim.

<u>**Preliminary Statement**</u>

7.      As much as any other constituency in these cases, the Property Damage Committee recognizes the benefits of moving the case forward to conclusion so that all legitimate creditors – banks, bondholders, personal injury claimants, and property damage claimants alike – can begin to receive distributions.

8.      But expedience cannot take precedence over the statutory requirements of the Bankruptcy Code and the applicable Rules of Bankruptcy Procedure, or override the fundamental goal of equality of treatment of creditors, all of which compel the establishment of a bar date for asbestos bodily injury claims.  At the end of the day, all constituencies will be better served by a plan process that is predicated on full

compliance with applicable requirements of the Code and Rules, even if doing so requires a modest delay.

9.     The Property Damage Committee understands the parties supporting the proposed chapter 11 plan want to establish the allowed amount of personal injury claims with the minimum opposition possible.  Thus, they do not want the Property Damage Committee or the Court to have the benefit of knowing the actual number of claims filed or the backup data (such as x-rays) for such claims.  The absence of such data for the confirmation hearing creates an unwarranted unfairness and illegality to the prejudice of the Property Damage Committee.

### The History of the Bar Date in These Cases

10.     During the pendency of these chapter 11 cases, this Court established respective bar dates for the filing of asbestos property damage claims and certain general unsecured claims.  At the request of the Debtors, these bar dates expressly do not apply to Current Asbestos Claimants[1].  See, e.g., Order (A) Establishing Bar Date for Filing Proofs of Claim on Account (sic) Asbestos-Related Damage to Property Located in the United States and Canada; (B) Approving Proposed Proof of Claim Form for Such Asbestos-Related Property Damage Claims; and (C) Approving Scope and Manner of Notice of Bar Date for Asbestos-Related Property Damage Claims (Docket No. 1682).

---

[1] Despite an explicit exclusion of the Current Asbestos Claimants from the prior bar dates, the Debtors expressed their intention to seek the establishment of a bar date "on account of all other types of claims…" PD Bar Date Motion at ¶12 (emphasis added).  To date, the Debtors have not sought such relief -- thus precipitating this Motion.

11.     Moreover, the proposed Plan provides for the establishment of a trust to be administered by the Asbestos Claimants Committee pursuant to certain Trust Distribution Procedures (the "TDP").  Notably, the TDP require claimants who are beneficiaries of the trust to file claims before they receive a distribution.  Thus, the Plan Proponents acknowledge that claimants must file a claim before they can recover.  However, without a bar date in advance of confirmation, the proponents of the plan (and especially, the Asbestos Claimants Committee) do not afford other parties in interest the opportunity to review and assess the validity of current asbestos-related claims, individually or in the aggregate.  Rather, they want them filed after plan confirmation and therefore out of the watchful eye of this Court and the confirmation process.  Just as the Debtors thought it was appropriate to "determine with finality" the extent of the asbestos property damage claims against the Debtors' estate (See, Property Damage Bar Date Motion at ¶10), the Property Damage Committee believes it is imperative to a fair and equitable plan process, as well as being required by the Bankruptcy Rules, for a bar date to be set with respect to Current Asbestos Claimants.

### A Bar Date Must Be Established for All Current Creditors to Facilitate a Fair and Equitable Plan Process

12.     The relief requested by the Property Damage Committee is necessary to ensure a fair and equitable plan process, and is required by the Bankruptcy Rules and applicable law.

13.     The Proposed Plan assumes, among other things, the presence of more than $11 billion of allowed asbestos personal injury claims against the Debtors' estates, which is more than five times the amount estimated by the Debtors in the

prepetition period ($1.6 - $2.5 billion).  To confirm the proposed Plan, this Court must

determine that each impaired rejecting class of claims is not being unfairly discriminated

against and is being treated fairly and equitably by the proposed Plan.  11 U.S.C.

§1129(b).  Such a finding is impossible without a reasonable estimation of the aggregate

personal injury claims.  Simply allowing the proponents of the Plan (the "Plan

Proponents") to assign an aggregate value to the asbestos personal injury claims is not

acceptable.  Only a bar date process similar to the one requested herein and as required

by the Bankruptcy Rules, can produce the data necessary to make a proper determination

of whether the proposed Plan, and the recoveries presented by it, will not unfairly

discriminate and are fair and equitable.

   14. A bar date will also serve to confirm whether the proposed Plan

satisfies the section 1129(a)(7) 'best interests' test.  See 11 U.S.C. § 1129(a)(7).  Section

1129(a)(7) requires each holder of a claim in an impaired class of claims that either

accepts the plan or receives or retains under the plan value for such claim that is not less

than the claimant would receive or retain in a chapter 7 liquidation.  The section

1129(a)(7) test applies to each rejecting creditor in an impaired class.  It matters not

whether the impaired class accepts the plan -- the test applies if one or more member of

the accepting class votes to reject the plan.  See, 11 U.S.C. § 1129(a)(7)(A).  Again, it is

impossible to make such a finding without a clear and unbiased understanding of the total

number of claims among which the Debtors' liquidated value would be distributed.  To

ensure an even and fair distribution among similarly situated (i.e., unsecured) claimants

of the liquidation value, it is imperative that an objective and accurate assessment of the

total number of asbestos personal injury claims is undertaken.

15.     Moreover, the establishment of a bar date is not optional.

Bankruptcy Rule 3003(c)(3) provides, in relevant part, "[t]he court <u>shall</u> fix and for cause

shown may extend the time within which proofs of claim or interests may be filed."

(emphasis added).  This rule directs courts to establish bar dates in chapter 11 cases.  <u>See</u>

<u>NLRB v. Bildisco and Bildisco</u>, 465 U.S. 513, n.10 (1984). ("[T]he filing of a proof of

claim is a necessary condition to the allowance of an unsecured or a priority claim . . . .").

As the Bankruptcy Court for the Southern District of New York recently held in

connection with a large and complex case:

> Bankruptcy Rule 3003(c)(3) directs a bankruptcy court to establish a bar
> date beyond which proofs of claim are disallowed in a chapter 11 case.
> The bar date is critically important to the administration of a successful
> chapter 11 case for it is intended "to be a mechanism providing the debtor
> and its creditors with finality."  *In re Manville Forest Products Corp.*, 89
> B.R. 358, 374 (Bankr.S.D.N.Y.1988).  In particular, a "'bar [date] order
> serves the important purpose of enabling the parties to a bankruptcy case
> to identify with reasonable promptness the identity of those making claims
> against the bankruptcy estate and the general amount of the claims, a
> necessary step in achieving the goal of successful reorganization.'"  *In re
> Keene Corp.*, 188 B.R. 903, 907 (Bankr.S.D.N.Y.1995) (quoting *First
> Fidelity Bank, N.A. v. Hooker Invs., Inc.* (*In re Hooker Invs., Inc.*), 937
> F.2d 833, 840 (2d Cir.1991)).  Therefore, a bar date order "does not
> 'function merely as a procedural gauntlet,' ... but as an integral part of the
> reorganization process."  *Id.* (quoting *First Fidelity*, 937 F.2d at 840
> (quoting, in turn, *United States v. Kolstad* (*In re Kolstad*), 928 F.2d 171,
> 173 (5th Cir.1991)))  Accordingly, a bar date is likened to a statute of
> limitations which generally must be strictly observed.  *Id.* (citing *Maxwell
> Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff* (*In
> re Macmillan*), 186 B.R. 35, 49 (Bankr.S.D.N.Y.1995)).

*In Re Enron Corp.*, 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003).  *See also In re Eagle-*

*Picher Indus. Inc.,* 137 B.R. 679, 681 (Bankr. S.D. Ohio 1992) (bar date serves a "vital

function"); *In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 818 (Bankr. E.D. Pa. 2003)

(same); *In re Babcock & Wilcox Co.*, Case No. 00-0558, slip op. (E.D. La. Aug. 25, 2000) (attached hereto as Exhibit B).

16.    As noted, the Debtors previously filed a motion to set a bar date for asbestos property damage claims.  In such motion, the Debtors acknowledged "Federal Rule of Bankruptcy Procedure 3003(c)(3) <u>requires</u> that a bankruptcy court" shall set a bar date.  Property Damage Bar Date Motion at ¶ 11 (emphasis added).  The Debtors further acknowledged the necessity of a bar date to determine the scope of asbestos property damage claims in order to determine the appropriate distributions for each claim under a chapter 11 plan.  <u>Id</u>. ("These determinations will enable the Debtors to further their reorganization process and determine what distributions, if any, should be made on account of North American PD Claims . . .").  Of course, the Debtors could have just asked the asbestos property damage attorneys for their estimate of the value of their clients' claims -- undoubtedly, the asbestos property damage attorneys would have been delighted to provide such an estimate.  Instead, the Debtors acknowledged that the proper method for eliciting and verifying the validity of such information is the setting of a bar date and engaging in a subsequent analysis of the claims.

17.    The Property Damage Committee's constituency is especially prejudiced by the Debtors' failure to carry out their statutory duties listed above.

18.    The establishment of a bar date provides necessary transparency to bankruptcy cases -- all parties in interest, including creditors, have the opportunity to evaluate the extent of claims asserted and to object to improper claims.  <u>See</u>, e.g., 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").  Indeed, while their

conduct to date would suggest otherwise, the Debtors (as trustees for <u>all</u> creditors) have a statutory <u>duty</u> to review and object to improper claims.  *See* 11 U.S.C. § 704(5), made applicable to chapter 11 cases by 11 U.S.C. § § 1106(a) and 1107(a) ("The trustee shall -- if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper.").  It would be impossible for the Debtors to discharge this statutory duty absent a bar date for all claimants.

19.    The duty to review the bona fides of claims, particularly claims of the magnitude alleged by the Plan Proponents, is heightened in the asbestos arena because of continuing skepticism of the propriety of these claims.  As one member of the Official Committee of Asbestos Claimants Committee ("<u>ACC</u>") has candidly admitted, the "great majority" of asbestos claims are submitted by "unimpaired" persons with conditions insufficient to keep a child home from school.  <u>See</u> Kazan Letter, Exhibit C. In a letter to M. Alexander, President of the American Trial Lawyers Association, dated January 31, 2003, Steven Kazan, Esq., a prominent asbestos plaintiffs' attorney and a member of the ACC in these cases, spoke out against the practices of the members of his own plaintiffs' bar:

> The heart of the matter is addressed but misidentified in your e-mail when you write that the ABA Commission proposal will impact "the rights of hundreds of thousands of Americans who suffer from asbestos-related disease."  That is nothing but sophistry, and you should know better.  The fact of the matter is that the people of whom you write suffer from nothing, and have nothing whatsoever that any rational person would consider to be a disease.  At most, the great majority of them have markings on an x-ray that some profit motivated doctor has described as being "consistent with" changes that <u>can</u> be caused by asbestos.  This is far from a diagnosis of disease.  The great majority of these people have no symptoms whatsoever, and they therefore suffer from nothing.  The relatively small percentage of them who have a true and legitimate x-ray abnormality caused by asbestos also have no symptoms and suffer from

nothing.  In short, they aren't sick, and if they were your children, you
would not keep them home from school (emphasis in original).

      20.     In March 2003, Mr. Kazan testified before Congress and presented

a rather disturbing view of "forensic medicine" in asbestos cases, which he characterized

as "the medical side of legal entrepreneurship":

> In the real world, a person who wants to receive medical advice about a
> symptom, or even about risks of future illness from some exposure, would
> go to a doctor, explain his occupational and medical history, undergo tests
> that comply with generally accepted technical standards, and receive a
> considered diagnosis.  That is the medical model.  And that is precisely
> what does not happen in asbestos litigation.

> In asbestos litigation, screening firms recruit asbestos-exposed individuals
> as clients.  Technicians employed by those firms administer tests that
> rarely comply with applicable technical standards.  The test results are
> provided to doctors who are often not licensed in the relevant state, who
> do not consider themselves to be in a doctor-patient relationship with the
> potential claimant, and who often have a financial interest in identifying as
> many potential plaintiffs as possible.

See Exhibit D, at 2.

      21.     Moreover, a recent study, annexed hereto as Exhibit E, by the

Department of Radiology at the Johns Hopkins Medical Institutions confirmed the

questionable validity of claims submitted by asbestos plaintiffs' attorneys.  In the study,

the authors had six independent B reader consultants (the "Independent B Readers")

analyze 492 chest radiographs of asbestos claimants involved in litigation that were

identified as positive by B readers hired by plaintiffs' attorneys  (the "Initial B Readers").

The results were astounding.  While the Initial B Readers determined that 96.5% of the

chest X-rays showed parenchymal abnormalities, the Independent B Readers found such

abnormalities present in only 4.5% of the cases.  Moreover, whereas the Independent B

Readers found 38% of the X-rays they reviewed to be completely normal without any

change whatsoever, not one of the Initial B Readers found the same.  As stated by Dr.

Murray L. Janower and Leonard Berlin in the journal Academic Radiology, this study:

> "…raises considerable concern as to whether interpretations of chest
> radiographs rendered by B-reader radiologists acting as expert witnesses
> and offered as testimony in asbestos-related litigation is non-partisan and
> clinically accurate.  Well-researched and statistically analyzed, the article
> contains data that is as disquieting as it is startling."

See Academic Radiology, 2004; 11:841-842, annexed hereto as Exhibit F.

22.     As RAND Institute, a non-profit research center recently

concluded: "In sum, it appears that a large and growing proportion of the claims entering

the system in recent years were submitted by individuals who have not incurred an injury

that affects their ability to perform activities of daily living."  RAND Institute for Civil

Justice, Asbestos Litigation Costs and Compensation: An Interim Report, 21 (RAND

2002) (the "RAND Report") (annexed hereto as Exhibit G).  According to RAND's

independent analysis, nonmalignant claims accounted for approximately 80% of all

claims entering the system through the mid-1980s and increased to 90% of annual claims

in the late 1990s leading it to conclude that "[a]lmost all the growth in the asbestos

caseload can be attributed to the growth in the number of these claims which includes

claims from people with little or no current functional impairment."  RAND Report at 45-

46.

23.     The American Bar Association has reached the same conclusion.

As stated in its most recent report on the issue:

> By virtually all accounts, contemporary asbestos litigation is no longer
> driven solely, or even primarily, by the occurrence of disabling asbestos-
> related diseases.  Asbestos-related cancer and impairing asbestosis
> continue to occur, but they represent a small fraction of annual new
> filings.  According to the recent RAND Report, somewhere between two-

thirds and 90% of new claims are now brought by individuals who have radiographically detectable changes in their lungs that are 'consistent with' asbestos-related disease (and with dozens of other causes), but have no demonstrated functional impairment from these changes: 'In sum, it appears that a large and growing proportion of the claims entering the system in recent years were submitted by individuals who have not incurred an injury that affects their ability to perform activities of daily life.' The Commission conducted numerous interviews with some of the nation's leading medical authorities in asbestos-related pulmonary function analysis. Virtually all of them stated that their clinical experience confirmed the RAND data.[2]

See Exhibit H at 4 (citations omitted).

### Claims Review and Objection

24.    Creditors have the statutory right to review claims and object to improper claims. 11 U.S.C. § 502(a). It is manifestly improper to strip creditors of fundamental statutory rights. Before other unsecured creditors' recoveries are diluted by billions of dollars of alleged tort claims, such creditors have at least the right to require

---

[2]  *See also* Executive Summary, American Bar Association Commission on Asbestos Litigation Report to the House of Delegates, February 2003 (the "ABA Report") (annexed hereto as Exhibit H), pages 1-2 (emphasis added):

> In the 1990's, although claims involving serious asbestos-related disease continued to be filed, a new phenomenon occurred. For-profit litigation screenings began systematically generating tens of thousands of new claims each year by individuals who had some degree of occupational asbestos exposure, but did not have, and might never get, an asbestos-related disease. Asbestos dockets in many jurisdictions swelled. Today, it is common for some defendants to have more than 100,000 cases pending. ***The overwhelming majority of these claims involve individuals with absolutely no functional impairment but who file "non-malignant" claims based on these screenings which are often conducted without following generally accepted clinical standards.***
>
> ***For the vast majority who never develop a disabling asbestos-related disease, a settlement of their claim is arguably a windfall. For those who later develop mesothelioma, an asbestos related cancer, the filing and resolution of a premature claim and execution of a full release can become a haunting mistake.*** In addition, the costs associated with the huge volume of claims from asymptomatic claimants have been largely responsible for the bankruptcy of more than twenty companies in the past two years alone. When these bankruptcies occur, claimants with serious disease claims see their compensation deferred and often reduced significantly. These bankruptcies have also caused significant job losses for workers.

those claims be filed, reviewed, and, if appropriate, objected to.  Notably, debtors in

possession have statutory duties to review and to object to claims, 11 U.S.C. § 704(5),

made applicable to chapter 11 cases by 11 U.S.C. § 1106(a)(1).  The Debtors have not

done so and the proposed Plan contemplates they never will.

### There is No Asbestos Exception to the Bar Date Requirement

        25.      Contrary to the intentions of the Plan Proponents, the TDPs and the

section 524(g) channeling injunction in the proposed Plan are not acceptable substitutes

for a bar date.  As the District Court for the Eastern District of Louisiana made clear in

*Babcock & Wilcox*,

> [This Court] does not find that the prospect of establishing a section
> 524(g) trust justifies relieving present claimants from asserting their
> claims before a bar date.  Ascertaining the number and identity of present
> claimants will assist in valuing the claims in this class, by facilitating the
> claims allowance and estimation processes.  This will in turn assist the
> parties in the negotiation and formulation of a viable reorganization plan.
> *See In re Trump Taj Mahal Assocs.,* 156 B.R. 928, 938 (Bankr. D.N.J.
> 1993) ("Without a final claims deadline, participants in the reorganization
> process would be hindered by undue caution in their negotiations and in
> voting on the plan").  Moreover, although future claimants are not
> governed by the bar date, an identification of the number and nature of
> present asbestos-related claimants will help to predict debtors' future
> claims liability, which is necessary for determining the size and structure
> of the section 524(g) trust.

*In re Babcock & Wilcox Co.*, Case No. 00-0558, slip op. at 7-8 (E.D. La. Aug. 25, 2000),

annexed hereto as Exhibit B.

        26.      Notably, the TDPs would require claimants to file proof of their

claims, but only after a chapter 11 plan is confirmed.  See TDP, annexed as Exhibit

1.1.154 to the proposed Plan.  Such a process turns the claims review process on its head,

as it will occur too late to protect non-personal injury creditors from severe dilution by

invalid asbestos tort claims.  The Asbestos Personal Injury Trust Agreement in the

proposed Plan provides that the trustees for the asbestos personal injury trust will be three

unidentified individuals selected by the ACC and the Futures' Representative.  In other

words, the proposed Plan will not only exclude the Court and other creditors from the

claims review process, they would transfer control of the process to trustees selected by

the very entities filing the claims.  This system obviously does not comport with due

process.  The claims review process must take place in the context of these chapter 11

cases, <u>under the supervision of this Court</u>, and with the concomitant preservation of the

statutory ability of <u>all</u> parties to object to improper claims.  <u>See</u>, e.g*., In re USG

Corporation*, 290 B.R. 223, 225 (Bankr. D. Del. 2003) ("In an asbestos bankruptcy, the

Court will, within the constraints of the law, reject unsubstantiated claims, bogus medical

evidence and fanciful theories of causation.  The Court will protect those who have been

truly harmed.").  The establishment of a bar date will ensure that all parties have a

reasonable opportunity to object to claims.  This statutorily mandated opportunity will

benefit both actual claimants (who would otherwise be improperly diluted by meritless

claims) and "future" asbestos creditors (whose claims against a section 524(g) trust will

not be improperly diluted by excessive late filed claims).

### **Form of Proofs of Claim**

27.    The Property Damage Committee has prepared a proof of claim

form (the "<u>Asbestos Personal Injury Claim Form</u>") that is designed to elicit necessary

information for the classification and resolution of asbestos-related personal injury

claims.

28.     The Asbestos Personal Injury Claim Form is modeled on Official

Bankruptcy Form No. 10, with supplements to elicit necessary information pertaining to

an asbestos claim.  It is well established that a court has authority to modify Official

Bankruptcy Form No. 10 in appropriate situations, including mass-tort chapter 11 cases.

*See Teachers' Retirement System of Louisiana v. A.C.L.N., Ltd.,* 2004 WL 304018, at *1

(Bankr. S.D.N.Y. Feb. 18, 2004) ("The Court approves the form, substance and

requirements of the . . . Proof of Claim form . . . ."); *In re Babcock & Wilcox Company*,

2000 U.S. Dist. LEXIS 15259 (Dist. Ct. E.D. La. 2000); *In re USG Corp.*, Case No. 01-

2094 (Bankr. D. Del. Feb. 19, 2003) (attached hereto as Exhibit I).  *See also In re A.H.*

*Robins Co.,* 862 F.2d 1092, 1093 n.2 (4th Cir. 1988); *In re Eagle-Picher Indus., Inc.,* 158

B.R. 713, 716 (Bankr. S.D. Ohio 1993) (referencing "court approved" asbestos proof of

claim form); *In re Celotex Corp.*, 204 B.R. 586, 593 (Bankr. M.D. Fla 1996) (discussing

court-approved special asbestos proof of claim form); and *In re W.R. Grace & Co.*, Case

No. 01-1139 (Bankr. D. Del. April 25, 2002) (approving a detailed proof of claim for

asbestos property claimants) (attached hereto as Exhibit J).  Indeed, the Debtors agree

with this proposition.  <u>See</u> Property Damage Bar Date Motion at ¶ 32 ("The use of

specialized proof of claim forms is a well-established method for gathering information

relating to mass tort claim validity in bankruptcy proceedings and other types of

litigation.")

29.     The Asbestos Personal Injury Claim Form is designed to ensure

claimants provide necessary information relating to their claims in such a way as to allow

all parties to determine the nature, extent, and validity of the claims being asserted.  As

set forth below, if a claimant timely files an Asbestos Personal Injury Claim Form

lacking the required supporting documentation, the claim will be deemed timely filed but cannot be allowed or deemed allowed until the documentation is provided.

30.    The Asbestos Personal Injury Proof of Claim Form is designed to elicit the nature, type, and degree of asbestos-related injury from which a claimant is allegedly suffering and the purported source of injury.  A copy of the proposed Personal Injury Claim Form is attached hereto as Exhibit K.  This information is vital for classification of asbestos claimants and to ensure that only those individuals presently suffering from an asbestos related impairment caused by the Debtors recover.

31.    Part 1 of the Asbestos Personal Injury Claim Form requests basic background information on the claimant, including the name and contact information of the claimant's attorney (if any).  Moreover, pursuant to Bankruptcy Rule 2019, law firms that represent more than one claimant in these cases are required to file verified statements identifying certain information, including the names and addresses of the claimants they represent and the nature and amount of such claimants' claims.  See, e.g., *In re Muralo Co., Inc.*, 295 B.R. 512, 524 (D. N. J. 2003) (in a mass tort chapter 11 case, court held that "Rule 2019(a) requires entities, *including counsel*, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors.") (emphasis in original); *City of Lafayette, Colorado v. Oklahoma P.A.C. First Ltd P'ship (In re Oklahoma P.A.C. First Ltd P'ship)*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990) ("The rule is part of the disclosure scheme of the Bankruptcy Code.  It is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly. . . .  The rule will apply to any entity, including an attorney, who represents more than one creditor or equity interest holder.  While a failure to comply

with Rule 2019 will not affect the ability of an attorney to prosecute an involuntary chapter 11 petition, the rule must be complied with by such an attorney in order to be heard on behalf of multiple creditors on any other matter.") (citations omitted).

32.     Part 1 also asks whether the claim being submitted is a derivative or related party claim.  A derivative or related party claim is a claim of a spouse or child of an injured party for damages that do not arise out of the spouse or child's own physical injury (*i.e.* loss of consortium).  Part 2 requests information pertaining to the claimant's medical condition for which the claim is being submitted.

33.     Part 3 of the Asbestos Personal Injury Claim Form requests information pertaining to the claimant's exposure history.  Specifically, part 3 asks whether a claimant was exposed to any asbestos products manufactured by any of the Debtors and the length of time of such exposure.[3]  To ensure only those claimants who were exposed to products manufactured by the Debtors are treated as creditors in these chapter 11 cases, the Property Damage Committee seeks information pertaining to the claimant's employment during his or her alleged exposure to such products.  Part 3 also requests the claimant to list all other asbestos products to which he or she has been exposed.  This information is necessary for a proper determination of causation.

34.     Part 4 of the Asbestos Personal Injury Claim Form requests information pertaining to the claimant's smoking history.  Because cigarettes have been linked to cancer, this information is relevant and necessary as smoking may be

---

[3]  Claims against the Debtors arise from the following six separate streams of liability associated with a different Federal Mogul entity:  (i) T&N; (ii) GHI (f/k/a Felxtallic, Inc.); (iii) Ferodo; (iv) F-M Products (f/k/a Moog Automotive, Inc.), the successor by merger to Wagner Electric Corporation, (v) Felt Products Mfg. Co., (f/k/a Fel-Pro Inc.); and (vi) the Vellumoid division of Federal Mogul.

considered as a mitigating factor in any potential recovery. Similarly, if a claimant has filed and received an award in a tobacco case for cancer caused in part by smoking and such claimant files an Asbestos Personal Injury Claim Form in these chapter 11 cases and that claim is subsequently allowed, any recovery for cancer-related injuries received in these cases may need to be reduced by the amount of the tobacco award (without deduction for attorneys' fees, expenses, or otherwise).

35.     Part 5 of the Asbestos Personal Injury Claim Form requests claimants to list any settlements they have entered into or litigation currently pending against other asbestos defendants and the amount (if any) received by such claimants from any defendants or settlement trusts. Part 5 also requests the claimant to identify whether they have filed or intend to file a proof of claim for an asbestos related injury in other bankruptcy cases. If a claimant has recovered from another source (whether by settlement, judgment, distribution under a trust or chapter 11 plan, or otherwise) for an asbestos related injury and such claimant files an Asbestos Personal Injury Claim Form in these chapter 11 cases and that claim is subsequently allowed, any distribution herein will need to be reduced by the amount of such recovery (without deduction for attorneys' fees, expenses, or otherwise).

### Consequences of Failure to File a Proof of Claim

36.     Pursuant to Bankruptcy Rule 3003(c)(2), The Property Damage Committee proposes that any Current Asbestos Claimant who fails to file a proof of such claim in accordance with the Bar Date Order (provided, however, that incomplete claim forms will preserve all the claimant's rights to distribution once missing data is furnished) on or before the Bar Date, shall be forever barred, estopped, and enjoined from

asserting such claim against the respective estates of the Debtors (or filing a proof of claim with respect thereto), and the Debtors and all property of their respective estates shall be forever discharged from any and all indebtedness or liability with respect to such claim, and such holder shall not be permitted to participate in any distribution or recover from any trust established in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim.

37.     Pursuant to the proposed Bar Date Order, the following persons or entities are <u>not</u> required to file a proof of claim on or before the Bar Date:

A.     any person or entity that has <u>already</u> properly filed, with the Clerk of the United States Bankruptcy Court for the District of Delaware, a proof of claim against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim or Official Form No. 10.  **However, claimants who are asserting an Asbestos Personal Injury Claim against any of the Debtors are required to complete an Asbestos Personal Injury Proof of Claim Form in order to be treated as a creditor with respect to such claim for the purposes of distribution**.

B.     any person or entity (i) whose claim is listed on the Debtors' Schedules, (ii) whose claim is not described  as "disputed," "contingent," or "unliquidated," and (iii) who does not dispute the amount or nature of the claim for such person or entity as set forth in the Debtors' Schedules.  **However, claimants who are asserting an Asbestos Personal Injury Claim against any of the Debtors are required to complete an Asbestos Personal Injury Proof of Claim Form in order to be treated as a creditor with respect to such claim for the purposes of distribution**.

C.     any person having a claim under 11 U.S.C. § 507(a) as an administrative expense of the Debtors' chapter 11 cases.

D.     any person or entity whose claim has been paid.

E.     any person or entity that holds a claim that has been allowed by an order of this Court entered on or before the Bar Date.

F.     any person who does not hold an asbestos-related personal injury claim.

## Notice of the Bar Order and the Bar Date

38.     Pursuant to Bankruptcy Rule 2002(a)(7), the Property Damage Committee proposes that a bar date notice, in a form substantially similar to the notice attached hereto as Exhibit L (the "Bar Date Notice"), and an Asbestos Personal Injury Claim Form, be mailed to: (i) the Debtors and their counsel; (ii) the Office of the U.S. Trustee for the District of Delaware; (iii) each member of the ACC; (iv) the attorneys of all known Current Asbestos Claimants, including those that may be listed on the Debtors' Schedules at the addresses stated therein and those that have already filed proofs of claim at the addresses stated therein; (v) the District Director of Internal Revenue for the District of Delaware; (vi) the Securities and Exchange Commission, (vii) the Futures' Representative; and (viii) all persons and entities requesting notice pursuant to Bankruptcy Rule 2002 as of the date of entry of the order approving this Motion.

39.     The proposed Bar Date Notice notifies the affected parties of the Bar Date and contains instructions regarding who must file a proof of claim, the procedure for filing a proof of claim, and the consequences of failure to timely file a proof of claim.  The Property Damage Committee requests that this Court approve the form and use of the Bar Date Notice.

## Publication Notice

40.     The United States Supreme Court has described the due process requirements for notice as follows: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover*

*Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).  These same due process

requirements apply in bankruptcy.  <u>See</u> *In re Eagle-Picher*, 137 B.R. at 682.

       41.      The degree of notice required to comport with the due process

requirements is a function of whether the claimant is known or unknown.  <u>See</u> *Chemetron*

*Corp v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995) (citing *In re Charter Co.,* 125 B.R. 650,

654 (M.D. Fla 1991)).  Known claimants are to receive actual written notice of a

bankruptcy filing and the establishment of a bar date.  Unknown claimants are entitled to

only constructive or publication notice of the bar date.  <u>See</u>, e.g., *In re XO*

*Communications, Inc.,* 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003); *In re Charter Co.*, 125

B.R. at 655 (citing *Matter of GAC Corp.*, 681 F.2d 1295, 1300 (11th Cir. 1982)).

       42.      Notice of the Bar Date is required only for individuals who hold or

are deemed to hold a claim under the Bankruptcy Code.  The scope of any relevant notice

procedure is therefore directly related to the definition of claim under the Bankruptcy

Code.  The Third Circuit applies the state law claim accrual test to determine whether a

claimant holds a cognizable claim under the Bankruptcy Code.  <u>See</u> *In re M. Frenville*

*Co., Inc.,* 744 F.2d 332, 337 (3d Cir. 1984); *In re Penn Central Transp. Co.,* 71 F.3d

1113, 1117 (3d Cir. 1995); *Jones v. Chemetron Corp.*, 212 F.3d 199, 205-06 (3d Cir.

2000).  As the vast majority of states hold that a cause of action sounding in tort does not

accrue until an injury is manifest, individuals who have merely been exposed to asbestos

but do not currently manifest an injury, may not, pursuant to prevailing Third Circuit case

law, hold a claim under the Bankruptcy Code.  Notably, a recent decision by Judge Wolin

in the *W.R. Grace & Co.* chapter 11 cases substantially broadens the universe of present

claims and shrinks the universe of legal demands by holding that the liabilities of an

asbestos manufacturer included claims of individuals who had not yet sued, because the individuals knew they had been exposed to asbestos. <u>See</u> *Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 281 B.R. 852, 862 ( D. Del. 2002) ("However, it must also follow that many, and no doubt a substantial majority, of these persons had some physical manifestation of their exposure, whether they knew it at that time or not. Exposure and physical manifestation doubtless gave the affected person a claim under the laws of most states.") (citations omitted).

43.    Actual notice of the Bar Date should be sent by mail to all known Current Asbestos Claimants (including any such claimants listed on the Schedules), the ACC, the relevant attorney members of the plaintiffs' asbestos bar, and all relevant governmental agencies. In addition, all known asbestos attorneys for potential claimants in these cases will receive a "Notice to Attorney" form which asks the attorney to provide the names and addresses of all clients who may have asbestos claims against the Debtors (including, but not limited to, settled claims) within fifteen (15) days of receipt of the notice or, in the alternative, certify that the attorney has notified his or her clients of their rights against the Debtors. A copy of the Notice to Attorney is annexed hereto as Exhibit M.

44.    To ensure that the entire universe of claimants who manifest injuries as of the Bar Date are given adequate notice, the Property Damage Committee also proposes to have notice of the Bar Date provided through publication of a Bar Date Notice in a form substantially similar to the form attached hereto as Exhibit N on two separate occasions more than forty-five (45) days prior to the Bar Date in the <u>Wall Street</u>

Journal, the <u>New York Times</u> (including a Sunday edition), the national edition of <u>USA Today</u>, the <u>London Times</u>, and the <u>Law Journal</u>.

45.    The Property Damage Committee believes the notice procedures referred to above are sufficient to provide the necessary notice to known and unknown claimants and comport with the requirements of prevailing Third Circuit case law.  The interests of future claimants in these chapter 11 cases, if any, are protected through the appointment of the Futures' Representative.  The Property Damage Committee therefore requests that this Court find the proposed procedures regarding the Publication Notice constitute good, adequate, and sufficient publication notice.

## The Debtors' Claims Agent

46.    Pursuant to this Court's Order dated May 29, 2002, The Garden City Group, Inc. (the "<u>Claims Agent</u>") is the authorized claims agent for the Court with respect to the Debtors' cases.  To facilitate and coordinate the claims reconciliation and bar date notice functions, the Property Damage Committee proposes that the Asbestos Personal Injury Claim Form be mailed by the Claims Agent, together with the Bar Date Notice.  The Property Damage Committee also requests the Court to order that facsimile transmissions of proofs of claim may not be accepted by the Claims Agent and that each proof of claim form (i) be written in the English language and (ii) be denominated in lawful currency of the United States as of the Commencement Date.

## An Extension of the Confirmation Hearing and Objection Deadline is Necessary and Warranted

47.    The relief requested herein will be extensive and time-consuming.  Indeed, the bar date the Property Damage Committee seeks will not even occur until

December, 1, 2004.  From there, the proof of claims will need to be reviewed, assessed, and processed.  Though this process will take time, it is entirely necessary.  Without a bar date and a concomitant review of the asbestos personal injury claims, this Court will be unable to determine whether the recoveries under the plan are fair and equitable.  Thus, before any plan can be confirmed over the objection of an impaired class of unsecured claims, the bar date and claims review process must be completed.  The Property Damage Committee estimates this process may take many months.  To that end, the Property Damage Committee requests a deferment and adjournment of the confirmation hearing for three months, with a corresponding adjournment of the deadline for filing objections to the proposed Plan to thirty days prior to the confirmation hearing.

## <u>Notice</u>

48.      The Property Damage Committee has served notice of this application on (i) the Debtors and their attorneys, (ii) the Office of the United States Trustee for the District of Delaware, (iii) the ACC, (iv) the Futures' Representative, (v) the Official Committee of Unsecured Creditors, (vi) the District Director of Internal Revenue for the District of Delaware, and (vii) all parties who have filed requests for notices under Bankruptcy Rule 2002.  The Property Damage Committee submits that no

(REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK)

other or further notice need be provided.

WHEREFORE the Property Damage Committee respectfully requests

entry of an order granting the relief requested herein, and such other and further relief as

is just.

Dated:     Wilmington, Delaware
           September 3, 2004

FERRY, JOSEPH & PEARCE, P.A.


/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
Rick S. Miller (No. 3418)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899
(302) 575-1555

LOCAL COUNSEL TO THE OFFICIAL
COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS

WEIL, GOTSHAL & MANGES LLP
Martin J. Bienenstock
Michael P. Kessler
767 Fifth Avenue
New York, NY  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF ASBESTOS
PROPERTY DAMAGE CLAIMANTS